EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Ángel N. Santiago Cruz<br><br>Peticionario<br><br>--------------------------------<br><br>El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>En interés del menor F.L.R.<br><br>Peticionaria | 2020 TSPR 99<br><br>205 DPR ____ |

Número del Caso:  CT-2020-17 consolidado con
                  CT-2020-18


Fecha:  8 de septiembre de 2020


Abogados de la parte peticionaria:

**CT-2020-17**
**Sociedad para Asistencia Legal**
Lcdo. José D. Soler Fernández
Lcdo. Carlos R. Nido Escribano

**CT-2020-18**
Lcdo. Luis J. Torres Asencio
Lcdo. Rafael E. Rodríguez Rivera


Oficina del Procurador General:
**CT-2020-17 y CT-2020-18**

Lcdo. Isaías Sánchez Báez
Procurador General

Lcdo. Pedro E. Vázquez Montijo
Subprocurador General

Lcda. Mónica M. Rodríguez Madrigal
Procuradora General Auxiliar

*Amicus Curie:*

**CT-2020-17 y CT-2020-18**
Lcdo. Hugo Rodríguez Díaz
Lcda. Myriam C. Jusino Marrero


Partes con Interés:

**CT-2020-17**
Lcdo. Luis J. Torres Asencio
Lcdo. Rafael E. Rodríguez Rivera

**CT-2020-18**
Lcdo. José D. Soler Fernández


Materia: Derecho Procesal Penal – No existe impedimento constitucional para celebrar la vista preliminar bajo la Regla 23 de Procedimiento Criminal y la vista para determinar causa probable bajo la Regla 2.10 de las Reglas de Procedimiento para Asuntos de Menores, mediante videoconferencia. El Estado tiene un interés de evitar la propagación del COVID-19 y el mecanismo de la videoconferencia provee la oportunidad para salvaguardar las garantías constitucionales mínimas a las que tienen derecho los imputados(as) en las etapas anteriores al juicio.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Ángel N. Santiago Cruz<br><br>Peticionario | | |
| | CT-2020-17<br>cons. con<br>CT-2020-18 | *Certificación intrajurisdiccional* |
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>En interés del menor F.L.R.<br><br>Peticionaria | | |

La Jueza Presidenta Oronoz Rodríguez emitió la Opinión del Tribunal

En San Juan, Puerto Rico, a 8 de septiembre de 2020.

Ante los retos incalculables que impone la emergencia de salud pública que enfrentamos, hoy resolvemos que no existe impedimento constitucional –ya sea al amparo de nuestra Constitución o de la Constitución federal– para celebrar mediante videoconferencia la vista preliminar que estatuye la Regla 23 de Procedimiento Criminal. Tampoco lo hay en cuanto a la vista para determinar causa probable que exige la Regla 2.10 de las Reglas de Procedimiento para Asuntos de Menores.

La validez de ese mecanismo dependerá, por supuesto, de que el Estado y los tribunales tomen las medidas que garanticen la vigencia de los derechos constitucionales que asisten a los imputados y menores en esa etapa, a saber: el derecho a un debido procedimiento de ley y el derecho a tener una representación legal adecuada. En concreto, salvaguardar tales derechos en esa etapa implicará asegurar: (1) que el imputado o menor y su abogado puedan ver y escuchar sin dificultad a las personas que participen en la vista, y viceversa; (2) que se cumplan con todas las garantías procesales que establece la Regla 23 de Procedimiento Criminal, en casos de adultos y las Reglas de Procedimiento para Asuntos de Menores y la Ley de Menores de Puerto Rico, en casos de menores de edad; y (3) que el imputado o menor tenga disponible una línea telefónica directa, un salón virtual o un mecanismo análogo mediante el cual se pueda comunicar con su representante legal de forma confidencial durante la vista y viceversa.

I

A.

Comenzamos narrando los hechos que dieron lugar al primer caso ante nuestra consideración, El Pueblo de Puerto Rico v. Ángel N. Santiago Cruz, CT-2020-17.

Por hechos ocurridos entre el 23 y 27 de febrero de 2020, el 29 de febrero de 2020 el Ministerio Público presentó siete denuncias contra el Sr. Ángel N. Santiago

Cruz (señor Santiago Cruz o imputado) por infracciones a la Ley de prevención e intervención con la violencia doméstica, Ley Núm. 54-1989, 8 LPRA sec. 601 et seq., y por una violación a la Ley de Armas de Puerto Rico, Ley Núm. 404-2000, 25 LPRA sec. 455 et seq. El tribunal determinó que existía causa probable para arrestar al señor Santiago Cruz y señaló la vista preliminar. Esa vista se pospuso. Posteriormente, el Tribunal de Primera Instancia emitió una Resolución en la que hizo constar que "[d]ebido a la crisis de salud por la pandemia del virus COVID-19, no pudo celebrarse la vista preliminar" y recalendarizó la vista nuevamente.[1]

El 5 de junio de 2020 el Tribunal de Primera Instancia emitió una Orden mediante la cual convirtió la próxima vista a una sobre el estado de los procedimientos. Ordenó la comparecencia de todas las partes mediante el sistema de videoconferencia e incluyó instrucciones detalladas al respecto.[2] Esa vista se celebró el 18 de junio de 2020.[3] El señor Santiago Cruz no compareció, pero sí su representación legal, quien hizo constar que se oponía a que la vista preliminar se celebrase mediante videoconferencia. La Jueza del Tribunal de Primera Instancia le indicó que el Departamento de Corrección y Rehabilitación (DCR) no estaba

---

[1] *Resolución*, Expediente del Tribunal de Apelaciones (CT-2020-17), Anejo VIII, pág. 83.
[2] *Orden*, Anejo XII, Expediente del Tribunal de Apelaciones (CT-2020-17), pág. 95.
[3] *Minuta y Orden*, Expediente del Tribunal de Apelaciones (CT-2020-17), Anejo XX, pág. 173.

transportando confinados a los tribunales debido a las medidas de seguridad que han tomado por razón de la pandemia producto del virus COVID-19. Finalmente, el foro primario señaló la vista preliminar para el 27 de julio de 2020.[4]

El 23 de junio de 2020 el Tribunal de Primera Instancia emitió una Resolución mediante la cual fundamentó su decisión de celebrar la vista de forma virtual. Dictaminó que "conducir una vista de manera virtual no violenta ningún derecho. En dichos procesos todas las partes necesarias están presentes en un espacio cibernético común, [y] se pueden ver y escuchar. Dichas plataformas tienen, además, mecanismos para que las partes sean excluidas de necesitar privacidad".[5]

Inconforme, el señor Santiago Cruz presentó un recurso de *certiorari* en el Tribunal de Apelaciones. Alegó, entre otras cosas, que el foro primario erró al determinar que celebrar la vista preliminar mediante videoconferencia "no viola múltiples variantes del derecho constitucional a un debido proceso de ley, a una representación legal adecuada y a contrainterrogar los testigos".[6]

---

[4] El abogado del señor Santiago Cruz planteó también que el señalamiento se encontraba fuera del término de juicio rápido que disponen las Reglas de Procedimiento Criminal, infra. No obstante, el tribunal resolvió que la fecha en la que se señaló el asunto se encuentra dentro de los términos de juicio rápido. Ello, en atención a la Resolución EM-2020-12 que emitió el Tribunal Supremo de Puerto Rico el 22 de mayo de 2020.

[5] *Resolución*, Expediente del Tribunal de Apelaciones (CT-2020-17), Anejo XXII, pág. 182.

[6] *Petición de certiorari*, pág. 12.

Luego de algunos trámites procesales,[7] el 7 de agosto de 2020 el Tribunal de Apelaciones emitió una Sentencia mediante la cual confirmó la Resolución que emitió el foro primario. En lo pertinente, resolvió que celebrar una vista preliminar por videoconferencia no viola los derechos constitucionales del imputado en esta etapa, pues –entre otras cosas– ese mecanismo permite: (1) que el imputado contrainterrogue testigos y (2) que el imputado se comunique con su abogado de manera privada durante la vista, lo cual salvaguarda su derecho constitucional a tener asistencia de abogado.[8]

Al amparo de la facultad que nos concede el Art. 3.002(e) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201-2003, 4 LPRA sec. 24s (Ley de la Judicatura de 2003), el 14 de agosto de 2020 certificamos *motu proprio* este caso en cuanto al señalamiento de error que adujo el señor Santiago Cruz relacionado con la constitucionalidad de celebrar las vistas preliminares por videoconferencia. Además, concedimos al señor Santiago Cruz y al Ministerio Público un término

---

[7] Mediante Resolución del 23 de julio de 2020 el Tribunal de Apelaciones paralizó los procedimientos en el caso, por lo que la vista preliminar que el foro primario señaló para el 27 de julio de 2020 no se celebró.

[8] Sentencia, pág. 23. Sobre este tercer punto, el Tribunal de Apelaciones puntualizó que, "según el Departamento de Corrección y Rehabilitación le informó al [Ministerio Público], el [Tribunal de Primera Instancia] deberá requerirle al Departamento de Corrección y Rehabilitación que se facilite al peticionario una línea telefónica en el salón habilitado en la institución correccional para el sistema de videoconferencia a los fines de mantener comunicación directa, privada y adecuada con su representación legal durante todo el proceso las veces que así lo solicite y que el Tribunal lo permita" (Énfasis suprimido).

simultáneo de diez (10) días para presentar alegatos sobre esa controversia.

Ambas partes comparecieron oportunamente. En su escrito el señor Santiago Cruz alegó, en síntesis, que celebrar la vista preliminar mediante el mecanismo de videoconferencia viola sus derechos constitucionales a confrontar los testigos, estar presente en una etapa crítica del procedimiento y tener asistencia de abogado. Además, planteó que ese mecanismo no salvaguarda las garantías procesales que establece la Regla 23 de Procedimiento Criminal, infra, a saber: (1) tener acceso a declaraciones juradas de los testigos del Estado, (2) contrainterrogar a los testigos, y (3) que la vista sea pública. Por último, argumentó que obligarlo a comparecer telemáticamente representa un discrimen por su condición u origen social debido a que se le está obligando a comparecer de esa manera porque no pudo prestar fianza.[9]

En su alegato, el Ministerio Público narra que el DCR ha tomado medidas que permiten a las personas confinadas comparecer virtualmente a las vistas anteriores al juicio. Lo anterior, en atención a que la estructura de las cárceles impide el distanciamiento social y en aras de evitar la propagación del virus COVID-19 entre la población confinada y los empleados del DCR. El Ministerio Público sostiene que el señor Santiago Cruz podrá comparecer virtualmente a la

---

[9] *Escrito en cumplimiento de orden*, pág. 15.

vista preliminar acudiendo a uno de los salones que el DCR habilitó a esos efectos. Argumenta que ello no viola sus derechos constitucionales, pues: (1) el imputado podrá ver y escuchar a todo aquel que participe de la vista, y viceversa; (2) el salón cuenta con una línea telefónica directa y privada que le permite al imputado comunicarse con su abogado durante la vista, y (3) el imputado no tiene un derecho constitucional a la confrontación en esta etapa del proceso.[10]

El Ministerio Público sostiene además que el mecanismo de videoconferencia provee al imputado todas las garantías procesales que exige la Regla 23 de Procedimiento Civil, infra, pues nada impide que se le hagan llegar personalmente o por medios electrónicos las declaraciones juradas de los testigos del Estado ni que el tribunal o la Oficina de Administración de Tribunales tome medidas para transmitir la vista.[11] Por último, arguye que la emergencia de salud pública actual y el interés del Estado en evitar la propagación del virus COVID-19 en las cárceles de Puerto Rico justifica exigir que el imputado comparezca virtualmente a la vista preliminar.

### B.

En el segundo caso ante nuestra consideración, El Pueblo de Puerto Rico en interés del menor F.L.R., CT-2020-

---

[10] *Alegato*, págs. 9, 20.
[11] Íd., págs. 23-24.

18, la Procuradora de Asuntos de Menores –en representación del Ministerio Público– presentó tres quejas contra el menor F.L.R., imputándole dos faltas a la Ley de Armas de Puerto Rico, Ley Núm. 404-2000, 25 LPRA sec. 455 et seq., y una falta a la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, 24 LPRA sec. 2101 et seq. Evaluado el asunto, el foro primario determinó causa para la aprehensión, por lo que ordenó su detención en una institución correccional juvenil y señaló la vista de determinación de causa probable.

El DCR se rehusó en múltiples ocasiones a trasladar al menor F.L.R. a esa vista. En consecuencia, el Ministerio Público solicitó reiteradamente que esta se celebrara mediante el mecanismo de videoconferencia. Sostuvo que: (1) el DCR aprobó un protocolo conforme al cual no se autorizaba trasladar físicamente a personas confinadas a las vistas anteriores al juicio debido a la necesidad de evitar la propagación del virus COVID-19 en las instituciones correccionales y (2) el mecanismo de videoconferencia no viola los derechos constitucionales que asisten al menor F.L.R. en esta etapa de los procedimientos.

La defensa se opuso a estos pedidos y solicitó que la vista se celebrara presencialmente. Adujo que: (1) no procedía celebrar la vista virtualmente debido a que no se cumplieron con los requisitos que exigen las *Guías generales para el uso del sistema de videoconferencia en los*

*tribunales del Estado Libre Asociado de Puerto Rico* que promulgó el Director de la OAT el 13 de marzo de 2020; (2) el *Coronavirus Aid Relief and Security Act* que aprobó el Congreso federal exige que la persona contra quien se insta el proceso penal consienta a que la vista se celebre virtualmente; (3) las medidas que tomó el Secretario del DCR son inválidas debido a que suponen enmendar de manera *ultra vires* las Reglas de Procedimiento Criminal, <u>infra</u>, y (4) celebrar una vista virtual menoscabaría los derechos constitucionales que asisten al menor F.L.R. en esta etapa de los procesos, es decir, su derecho a un debido proceso de ley y a tener asistencia adecuada de abogado.[12]

El Tribunal de Primera Instancia denegó todas las solicitudes que presentó el Ministerio Público y ordenó que la vista se celebrara presencialmente.[13] Inconforme, el Ministerio Público acudió al Tribunal de Apelaciones mediante una *Urgente solicitud de paralización de los procedimientos* al amparo de la Regla 49 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, a la cual acompañó una *Petición de certiorari*. Luego de varios

---

[12] En particular, la defensa adujo que celebrar la vista telemáticamente privaría al menor F.L.R. de su derecho a: (1) estar presente durante los procedimientos, (2) contrainterrogar testigos, (3) examinar declaraciones juradas de los testigos del Estado, (4) colaborar con su propia defensa, y (5) que la vista sea pública si así lo requiere. *Escrito en oposición a que se celebre vista de causa mediante videoconferencia por violentar los derechos constitucionales del menor*, Expediente del Tribunal de Apelaciones (CT-2020-18), Anejo IV, págs. 48-52.

[13] *Resolución enmendada*, Expediente del Tribunal de Apelaciones (CT-2020-18), Anejo VI, pág. 63; <u>Íd.</u>, Anejo X, pág. 82.

trámites, el foro apelativo emitió una Resolución mediante la cual paralizó los procedimientos en el foro primario.

El 24 de agosto de 2020 el menor F.L.R. compareció ante este Tribunal mediante una *Solicitud de certificación intrajurisdiccional*. En síntesis, solicitó que eleváramos a nuestra atención el caso conforme permite el Art. 3.002(e) de la Ley de la Judicatura del 2003 y lo consolidáramos con El Pueblo de Puerto Rico v. Ángel N. Santiago Cruz, CT-2020-17. Mediante Resolución emitida el 25 de agosto de 2020, expedimos el recurso y así lo hicimos, y concedimos a las partes un término simultáneo de cinco (5) días para presentar sus alegatos.

Ambas partes comparecieron oportunamente. En lo pertinente, el Ministerio Público reiteró los argumentos que adujo anteriormente. También así el menor F.L.R., aunque este añadió que el mecanismo de videoconferencia: (1) viola su derecho a un debido proceso de ley al impedir que su madre consienta a las decisiones que tome en el caso y (2) viola su derecho constitucional a confrontar los testigos del Estado.[14]

II

A.

Nuestra Constitución no contiene una disposición expresa que exija que un imputado o acusado esté presente en el procedimiento penal que el Estado inste en su contra. La

---

[14] *Alegato de la parte peticionaria F.L.R.*, págs. 18-20, 34.

Constitución federal tampoco. No obstante, se trata de un derecho de indudable rango constitucional.[15] Ello, debido a que está implícito y se puede inferir de tres derechos constitucionales que nuestra Constitución y la Constitución federal reconocen expresamente: (1) el derecho a la confrontación; (2) el derecho a un debido proceso de ley, y (3) el derecho a asistencia de abogado.[16]

El derecho a la confrontación surge del Art. II, Sec. 11 de nuestra Constitución y la Enmienda Sexta de la Constitución federal.[17] Ambas disposiciones reconocen el derecho de todo acusado a confrontarse con los testigos que declaren en su contra.[18] **No obstante, este derecho opera en la etapa del juicio.**[19] Debido a que la controversia en este caso involucra el derecho a estar presente en vistas anteriores al juicio —o en el caso de la Ley de Menores, infra, en las vistas anteriores a la vista adjudicativa— enfocamos nuestro análisis en el contenido de los dos derechos constitucionales que asisten a al imputado y al

---

[15] Pueblo v. Bussman, 108 DPR 444, 446 (1979) ("Todo acusado tiene derecho a estar presente en todas las etapas del juicio. Es un principio fundamental que no se cuestiona"); E. L. Chiesa Aponte, Procedimiento Criminal y la Constitución: Etapa Adjudicativa, San Juan, Ed. Situm, pág. 157 (expresando que "no hay duda alguna del rango constitucional de ese derecho").

[16] Chiesa Aponte, op. cit., pág. 157.

[17] Emda. VI, Const. EE. UU., LPRA, Tomo 1; Const. ELA, Art. II, Sec. 11, LPRA, Tomo 1.

[18] Coy v. Iowa, 487 U.S. 1012 (1988); Pueblo v. Ortiz Tirado, 116 DPR 868, 874 (1986).

[19] Barber v. Page, 330 US 719, 725 (1968); Pueblo v. Rodríguez Aponte, 116 DPR 653, 660 (1985); Chiesa Aponte, op. cit., pág. 61 ("Lo primero que hay que aclarar es que se trata de un trial right […] De ahí que no es correcto hablar del derecho constitucional del imputado a carearse con los testigos en su contra en […] la vista preliminar").

menor en esa etapa procesal: el derecho a un debido proceso de ley y el derecho a tener asistencia de abogado.

1. Derecho a estar presente al amparo del derecho a un debido proceso de ley

El Art. II, Sec. 7 de la Constitución del Estado Libre Asociado de Puerto Rico establece que nadie será privado de su libertad o de su propiedad sin el debido proceso de ley.[20] Igual protección consagran las Enmiendas Quinta y Decimocuarta de la Constitución federal.[21]

En el contexto penal, el derecho constitucional a un debido proceso de ley requiere que toda persona imputada o acusada de delito sea juzgada conforme al proceso que la ley establece.[22] Una vez la ley confiere al imputado o acusado un derecho, negárselo constituye una violación a su derecho a un debido proceso de ley en su vertiente procesal, pues esa privación implica apartarse del proceso que el ordenamiento reconoce como debido.[23] Al obligar al Estado a honrar las garantías procesales que el ordenamiento confiere al individuo, la Constitución garantiza la vigencia de su derecho a un juicio justo e imparcial.[24] Por su naturaleza,

---

[20] Const. ELA, Art. II, Sec. 7, LPRA, Tomo 1.
[21] Emda. V, Const. EE. UU., LPRA, Tomo 1. ("Ninguna persona será privada de su libertad o propiedad sin [un] debido proceso de ley").
[22] Pueblo v. Pagán Rojas, supra.
[23] Chiesa Aponte, op. cit., págs. 20, 54.
[24] Íd., pág. 54 ("El derecho a un juicio justo e imparcial no es otra cosa sino el derecho del acusado a un juicio con las garantías del debido proceso de ley y la gama de derechos procesales que cobijan al acusado […] [este] derecho […] emana de la cláusula misma del debido proceso de ley").

esta garantía constitucional aplica "durante todas las etapas" del procedimiento penal.[25]

Según adelantado, el derecho a la confrontación exige que un acusado esté presente en aquellas etapas del juicio en que se presente testimonio o evidencia en su contra. No obstante, en virtud del derecho a un debido proceso de ley, el acusado o imputado también tiene derecho a estar presente en etapas del procedimiento penal en donde ello no ocurre.[26] En particular, la cláusula de debido proceso de ley requiere que el imputado o acusado esté presente en toda etapa del procedimiento penal en la cual su presencia guarde una relación sustancial con la oportunidad de defenderse.[27] Al momento de evaluar si ese derecho constitucional exige la presencia de un imputado o acusado en una vista o proceso, los tribunales deben considerar si su ausencia tornaría el procedimiento en uno fundamentalmente injusto.[28]

El acusado o imputado puede renunciar a su derecho a estar presente en los procedimientos penales. "Lo contrario

---

[25] Íd., pág. 22; Pueblo v. Esquilín Maldonado, 152 DPR 257, 262 (2000).
[26] United States v. Gagnon, 470 U.S. 522, 526 (1985) ("The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, […] but we have recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him") (citas omitidas).
[27] Íd. ("a defendant has a due process right to be present at a proceeding 'whenever his presence has a relation, reasonably substantial, to the ful[l]ness of his opportunity to defend against the charge'") (citando a Snyder v. Massachusetts, 291 U.S. 97, 105-106 (1934)).
[28] Snyder v. Massachusetts, 291 U.S. 97, 107-108 (1934) ("So far as the Fourteenth Amendment is concerned, the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only") (citado con aprobación en United States v. Gagnon, 470 U.S. 522, 526 (1985)).

implicaría dejar in extremis huérfano al interés público para ventilar las causas criminales, […] pues 'los acusados estarían en libertad de obstruir la celebración de los juicios una vez comenzados éstos, ocultándose o haciendo imposible su localización'". Pueblo v. López Rodríguez, 118 DPR 515, 531 (1987) (citando a Pueblo v. Pedroza Muriel, 98 DPR 34, 38 (1969)). A esos efectos, las Reglas de Procedimiento Criminal, infra, contemplan supuestos en que la ausencia voluntaria del acusado o imputado de una etapa del procedimiento penal se entenderá como una renuncia a su derecho a estar presente.[29]

2. Derecho a estar presente al amparo del derecho a tener asistencia de abogado

El Tribunal Supremo federal no ha utilizado la cláusula constitucional de asistencia de abogado como fundamento del derecho del acusado o imputado a estar presente durante el proceso penal.[30] No obstante, "es evidente que la presencia del acusado [o imputado] es esencial para que su abogado pueda prestarle la adecuada representación profesional que exige esa cláusula". E.L. Chiesa Aponte, Procedimiento Criminal y la Constitución: Etapa Adjudicativa, San Juan, Ed. Situm, págs. 158-159. Analicemos la naturaleza y extensión de este derecho en aras de inferir cómo implica el

---

[29] Véase, e.g., la Regla 23(b) de Procedimiento Criminal, 32 LPRA Ap. II (disponiendo que un imputado renuncia a su derecho a estar presente en la vista preliminar si no comparece luego de ser debidamente citado).

[30] Chiesa Aponte, op. cit., pág. 158.

derecho del imputado a estar presente en ciertas etapas del proceso penal.

La Sección 11 de la Carta de Derechos de nuestra Constitución dispone que "en todos los procesos criminales, el acusado disfrutará del derecho […] a tener asistencia de abogado".[31] De igual manera reza la Enmienda Sexta de la Constitución federal.[32] Este derecho es consustancial con el derecho a un debido proceso de ley, pues sería fundamentalmente injusto exigir que la persona promedio se enfrente a los rigores de un proceso penal sin la asistencia de un abogado.[33] En palabras del Tribunal Supremo federal:

> The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he [might] have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. […] If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably

---

[31] Const. ELA, Art. II, Sec. 11, LPRA, Tomo 1.

[32] Emda. VI, Const. EE. UU., LPRA, Tomo 1. La Enmienda Catorce de la Constitución federal obliga a los estados a cumplir con esta cláusula en juicios estatales. Gideon v. Wainwright, 372 US 335, 341 (1963).

[33] Powell v. Alabama, 287 US 45 (1932); Pueblo v. Ortiz Couvertier, 132 DPR 883, 887 (1993) (expresando que ese derecho "se ha consagrado como parte fundamental de la cláusula del debido proceso de ley").

> may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense.[34]

Por lo tanto, no cabe duda de que el derecho a tener asistencia de abogado constituye una parte integral del derecho a un debido proceso de ley que asiste a todo acusado o imputado.

Aunque otras cláusulas constitucionales exigen que un individuo tenga asistencia de abogado en etapas anteriores,[35] el derecho constitucional a asistencia de abogado al amparo de la Enmienda Sexta de la Constitución federal y su disposición equivalente en nuestra Constitución surge a partir del inicio de la acción penal y se extiende hasta la fase apelativa.[36] No obstante, ese derecho no garantiza al individuo la asistencia de un abogado en cada

---

[34] Powell v. Alabama, supra, págs. 68-69.

[35] Las cláusulas de debido proceso de ley, igual protección de las leyes y el derecho a la no autoincriminación "pueden garantizar asistencia de abogado en etapas anteriores o posteriores a la activación de ese derecho bajo la Enmienda Sexta". Chiesa Aponte, op. cit., pág. 207.

[36] Sobre cuándo surge el derecho, véase Kirby v. Illinois, 406 U.S. 682, 689 (1972) (donde el Tribunal Supremo federal determinó que, al amparo de la Sexta Enmienda, el acusado tiene ese derecho "in all criminal prosecutions" y que esa expresión abarca "points of time at or after the initiation of adversary judicial criminal proceedings -whether by way of formal charge, preliminary hearing, indictment, information or arraignment") y Pueblo v. Martínez Rivera, 144 DPR 631, 642-643 (1997) ("el procedimiento criminal se inicia con la determinación por un magistrado de que existe causa probable para acusar o citar a una persona para que responda ante los tribunales por la comisión de un delito") (citas omitidas). Sobre el alcance del derecho a procedimientos luego de que el tribunal dicte sentencia, véase Pueblo v. Ortiz Couvertier, supra, pág. 889 ("La representación legal, en la etapa apelativa, es de particular importancia ya que esta etapa del procedimiento penal es la única —y posiblemente última— oportunidad que tiene el acusado para demostrar que su convicción es una contraria a derecho") (Énfasis en el original).
Adviértase, sin embargo, que el abogado de oficio que representa a una persona convicta tiene ciertas obligaciones que se extienden a la etapa apelativa. Smith v. Robbins, 528 U.S. 259 (2000); Roe v. Flores, 528 U.S. 470 (2000); Anders v. California, 386 U.S. 738 (1967).

una de las vistas que se celebran en el ínterin, sino que "se extiende únicamente a etapas críticas del procedimiento", es decir, aquellas etapas en las que, "por definición, […] existe una posibilidad real de que pueda causarse un perjuicio sustancial al acusado".[37] Tanto el Tribunal Supremo federal como este Tribunal han resuelto reiteradamente que un procedimiento de vista preliminar cumple con ese estándar; por lo tanto, es harto conocido que el imputado tiene un derecho constitucional a asistencia de abogado en esa etapa del procedimiento penal.[38]

El derecho de defenderse es propiamente del imputado o acusado y no su abogado, quien funciona realmente como una herramienta del primero en el proceso de armar y aducir una defensa robusta. Según expresó el Tribunal Supremo federal en Farreta v. California, 422 US 806, 819-820 (1975):

> The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense […] The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails. The counsel provision […] speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant.

---

[37] Pueblo v. Rivera, supra.

[38] Coleman v. Alabama, 399 U.S. 1 (1970); Pueblo v. Rivera, supra ("Aparte del juicio, se consideran críticas para fines del derecho a la asistencia de abogado las etapas siguientes: (1) durante la fase investigativa, cuando ésta adquiere un carácter acusatorio; (2) en el acto de lectura de acusación; (3) en la vista preliminar, y (4) al dictarse sentencia"); Chiesa Aponte, op. cit., pág. 271 ("En etapas anteriores al juicio, tras iniciada la acción penal, hay derecho a una adecuada asistencia de abogado siempre que se trate de una etapa esencial o con las características de un juicio; tal es el caso de la vista preliminar y del acto de lectura de acusación"); Soto Ramos v. Supert. Granja Penal, 90 DPR 731 (1964).

Evidentemente, si se obliga a un imputado o acusado a ausentarse del todo de una etapa crítica de los procedimientos, su derecho a tener asistencia de abogado –entre otros– se podría ver lacerado. Lo anterior, pues –según pautó el Tribunal Supremo federal– el derecho a defenderse pertenece propiamente al imputado o acusado y no a su abogado, y la ausencia del primero le impediría colaborar con su propia defensa.

B.

1. La vista preliminar

La Regla 23 de Procedimiento Criminal, 34 LPRA Ap. II, dispone que toda persona imputada de delito grave en Puerto Rico tiene derecho a que se celebre una vista preliminar. El propósito primordial de este mecanismo estatutario es "evitar que se someta a un ciudadano arbitraria e injustificadamente a los rigores de un proceso criminal". Pueblo v. Andaluz Méndez, 143 DPR 656, 661 (1997). Para lograr ese objetivo, la Regla 23, supra, exige que en esa vista el Ministerio Público presente evidencia que tienda a demostrar que están presentes todos los elementos del delito y su conexión con el imputado.[39] Si luego de evaluar la prueba el tribunal concluye que existe causa probable para acusar "debe autorizar que se presente la acusación contra el imputado. De lo contrario, lo debe exonerar y ponerlo en

---

[39] Pueblo v. Pillot Rentas, 169 DPR 746, 752 (2006).

libertad si estaba detenido". <u>Pueblo v. Rivera Vázquez</u>, 177 DPR 868, 875 (2010).

La evidencia que presente el Estado para sustentar que existe causa probable tiene que ser: (1) admisible en juicio y (2) "suficiente en derecho para establecer un caso *prima facie* contra el imputado". <u>Pueblo v. Pillot Rentas</u>, 169 DPR 746, 752-753 (2006). No es necesario que el fiscal presente toda la prueba que posea o que pruebe más allá de toda duda razonable que el imputado cometió el delito en esta etapa, pues en la vista preliminar no se adjudica culpabilidad; esa determinación ocurre en el juicio.[40]

La Regla 23, <u>supra</u>, provee las garantías siguientes al imputado en esa etapa del proceso penal: (1) notificación y citación a la vista al menos cinco días antes de su señalamiento; (2) asistencia de abogado; (3) acceso a las declaraciones juradas de los testigos del Estado que declaren en la vista; (4) oportunidad de contrainterrogar esos testigos y ofrecer prueba a su favor; (5) que la evidencia que presente el Ministerio Público sea admisible en juicio y cumpla con el estándar probatorio aplicable, y (6) que la vista sea pública. El requisito de que la vista sea pública admite excepciones. La Regla 23 faculta al juez a limitar el acceso al público cuando esa medida sea

---

[40] <u>Pueblo v. Andaluz Méndez</u>, supra ("Su función no es establecer la culpabilidad o inocencia del acusado, sino determinar si en efecto el Estado tiene adecuada justificación para continuar con un proceso judicial. De ahí que no exista una adjudicación final de inocencia o culpabilidad en esta etapa. Tal determinación se hace en el juicio").

"necesaria para proteger cualquier otro interés de naturaleza apremiante y que no existan otras alternativas menos abarcadoras y razonables."[41]

2. La Ley de Menores

La Ley de Menores de Puerto Rico, Ley Núm. 88 de 9 de julio de 1986, 34 LPRA sec. 2201 et seq. (Ley de Menores), es una ley especial que aplica cuando un menor de edad incurre en conducta que constituiría un delito de haberse cometido por un adulto.[42] Establece que, como norma general, la Sala de Asuntos de Menores del Tribunal de Primera Instancia será el foro con jurisdicción para atender los asuntos que surjan a su amparo, y aclara que "[l]os

---

[41] La Regla 23(c) de Procedimiento Criminal, 34 LPRA Ap. II, dispone:

> La vista preliminar será pública a menos que el magistrado determine, previa solicitud del imputado, que una vista pública acarrea una probabilidad sustancial de menoscabo a su derecho constitucional a un juicio justo e imparcial, y que no hay disponibles otras alternativas menos abarcadoras y razonables que una vista privada para disipar tal probabilidad. En tales casos, la decisión del magistrado deberá fundamentarse en forma precisa y detallada.

> También se podrá limitar el acceso a la vista preliminar cuando el magistrado determine, previa solicitud a tales efectos, que tal limitación es necesaria para proteger cualquier otro interés de naturaleza apremiante y que no existen otras alternativas menos abarcadoras y razonables. La decisión del magistrado deberá fundamentarse en forma precisa y detallada.

> Se dispone que el magistrado deberá limitar el acceso a la vista preliminar, previa solicitud del fiscal, en aquellos casos en que éste interese presentar el testimonio de un agente encubierto o un confidente que aún se encuentre en esas funciones o cuando esté declarando la víctima de un caso de violación o actos impúdicos o lascivos.

[42] Para propósitos de esta ley, un menor de edad es una "[p]ersona que no ha cumplido la edad de dieciocho (18) años de edad, o que habiéndola cumplido, sea llamada a responder por una falta cometida antes de cumplir esa fecha". Art. 3, Ley de Menores de Puerto Rico, Ley Núm. 88 de 9 de julio de 1986 (Ley de Menores), 34 LPRA sec. 2203(n).

procedimientos y las órdenes o resoluciones del juez bajo este capítulo no se considerarán de naturaleza criminal ni se considerará al menor un criminal convicto en virtud de dicha orden o resolución". Arts. 4(a) y 37(a), Ley de Menores, 34 LPRA secs. 2204 y 2237.

A pesar de que no es una ley penal, los procedimientos que esta Ley reglamenta "conllevan la imposición necesaria de remedios de naturaleza punitiva, incluyendo la restricción de la libertad de un menor". Pueblo en interés de menor K.J.S.R., 172 DPR 490, 496 (2007). En consecuencia, la Ley de Menores debe interpretarse de manera que se garantice a todo menor de edad a quien se le impute una falta "un trato justo, el debido procedimiento de ley y el reconocimiento de sus derechos constitucionales". Art. 2(c) de la Ley de Menores, 32 LPRA sec. 2202. Ello se debe a la intención clara del legislador "de extender a [los menores de edad] los derechos y las salvaguardas procesales fundamentales que se le han reconocido a los adultos o que los adultos disfrutan por mandato constitucional". Pueblo en interés del menor J.A.S., 134 DPR 991, 995 (1993) (Énfasis suprimido); véase además Pueblo en interés del menor C.Y.C.G., 180 DPR 555, 566 (2011) (citando a In re Gault, 387 US 1 (1967)).

A esos efectos, esta Ley impone una serie de requisitos que el Estado debe cumplir durante el proceso. En primer término, exige que el menor de edad cuente con asistencia de

abogado "en todo procedimiento" y que el tribunal le asigne representación legal cuando el menor no pueda costearla. Art. 6 de la Ley de Menores, 34 LPRA sec. 2206. En cuanto a cómo conducir los procesos en el tribunal, el Art. 8 de la Ley de Menores, 34 LPRA sec. 2208, dispone que las vistas se celebrarán en sala y conforme disponen las Reglas de Procedimiento para Asuntos de Menores, 34 LPRA Ap. I-A.

No obstante, no todos los derechos constitucionales que asisten a un adulto en un proceso penal aplican en un procedimiento al amparo de la Ley de Menores, supra. Debido al "carácter rehabilitador y confidencial" de estos procesos, el legislador excluyó algunos derechos, entre ellos el derecho a un juicio público. Pueblo v. Suárez, 163 DPR 460, 467 (2004).[43]

A esos efectos, el Art. 8 de la Ley limita el acceso al público a las vistas que se celebren al amparo de la Ley:

> El público no tendrá acceso a las salas en que se ventilen los casos de menores a menos que los padres, encargados o el representante legal del menor demanden que el asunto se ventile públicamente y en todo caso bajo las reglas que provea el Juez. Cuando además de la parte imputada, la alegada víctima o los testigos sean menores de edad, los padres, encargados o el representante legal de estos, deberán consentir a que se pueda ventilar el asunto públicamente. De haber alguna objeción de parte de los padres,

---

[43] Véase la Exposición de Motivos de la Ley de Menores, 1986 Leyes de Puerto Rico 285-286 (expresando que "[e]n la medida en que el menor no será considerado convicto y su conducta no constituirá delito, se conservará la exclusión de los derechos de fianza, juicio público y juicio por jurado, los cuales no tienen cabida en el sistema por los intereses jurídicos que siguen protegiendo la supervisión del menor con fines rehabilitativos [sic] y la confidencialidad del proceso por el que se le juzga").

> encargados o el representante legal de la alegada víctima o de los testigos cuando sean menores de edad, el Juez deberá escuchar los argumentos de estos y tomará la determinación que entienda mejor protege la seguridad física y emocional de todos los menores que forman parte del caso. No obstante, el Juez podrá consentir a la admisión de personas que demuestren interés legítimo en los asuntos que se ventilan, previo consentimiento de los menores y su representación legal […].[44]

Finalmente, la ley también establece requisitos que, aunque aplican solamente en el contexto de procedimientos contra menores, están diseñados para garantizar elementos importantes del derecho a un debido proceso de ley. El Art. 37(g) de la Ley requiere que en todos los procedimientos a su amparo el menor de edad comparezca "acompañado de sus padres, tutor, encargado o en su defecto, del defensor judicial" y que se notifique "toda citación, resolución u orden a los padres, tutor o encargado o en su defecto, del defensor judicial del menor". 34 LPRA sec. 2237. Similarmente, el Art. 37(f) de la Ley de Menores, 34 LPRA sec. 2237, exige que el tribunal nombre un defensor judicial cuando el menor de edad "fuere huérfano o no tuviera tutor ni persona encargada que lo representare o cuando se estimare necesario".

3. La vista de determinación de causa probable

El Art. 18 de la Ley de Menores, 34 LPRA sec. 2218, exige que se celebre una vista de determinación para causa probable ante un juez antes de que se pueda radicar una

---

[44] Art. 8 de la Ley de Menores, 34 LPRA sec. 2208.

querella contra un menor. Además de cumplir con los requisitos generales que la ley exige en todos los procedimientos a su amparo, la Regla 2.10 de Procedimiento para Asuntos de Menores, _supra_, regula en detalle este procedimiento e impone requisitos adicionales. Al respecto, esa Regla establece lo siguiente:

> (a)  El propósito de esta vista en su primera etapa es el de constatar si existe rastro de prueba necesario sobre los elementos esenciales de la falta y su conexión con el menor imputado.
>
> (b)  El juez ante quien se celebre la vista de determinación de causa probable informará al menor del contenido de la queja, le advertirá sobre su derecho a no incriminarse, a permanecer en silencio con relación a los hechos imputados, a comunicarse con un abogado y le orientará sobre los derechos constitucionales que le cobijan. En dicha vista, el menor tendrá derecho a estar representado por abogado, a contrainterrogar testigos y presentar prueba a su favor.
>
> (c)  Procedimiento durante la vista.- El Procurador presentará la prueba para la determinación de causa probable y podrá contrainterrogar a los testigos que presente el menor. Para la determinación de causa probable, el juez se limitará al examen del contenido de la queja presentada ante él y considerará únicamente la evidencia sometida con relación a la misma.
>
>   Al ser requerido para ello, el Procurador pondrá a disposición del menor para su inspección las declaraciones juradas de los testigos, que hayan declarado en la vista, que tuviere en su poder.

De esta Regla se puede colegir con claridad que a un menor de edad le asisten las garantías procesales siguientes en esta etapa de los procedimientos: (1) que se le informe el contenido de la queja; (2) se le advierta sobre su

derecho a no incriminarse; (3) permanecer en silencio con relación a los hechos imputados; (4) tener asistencia de un abogado que lo oriente sobre sus derechos constitucionales; (5) inspeccionar las declaraciones juradas de aquellos testigos que hayan declarado en la vista; (6) contrainterrogar a los testigos, (7) ofrecer prueba a su favor, y (8) que la determinación de causa probable que realice el juez se base únicamente en el contenido de la queja y la evidencia sometida.

Si el juez concluye que existe causa probable para creer que el menor de edad cometió una falta, consignará por escrito esa determinación y autorizará que continúe el proceso, es decir, que el Procurador de Menores radique la querella, entregue al menor de edad copia de esta y refiera "al menor y a sus padres o encargados al Especialista en Relaciones de Familia para la entrevista inicial del informe social".[45] Si el juez, por el contrario, resuelve que no se probó que existe causa probable "exonerará al menor y de hallarse éste en detención provisional, ordenará su egreso".[46]

Como puede apreciarse, la vista de determinación de causa probable que estatuyen el Art. 18 de la Ley de Menores, _supra_, y la Regla 2.10 de Procedimientos de Asuntos de Menores, _supra_, es el equivalente a la vista preliminar

---

[45] Regla 2.11 de Procedimiento para Asuntos de Menores, 34 LPRA Ap. I-A.
[46] _Íd_.

que establece la Regla 23 de Procedimiento Criminal, supra.[47] Aunque en contextos distintos, ambas buscan evitar someter al imputado o menor a los rigores de un procedimiento adjudicativo cuando no exista evidencia suficiente para ello.

Por lo tanto, hemos hecho extensiva la jurisprudencia sobre la Regla 23 de Procedimiento Criminal, supra, a la interpretación de las disposiciones que regulan la vista para determinar causa probable en casos de menores.[48] En concreto, ello significa que las garantías procesales a las que es acreedor el imputado en la vista preliminar también cobijan al menor en la vista para determinar causa probable.[49] Lo anterior, en la medida en que no sean incompatibles con el proceso que contempla la Ley de Menores, supra, y las Reglas de Procedimiento para Asuntos de Menores, supra.

### C.

La videoconferencia es un método que sustituye la comparecencia personal del participante por una comparecencia a distancia, bidireccional y simultánea.[50] Por su naturaleza permite que una persona participe de un

---

[47] Pueblo en interés F.R.F., 133 DPR 172, 175 n. 2 (1993) (citando a D. Nevares Muñiz, *Derecho de Menores*, Hato Rey, Ed. Inst. Desarrollo del Derecho, 1987, pág. 56) (otras citas omitidas).

[48] Pueblo en interés de menor K.J.S.R., supra, pág. 496; Pueblo en interés menor E.R.C., 149 DPR 804, 812 (1999); Pueblo en interés G.R.S., 149 DPR 1, 18, 25 (1999).

[49] Pueblo en interés menor E.R.C., supra.

[50] *Guías generales para el uso del sistema de videoconferencia en los tribunales del Estado Libre Asociado de Puerto Rico*, Expediente del Tribunal de Apelaciones (CT-2020-17), Anejo VI, pág. 6.

proceso judicial de manera remota, y elimina el riesgo de contagio para el personal que de otra manera se encontraría en la sala del tribunal. Por lo tanto, mediante este método se garantiza la oportunidad de que el juzgador de los hechos pueda evaluar el comportamiento o *demeanor* de quien declara en su plenitud. Véase la Opinión de Conformidad de la Jueza Presidenta Oronoz Rodríguez, Pueblo v. Daniel Cruz Rosario, 2020 TSPR 90, 204 DPR __ (2020).

Cabe destacar que el Tribunal Supremo federal validó un sistema análogo a la videoconferencia -de una vía-, al entender que proveía un método necesario y adecuado que adelantaba el interés público importante como lo es proteger a las víctimas de delitos sexuales que fueran menores edad. Maryland v. Craig, 497 U.S. 836 (1990). Ante ello, varios tribunales no han vacilado en aplicar el uso de la videoconferencia de doble vía ante otros intereses de política pública importantes o apremiantes. Véase, por ejemplo, Lipsitz v. State, 442 P.3d 138, 144 (Nev. 2019) (donde un testigo era una víctima que residía en una facilidad de rehabilitación por abuso de sustancias controladas que se encontraba fuera del estado); State v. Seelig, 738 S.E.2d 427, 434-435 (N.C. Ct. App. 2013) (donde un experto que vivía en otro estado acreditó sufrir de un desorden psicológico severo que le impedía abordar un avión); New York v. Wrotten, 923 N.E.2d 1099, 1100-1103 (N.Y. 2009) (donde se permitió interrogar a un testigo de 85

años con una enfermedad cardiaca severa); Bush v. State, 193 P.3d 203, 214-216 (Wyo. 2008) (donde se permitió el interrogatorio por videoconferencia a un testigo con problemas cardiacos severos, luego de sufrir un fallo renal); State v. Sewell, 595 N.W.2d 207, 212-213 (Minn. Ct. App. 1999) (donde se permitió interrogar por medio de videoconferencia a un testigo en riesgo de sufrir una parálisis total si se movía de donde estaba localizado). Otros tribunales han permitido que el acusado o imputado comparezca virtualmente a ciertas etapas del proceso penal mediante este mecanismo. State v. Phillips, 656 N.E.2d 643, 664-665 (1995) (validando que una vista de causa probable para arresto se celebre mediante un circuito de doble vía); Larose v. Superintendent, Hillsborough Cty. Correction Admin., 142 N.H. 364, 365, 368 (1997) (validando que una vista de causa probable para arresto y de fijación de fianza se celebre mediante un circuito de doble vía); In re Rule 3.160(a), Fla. Rules of Criminal Procedure, 528 So. 2d 1179, 1180 (Fla. 1988) (permitiendo que los imputados comparezcan virtualmente a las vistas de causa probable para arresto mediante un circuito de doble vía). A su vez, varios académicos han sostenido que el sistema de videoconferencia de dos vías es constitucional porque provee todas las protecciones necesarias y es superior al sistema de una vía

que ya ha sido declarado constitucional por el Tribunal Supremo federal.[51]

Incluso, recientemente una Mayoría de los miembros de este Tribunal se expresaron a favor del uso del sistema de videoconferencias como un mecanismo para minimizar el contagio de COVID-19 y proteger la salud pública.[52] Por otro lado, en el contexto de la pandemia varios tribunales en los Estados Unidos han adoptado órdenes de emergencia para asegurar la atención remota de todos los asuntos, incluyendo

---

[51] Véase H. Perry, *Virtually Face -to-Face: The Confrontation Clause and the Use of Two -Way Video Testimony*, 13 Roger Williams U. L. Rev. 565, 586-587 (2008). Según la autora:

> Two-way video conference testimony in criminal trials is constitutional because it provides the necessary protections and upholds the goals intended by the Confrontation Clause. The procedure is also more protective of defendants' right to confrontation than other accepted methods of testimony [...].

> Further, two-way video testimony is superior to one-way video testimony, which the Supreme court has already deemed constitutional.

[52] Pueblo v. Cruz Rosario, *supra*, Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco (expresando que el "sistema de videoconferencias le hubiera provisto al recurrido la oportunidad de conducir el contrainterrogatorio sin que el testigo declarara con una mascarilla"); Opinión de Conformidad de la Juez Asociada señora Rodríguez Rodríguez (expresando que "[m]ientras dure esta situación excepcional -y en consideración al interés apremiante de proteger la salud y la vida de los ciudadanos- celebrar los juicios y otros procesos judiciales mediante videoconferencia, en aquellos casos que sean más propicios para ello, debe ser una norma imperativa y no una optativa."); Opinión Disidente del Juez Asociado señor Estrella Martínez (expresando que la videoconferencia representa una alternativa "para salvaguardar y establecer un balance adecuado de los intereses en pugna" y que "cuenta con otros indicios que confiabilidad, como lo son el juramento de la persona testigo, la oportunidad de contrainterrogar y la capacidad del jurado de apreciar el testimonio"); Opinión Disidente del Juez Asociado señor Colón Pérez (expresando que "[…] la forma más razonable de lograr un balance adecuado entre los intereses aquí en controversia es mediante el uso obligatorio de los sistemas de video conferencias en el proceso judicial que nos ocupa. Sin embargo, aclaramos que para que este mecanismo proceda […] deben salvaguardarse todas aquellas garantías que dispone nuestra Constitución y asegurar el cumplimiento con las Reglas de Procedimiento Criminal, así como la Reglas de Evidencia").

los criminales, mediante el sistema de videoconferencia.[53]

Sobre este asunto, el Tribunal de Distrito federal del Distrito Sur de Nueva York recientemente expresó:

> [Tlhe court notes that depending on the circumstances of the Government's witness, remote testimony may comport with the Sixth Amendment principles set forth in Craig and Gigante. At least in some instances, allowing remote testimony may be needed to promote the strong public interest in avoiding exposing at-risk individuals to COVID-19 and minimizing further spread of the virus. See Craig, 497 U.S. at 850 (finding that the public policy of "protecting child witnesses from the trauma of testifying in a child abuse case" justified an exception to the ordinary "face-to-face confrontation" requirement). And depending on the witness's situation, the health risks and travel restrictions occasioned by the ongoing pandemic may also constitute "exceptional circumstances" that would permit the use of video testimony. See Gigante, 166 F.3d at 81-82 (2d Cir. 1999) (finding that witness's illness and participation in a witness protection program were "exceptional circumstances" such that the witness could testify by closed-circuit television).

III

La propagación del COVID-19 –un nuevo tipo de enfermedad infecciosa que surgió en diciembre de 2019– desató una pandemia que continúa actualmente. Este virus es altamente contagioso y ha provocado más de 840,000 muertes a nivel global.[54] Al día de hoy en Puerto Rico se han registrado sobre 33,000 casos confirmados y probables, y más

---

[53] *National Center for State Courts, Coronavirus and the Courts: Virtual Hearings* (2020) https://www.ncsc.org/newsroom/public-health-emergency (última visita 1 de septiembre de 2020).
[54] *WHO Coronavirus (COVID-19) Dashboard*, Organización Mundial de la Salud, https://covid19.who.int/ (última visita 31 de agosto de 2020).

de 400 muertes a causa del COVID-19.[55] Pese a los esfuerzos de la comunidad científica, aún no se ha logrado desarrollar un tratamiento que prevenga o cure esta enfermedad.[56]

No obstante, las autoridades médicas han identificado varias medidas que evitan la propagación del COVID-19. Estas son: (1) lavarse las manos frecuentemente; (2) **evitar el contacto con otras personas**; (3) el uso de mascarillas cuando se está con otras personas; (4) cubrirse la boca o la nariz al toser o estornudar; (5) limpiar y desinfectar las superficies que se tocan con frecuencia, y (6) que los individuos monitoreen su salud diariamente.[57] Estas medidas, en particular el distanciamiento social y el uso de mascarillas, responden a la postura prevaleciente de la comunidad científica basada en la evidencia disponible: que el COVID-19 se propaga principalmente mediante el contacto

---

[55] *Informe Casos Positivos COVID-19 (31 de agosto de 2020)*, Departamento de Salud de Puerto Rico, http://www.salud.gov.pr/Estadisticas-Registros-y-Publicaciones/Estadsticas%20Casos%20Positivos%20COVID19%20Agosto%202020/Informe%20Casos%20Positivos%20COVID-19%20(31%20agosto%202020).pdf (última visita 31 de agosto de 2020)

[56] *Information for Clinicians on Investigational Therapeutics for Patients with COVID-19*, Centros para el Control y Prevención de Enfermedades, https://www.cdc.gov/coronavirus/2019-ncov/hcp/therapeutic-options.html (última visita 31 de agosto de 2020).

[57] *How to Protect Yourself & Others*, Centros para el Control y Prevención de Enfermedades, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (última visita 31 de agosto de 2020; *Protégete del COVID-19: Medidas de prevención*, Departamento de Salud de Puerto Rico, http://www.salud.gov.pr/Pages/Medidas_de_Prevencion.aspx (última visita 31 de agosto de 2020).

cercano de persona a persona, es decir, cuando las personas interactúan físicamente a menos de seis pies de distancia.[58]

En atención a esta nueva realidad, el 16 de marzo de 2020 la Rama Judicial decretó un cierre parcial de operaciones y suspendió las vistas y asuntos citados en los tribunales del país. No obstante, se dispuso que durante este periodo se atenderían asuntos urgentes tales como vistas de causa para arresto, órdenes de protección, solicitudes de traslado de menores fuera de la jurisdicción, otros asuntos de familia y menores de carácter urgente, y órdenes de ingreso involuntario a la luz de la Ley de Salud Mental, entre otros. Debido a la necesidad de continuar brindando servicios a la ciudadanía, el 8 de junio de 2020 se puso en vigor un plan operacional dirigido a restablecer escalonadamente la totalidad de esos servicios.[59] Además, este Tribunal emitió varias Resoluciones para extender los términos judiciales y evitar que se afectaran los procedimientos y derechos implicados ante las suspensiones provocadas por la pandemia.[60]

---

[58] *How Coronavirus Spreads*, Centros para el Control y Prevención de Enfermedades, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html (última visita 31 de agosto de 2020).

[59] *Fases Operacionales para la Expansión de Servicios*, Rama Judicial de Puerto Rico, http://www.ramajudicial.pr/medidas-cautelares/Fases-Operacionales.pdf (última visita 31 de agosto de 2020).

[60] In re: Medidas Judiciales ante situación de emergencia de salud por el Covid-19, EM-2020-12 (22 de mayo de 2020); In re: Medidas Judiciales ante situación de emergencia de salud por el Covid-19, EM-2020-10 (2 de mayo de 2020); In re: Medidas Judiciales ante situación de emergencia de salud por el Covid-19, EM-2020-07 (13 de abril de 2020); In re: Medidas Judiciales ante situación de emergencia de salud por el Covid-19, EM-2020-03 (26 de marzo de 2020); In re: Medidas Judiciales ante situación

Durante ese periodo, se han ampliado gradualmente los asuntos de competencia municipal y superior que se atienden en los Tribunales de Primera Instancia mediante el sistema de videoconferencia. Ello, con el propósito de garantizar la salud de las personas que participan en los procesos judiciales, procurar la eficiencia en el manejo y en los trámites de los casos y evitar el desplazamiento innecesario en momentos en que se le exige a la población minimizar el contacto físico y la aglomeración para evitar contagios.

Aun antes de que la Rama Judicial decretara el cierre parcial antes aludido, el 13 de marzo de 2020, la OAT –por conducto de su Director Administrativo, el Hon. Sigfrido Steidel Figueroa– promulgó unas *Guías generales para el uso del sistema de videoconferencia en los tribunales del Estado Libre Asociado de Puerto Rico* (Guías generales).[61] Mediante estas, la OAT plasmó la política institucional de la Rama Judicial en torno a fomentar el uso de las videoconferencias para ciertos procedimientos y preservar la formalidad de las vistas judiciales cuando las partes comparezcan virtualmente.

Posteriormente, la OAT promulgó además unas *Guías para las disposiciones generales para el uso de la videoconferencia en los procedimientos penales* (Guías generales para procesos

---

de emergencia de salud por el Covid-19, EM-2020-03 (16 de marzo de 2020).

[61] *Guías generales*, supra, pág. 6.

penales).[62] Estas guías respondieron a la necesidad de limitar la cantidad de personas que acuden al tribunal y así propiciar el distanciamiento social. Persiguen los mismos objetivos que las Guías generales, pero limitado al contexto penal. A esos efectos, las Guías generales para procesos penales incluyen una lista no taxativa de procesos que los tribunales pueden celebrar mediante videoconferencia y ofrece directrices generales sobre cómo conducirlos.

A fin de asegurar que las videoconferencias cumplan con los requisitos del debido proceso, la Rama Judicial ha hecho inversiones significativas para mejorar su tecnología. A modo de ejemplo, se duplicó el ancho de banda para cada una de las regiones judiciales y se reemplazaron todas las computadoras y tabletas de todos los jueces y personal de apoyo. Igualmente han instalado *drops de voz* en las salas penales para que la defensa y los imputados puedan conversar privada y confidencialmente, tal y como permite la plataforma que utiliza la Rama Judicial para las videoconferencias. Además, en todas las regiones judiciales se han habilitado áreas para que abogados, partes y el público en general que no tengan computadoras o Internet en sus oficinas o residencias puedan conectarse para vistas remotas utilizando las instalaciones del Tribunal.

---

[62] *Guías para las disposiciones generales para el uso de la videoconferencia en los procedimientos penales* (Guías generales para procesos penales), Portal de la Rama Judicial, https://www.ramajudicial.pr/medidas-cautelares/Guias-Videoconferencia-Casos-Penales.pdf (última visita 1 de septiembre de 2020).

Conscientes de que adquirir los materiales y las herramientas necesarias para llevar a cabo las videoconferencias no es suficiente, la Rama ha desarrollado un programa de capacitación intensivo de su personal, pues toda organización debe reconocer la importancia de capacitar a su personal de manera constante y oportuna para ofrecer la mejor calidad posible de servicios. En ese tenor se han ofrecido y se continúan ofreciendo seminarios de capacitación a jueces, secretarias, coordinadores de grabación, alguaciles, etc., como mecanismo para que nuestro personal no solo conozca la nueva tecnología, sino que se encamine a dominarla. Es imprescindible trabajar conjuntamente en equipo para cumplir con todos los estándares de calidad y que estos sean los más idóneos para lograr garantizar los derechos de todas las personas que acuden a los tribunales en busca de un remedio.

Según las estadísticas de la OAT, todos estos esfuerzos han permitido que en Puerto Rico se hayan celebrado más de 29,500 vistas mediante el mecanismo de videoconferencia desde el mes de marzo. La mayoría de estas vistas –12,371– ocurrieron en casos civiles. No obstante, se han celebrado 3,985 vistas por medio de videoconferencia en casos penales.[63]

---

[63] Estas incluyen vistas para atender solicitudes de habeas corpus, vistas de rebaja de fianza, vistas al amparo de las Regla 240 y 241 de Procedimiento Criminal, entre otras.

Al igual que la Rama Judicial, el DCR adoptó una serie de medidas dirigidas a contener la propagación del COVID-19. En lo pertinente, el DCR implementó un mecanismo para lograr que la población correccional pudiera comparecer mediante el mecanismo de videoconferencia a vistas judiciales antes del juicio.[64] El DCR explicó la necesidad de implementar estas medidas de la manera siguiente:

> Por la naturaleza de las instituciones correccionales y los centros de tratamiento social, la forma de practicar el distanciamiento físico entre la población correccional es diferente a la manera en que se puede practicar en la comunidad. Las estructuras de las mismas no poseen los espacios y las barreras arquitectónicas necesarias para asegurar el distanciamiento físico mínimo entre los miembros de la población correccional requerido por las autoridades de salud estatal y nacional. Ante esto, es necesario mantener las instituciones correccionales y los centros de tratamiento social lo más aisladas posibles, con el fin de garantizar la seguridad de la población correccional y los empleados del Departamento.[65]

Por lo tanto, cualquier salida de un confinado lo expone al contagio del virus, y pone en riesgo al resto de la población correccional. Cabe resaltar que, en circunstancias normales, el DCR utiliza un sistema de rutas para recoger a los sumariados en varias instituciones y transportarlos al

---

[64] *Reglamento de emergencia para establecer el procedimiento de traslado de los miembros de la población correccional a procesos judiciales durante la emergencia de la pandemia del Coronavirus (COVID-19)* (Reglamento), Expediente del Tribunal de Apelaciones CT-2020-18, Anejo XII, pág. 89; *Protocolo enmendado para el restablecimiento gradual de los servicios a la población correccional ante la propagación del coronavirus (COVID-19)*, Expediente del Tribunal de Apelaciones CT-2020-17, Anejo XIX, pág. 147.
[65] Reglamento, supra, pág. 93.

tribunal en un mismo vehículo. La limitación de espacio en esos vehículos imposibilita el distanciamiento.[66]

Para atender esa situación, el *Reglamento de emergencia para establecer el procedimiento de traslado de los miembros de la población correccional a procesos judiciales durante la emergencia de la pandemia del Coronavirus (COVID-19)* (Reglamento) contempla que el DCR continúe habilitando salones en todas las instituciones correccionales para que los imputados puedan comparecer de forma virtual a ciertas vistas judiciales, incluyendo a la vista preliminar.[67] Además, establece un protocolo para atender situaciones en que un sumariado tenga que asistir presencialmente al tribunal, disponiendo que este permanecerá en cuarentena por catorce días en una institución habilitada para esos propósitos antes de reingresar a la institución correccional.[68] Por último, cabe resaltar que el Reglamento provee mecanismos para que los abogados de los imputados se reúnan con estos en salones específicamente habilitados para ese propósito o incluso mediante el sistema de videoconferencia.[69]

IV

A.

---

[66] Íd., págs. 95-96.
[67] Íd., págs. 93-94.
[68] Íd., pág. 94.
[69] Íd., pág. 95. Véase la Orden Administrativa Núm. 454 que emitió el Secretario del Departamento de Salud de Puerto Rico el 3 de julio de 2020, Expediente del Tribunal de Apelaciones (CT-2020-18), Anejo XI, pág. 83.

Atendemos los planteamientos del señor Santiago Cruz y el menor F.L.R. (el imputado y el menor, respectivamente) relacionados a la constitucionalidad de celebrar una vista preliminar y una vista para determinar causa probable, respectivamente, mediante el mecanismo de videoconferencia. Resaltamos que, en esta etapa de los procedimientos en su contra, ambos son acreedores a los mismos derechos constitucionales, por lo que discutimos sus planteamientos en conjunto.

En síntesis, el imputado y el menor alegan que celebrar esas vistas mediante el mecanismo de videoconferencia viola los derechos que nuestra Constitución y la Constitución federal le garantizan en esta etapa de los procedimientos, a saber: (1) su derecho a la confrontación; (2) su derecho a un debido procedimiento de ley; y (3) su derecho a tener asistencia de abogado. Por su parte, el Ministerio Público solicita que sostengamos la constitucionalidad del mecanismo impugnado y enfatiza que es necesario para adelantar el interés del Estado en evitar la propagación del COVID-19 en las cárceles, instituciones correccionales juveniles y la libre comunidad.

La adjudicación de esta controversia requiere que procuremos un balance "entre el interés de salvaguardar las garantías individuales de los acusados [o imputados] y las necesidades salubristas que deben adoptarse para el beneficio de los participantes del proceso judicial". Pueblo

v. Daniel Cruz Rosario, 2020 TSPR 90, 204 DPR __ (2020). Sopesados los intereses en juego, resolvemos que la balanza se inclina poderosamente a favor de sostener la constitucionalidad del mecanismo de videoconferencia en esta etapa de los procedimientos, ya sea en el caso de sumariados o cualquier otro imputado de falta o delito. Lo anterior, en vista del interés que tiene el Estado en evitar la propagación del COVID-19 y la oportunidad que provee ese mecanismo para salvaguardar las garantías constitucionales mínimas que asisten a los imputados de delito en etapas anteriores al juicio o, en el caso de los menores de edad, la vista adjudicativa.[70]

1. Confrontación

De entrada, resolvemos que los reclamos que realizan el imputado y el menor a base del derecho a la confrontación no proceden, pues ese derecho constitucional no opera hasta la etapa del juicio o, en el caso del menor F.L.R., la vista adjudicativa.[71] Debido a que en ambos casos el proceso se encuentra en una etapa preliminar en donde ese derecho no aplica, no tienen razón cuando alegan que el mecanismo de

---

[70] El alcance de nuestra decisión, la cual aplica a cualquier persona imputada de delito o falta en Puerto Rico, hace innecesario que nos expresemos sobre el argumento constitucional relacionado al alegado discrimen por razón de origen o condición social.

[71] Barber v. Page, supra; Pueblo v. Rodríguez Aponte, supra; Chiesa Aponte, op. cit., pág. 61.

videoconferencia es inconstitucional por violar ese derecho.[72]

2. Debido proceso de ley: vertiente sustantiva

El imputado y el menor argumentan que celebrar esas vistas por videoconferencia viola su derecho constitucional a un debido procedimiento de ley pues les impide estar presencialmente en una etapa en la cual su presencia guarda una relación sustancial con su oportunidad de defenderse. Este planteamiento nos obliga a preguntarnos si existe un elemento inherente al acto de comparecer virtualmente a estas vistas que niegue al imputado o al menor la oportunidad de defenderse a tal grado que torne el proceso fundamentalmente injusto.[73]

La contestación es que no. Mediante la videoconferencia, estos podrán ver y escuchar a las personas que participen de la vista, y *viceversa*, de una manera razonablemente similar a lo que ocurriría en una vista presencial en la sala del tribunal. Aunque no estarán presentes físicamente, tampoco estarán ausentes de una manera que les impida participar del proceso y tener la oportunidad de defenderse de las imputaciones en su contra. Si el mecanismo audiovisual mediante el cual comparece el sumariado le ofrece la oportunidad de entender y participar del proceso de esta forma, se satisface su derecho a estar

---

[72] No resolvemos, por no estar ante nuestra consideración, si celebrar un juicio penal mediante videoconferencia viola el derecho a la confrontación.

[73] Gagnon, supra.

presente al amparo de la cláusula de debido proceso de ley.[74]

Somos conscientes de que los mecanismos tecnológicos no son infalibles.[75] Pueden ocurrir contratiempos en el sistema de la videoconferencia debido a diversos factores inherentes a su naturaleza.[76] Sin embargo, no cualquier contratiempo implicará una violación al debido proceso de ley; para configurar una violación, se debe tratar de un desperfecto

---

[74] People v. Lindsey, 201 Ill.2d 45, 58 (2002) (validando la constitucionalidad de celebrar vistas anteriores al juicio a las que el acusado compareció virtualmente y enfatizando que "[w]hile defendant was not physically present in the courtroom for his arraignment and jury waiver, neither was he entirely absent from these proceedings […] [T]he closed circuit system provided defendant with the ability to hear and see the proceedings taking place in the courtroom and, at the same time, allowed the judge and other persons in the courtroom to hear and see defendant. […] [D]efendant was able to interact with the court with relative ease […] [D]efendant was aware of the nature and significance of the proceedings and the overall solemnity of the proceedings was preserved"); State v. Phillips, 74 Ohio St. 3d 72, 94 (1995) ("The trial judge asked appellant if he was able to hear and see the proceedings, to which appellant replied that he could. The defendant's actual, physical presence in the courtroom at the time of his arraignment 'was not required to ensure fundamental fairness or a 'reasonably substantial opportunity to defend against the charge') (citando a Gagnon, supra; In re Rule 3.160(a), Fla. Rules of Criminal Procedure, 528 So. 2d 1179, 1180 (Fla. 1988) (donde el Tribunal Supremo estatal de Florida permitió que las vistas de causa probable para arresto se celebraran por videoconferencia y expresó que "due process does not require the personal presence of a defendant in a courtroom before a judge when, through mechanical means, he can see the judge and the judge can see him"). Véase también U.S. v. Burke, 345 F.3d 416, 425 (6th Cir. 2003) (validando que un juez presidiera una vista de supresión de evidencia por videoconferencia y expresando que "the judge could see, hear, and speak to the witnesses, and they could see, hear, and speak to him. Though presence through a television is not the same thing as direct physical presence, in this case the difference between the two was not of constitutional dimension. The judge's presence via video-conferencing did not deprive Burke of due process by rendering his suppression hearing fundamentally unfair […]") (Énfasis suplido).

[75] El imputado y el menor alegaron que el DCR no cuenta con los recursos o la tecnología necesaria para celebrar las vistas de una manera que les permita participar efectivamente. Sin embargo, las vistas no han ocurrido aún, por lo que esas alegaciones son –en este momento- especulativas.

[76] En aras de evitar estas situaciones, las Guías generales para procesos penales contemplan que antes de celebrar la vista se realice una prueba para cotejar si la conexión y el equipo está funcionando adecuadamente. Guías generales para procesos penales, supra, inciso (M).

que ocurrió por razones ajenas a la voluntad del imputado, el menor o su abogado y de tal magnitud que limite irrazonablemente el derecho del imputado o menor a observar y participar en la vista. En estas instancias, el juez deberá suspender la vista, pautarla para la fecha más próxima disponible y tomar las acciones necesarias para asegurarse que los procedimientos se llevan acorde con las exigencias constitucionales.

3. Debido proceso de ley: vertiente procesal

El imputado y el menor alegaron además que el mecanismo de videoconferencia les priva de las garantías procesales que establecen la Regla 23 de Procedimiento Criminal, supra, y la Regla 2.10 de Procedimientos para Asuntos de Menores, supra. En particular, plantearon que ese mecanismo les priva de su derecho a: (1) examinar las declaraciones juradas de los testigos del Estado; (2) contrainterrogar testigos; (3) que la vista sea pública, y (4) contar con asistencia de abogado. Además, el menor F.L.R. alegó que celebrar la vista de forma virtual le impide comparecer acompañado por su madre, según exige la Ley de Menores, supra.

Ciertamente estas garantías forman parte del derecho a un debido proceso de ley en su vertiente procesal, por lo que el imputado y el menor tienen un derecho constitucional a ser juzgados conforme exigen las reglas aplicables.[77] No obstante, concluimos que el mecanismo de videoconferencia no

---

[77] Pueblo v. Pagán Rojas, supra.

es incompatible con las garantías procesales que el imputado y el menor alegan se violarían si las vistas se celebran virtualmente.

En primer lugar, ese mecanismo no impide que el Ministerio Público envíe copias de las declaraciones juradas de los testigos al imputado o menor y su abogado. Ello podrá hacerse telemáticamente durante la vista o personalmente antes o durante esta. En segundo lugar, en la medida en que todos los participantes de la vista puedan ver y escuchar a los demás en tiempo real, no se afecta la facultad del abogado del imputado o menor de contrainterrogar testigos y presentar prueba a favor de su cliente. En tercer lugar, el mecanismo de videoconferencia tampoco impide que los tribunales –en conjunción con los funcionarios de OAT– tomen las medidas necesarias para transmitir las vistas en casos en que ello proceda en derecho.[78] Así ha sucedido en varias vistas judiciales celebradas durante la operación especial de los tribunales por razón de la emergencia de salud pública actual.[79]

En cuarto lugar, y según se discute a fondo en la próxima sección, celebrar una vista virtualmente tampoco

---

[78] Nótese que, debido a la naturaleza de los procedimientos, ese requisito de publicidad no aplica a las vistas de determinación de causa probable en los casos de menores de edad, excepto en las circunstancias que contempla el Art. 8 de la Ley de Menores, 34 LPRA sec. 2208.

[79] Tomamos conocimiento judicial del contenido de los expedientes judiciales en los varios casos en que ello ocurrió. Regla 201 de Evidencia, 32 LPRA Ap. VI; Guadalupe v. Saldaña, 133 DPR 42, 52 (1993). Entre ellos se encuentran: María E. Quiñones y otros v. ELA, SJ2020CV02645; Melissa Hernández Romero y otros v. ELA, SJ2020CV02608; Manuel Natal Albelo v. Carlos Méndez Núñez, SJ2020CV02796; Autocine Santana v. ELA, SJ2020CV03093.

implica que el imputado o menor se enfrentará al proceso sin la asistencia de su abogado, según exige la Constitución y las reglas aplicables. Ello, pues existen métodos fiables mediante los cuales este se puede comunicar con su abogado de manera confidencial durante la vista y ejercer ese derecho.

Finalmente, el mecanismo de videoconferencia no impide que la madre del menor F.L.R. comparezca a la vista, según exige la Ley de Menores, supra. En casos de menores, el tribunal y el Estado tienen una responsabilidad de dar cumplimiento a las garantías procesales que establecen la Ley de Menores, supra, y las Reglas de Procedimiento para Asuntos de Menores, supra. Ello implica tomar las medidas necesarias para lograr la comparecencia virtual de los padres, madres, encargados o defensores judiciales, según sea el caso, en esos procesos.

4. Asistencia adecuada o efectiva de abogado

El imputado y el menor plantean que celebrar la vista virtualmente viola su derecho constitucional a tener asistencia adecuada de abogado durante una etapa crítica del procedimiento. Lo anterior, debido a que sus abogados no estarán presentes físicamente junto a ellos como ocurriría si la vista se llevara a cabo en sala. Según discutido, en esta etapa tal exigencia forma parte además del derecho a un

debido proceso de ley en su vertiente sustantiva y procesal.[80]

La pregunta clave al momento de evaluar este argumento es si celebrar la vista mediante videoconferencia despoja al imputado o menor de la oportunidad de colaborar con su propia defensa. Resolvemos que no. En primer lugar, el medio virtual no impide que el abogado brinde una representación legal adecuada o efectiva al imputado o menor, pues tiene a su disposición las mismas herramientas esenciales para probar su caso que tendría en una vista presencial, es decir, la facultad de contrainterrogar a los testigos del Estado y presentar aquella prueba que entienda pueda sembrar duda en la mente del juzgador sobre si están presentes los elementos del delito o la falta o sobre si se estableció la conexión con el imputado o menor. Por lo tanto, comparecer virtualmente no implica una limitación irrazonable al ejercicio de las prerrogativas que emplea el abogado para cumplir cabalmente con su función en esta etapa procesal.[81]

En segundo lugar, tampoco tienen razón el imputado y el menor al plantear que comparecer virtualmente les impide colaborar con su propia defensa. Debido a que el derecho a defenderse pertenece propiamente al imputado o menor y no a su abogado, siendo el segundo más bien una herramienta del

---

[80] Snyder, supra; Pueblo v. Pagán Rojas, supra.

[81] Pueblo v. Ortiz Couvertier, supra, pág. 888; véase Pueblo v. Torres Rivera, 137 DPR 630, 635 (1994), y Romero v. Jones, Alcaide de la Penitenciaria Estatal, 78 DPR 572, 577 (1955) (resolviendo el derecho de asistencia de abogado no puede utilizarse para obstaculizar la tramitación del proceso penal).

primero en el proceso de aducir una defensa robusta ante las imputaciones del Estado,[82] el imputado o menor tiene un derecho constitucional a comunicarse con su abogado durante la vista. No obstante, existen medidas razonables que se pueden adoptar para garantizar que eso suceda cuando la vista se celebre por videoconferencia. En concreto, el imputado o menor podrá conferenciar confidencialmente con su abogado durante la vista virtual, ya sea a través de una línea telefónica privada o utilizando las funcionalidades que proveen las propias plataformas digitales mediante las que ocurre la videoconferencia a esos efectos.[83] Ello les permite comunicarse privadamente con su abogado durante la vista para expresar preocupaciones, realizar consultas o dar instrucciones, por lo que no se viola su derecho a colaborar con su propia defensa.[84]

En consecuencia, resolvemos que el derecho constitucional a tener asistencia de abogado cuando las vistas se celebran virtualmente se satisface si: (1) el abogado puede ver y escuchar a quienes participan del proceso y viceversa, y (2) el imputado o menor tiene

---

[82] _Farreta_, supra.

[83] En la alternativa, el abogado puede solicitar al DCR acudir al salón que se habilitó para celebrar la videoconferencia en la institución correccional y así estar presente físicamente con su cliente durante la vista.

[84] _United States v. Abu Ali_, 528 F.3d 210, 242 (4th Cir. 2008) (resolviendo que la admisión en el juicio de un testimonio prestado en una deposición por videoconferencia no violó el derecho del acusado a asistencia de abogado, aun cuando el abogado y el acusado no pudieron comunicarse en tiempo real, pues el abogado realizó un contrainterrogatorio extenso y "the court was willing to allow defense counsel to stop their cross-examination in order to conference with their client in private").

disponible un mecanismo mediante el cual se puede comunicar con su representante legal de forma confidencial durante la vista y viceversa. Cumplidos estos dos requisitos, una vista celebrada por videoconferencia tutela adecuadamente el derecho constitucional a asistencia de abogado en esta etapa de los procedimientos.

B.

Atendemos, además, los planteamientos colaterales que realizó el menor F.L.R. en su comparecencia ante nos y ante los foros recurridos. En particular, alegó que: (1) el Coronavirus Aid, Relief, and Economic Security Act (CARES Act, 15 USCA sec. 9001ss prohíbe vistas virtuales en casos penales sin el consentimiento del imputado o menor; (2) las medidas que tomó el Secretario del DCR son inválidas debido a que enmendaron de manera *ultra vires* las Reglas de Procedimiento Criminal, <u>supra</u>, y (3) que las Guías generales no autorizan el mecanismo de videoconferencia en su caso.

En cuanto al primer señalamiento, basta con apuntar a que las disposiciones del CARES Act, <u>supra</u>, en torno al uso de videoconferencias ("video teleconferencing") en casos criminales solo aplican a los tribunales federales.[85] No

---

[85] En torno al empleo de videoconferencias ("video teleconferencing") en casos criminales, la Sección 15002(b)(1) del CARES ACT, PL 116-136, sec. 15002(b)(1), 134 Stat 281 (2020), establece lo siguiente:

> [I]f the Judicial Conference of the United States finds that emergency conditions due to the national emergency declared by the President under the National Emergencies Act (50 U.S.C. 1601 et seq.) with respect to the Coronavirus Disease 2019 (COVID-19) will materially affect the functioning of either **the Federal courts generally or a particular district**

impide que Puerto Rico o los estados adopten el mecanismo de videoconferencia en aquellos procesos criminales en que estimen sería apropiado, sujeto, claro está, a los límites que imponen nuestra propia Constitución y la Constitución federal.[86]

Tampoco tiene razón cuando alega que las medidas que adoptó el DCR suponen una enmienda *ultra vires* a las Reglas de Procedimiento Criminal, supra (o, en su caso, a las Reglas de Procedimiento de Asuntos de Menores, supra). Estas Reglas disponen que el imputado o menor deberá estar presente en la vista preliminar y en la vista para determinar causa probable. No prohíben que ese requisito se cumpla mediante una comparecencia virtual. Al contrario, las Reglas de Procedimiento Criminal, supra, requieren que las interpretemos de una manera que asegure "la tramitación justa de todo procedimiento y eviten dilaciones y gastos

---

**court of the United States**, the chief judge of a district court covered by the finding […] may authorize the use of video teleconferencing […] for the following events […].

(Énfasis suplido).

[86] La Opinión disidente enfatiza que al amparo del CARES Act se requiere que el acusado o imputado consienta a que la vista se lleve a cabo mediante videoconferencia. No obstante, esa Opinión omite mencionar que los tribunales federales tienen el poder de suspender los términos aplicables de juicio rápido. A esos efectos, el Hon. Gustavo Gelpí, Juez Presidente del Tribunal federal de distrito para el Distrito de Puerto Rico, emitió una orden administrativa general mediante la cual: (1) pospuso todos los asuntos que requieran una vista presencial hasta el 5 de octubre de 2020; (2) dispuso que todos los asuntos civiles y criminales que puedan atenderse mediante videoconferencia deberán atenderse de esa manera, y (3) suspendió los términos de juicio rápido al amparo del Speedy Trial Act, 18 USC sec. 3161(h)(7)(A). *In re: Corona Virus (COVID19) Public Emergency*, Misc. No. 20-0088 (GAG). Por lo tanto, contrario a lo que parece intimar la Opinión disidente, un acusado o imputado en ese tribunal no puede exigir una vista presencial. Al contrario, si interesa que su vista se celebre en el término de juicio rápido, debe consentir a que se celebre por videoconferencia.

injustificados". Regla 1 de Procedimiento Criminal, 34 LPRA Ap. II; véase también Regla 1.2 de Procedimiento de Asuntos de Menores, 34 LPRA Ap. I-A (disponiendo que estas deben interpretarse de una manera que garantice "una solución justa, rápida y económica de todos los asuntos"). Permitir que los imputados y menores comparezcan virtualmente a las vistas preliminares y a las vistas para determinar causa probable adelanta estos objetivos, pues hace viable que el Estado continúe haciendo cumplir la ley mientras dure la crisis de salud pública. Adoptar una interpretación del derecho estatutario a estar presente, que frene todo señalamiento de vistas judiciales en asuntos criminales hasta que termine la pandemia, entorpecería la función protectora del Estado, sumiría en incertidumbre a los imputados y trastocaría el propósito de las Reglas.[87]

Por último, el menor F.L.R. malinterpreta el alcance jurídico de las Guías generales que promulgó la OAT. Se trata de un documento cuyo propósito fundamental es proveer unos lineamientos generales que asistan a los jueces y juezas en el proceso de conducir vistas judiciales virtuales de una manera que garantice la formalidad de los procedimientos. Ese documento no tiene, ni puede tener, el efecto de prejuzgar lo que es una controversia eminentemente

---

[87] Véase, a modo persuasivo, People v. Wrotten, 14 N.Y.3d 33, 37-38 (2009) ("Unable to find any explicit statutory prohibition regarding two-way televised testimony at trial, defendant argues that extant statutes implicitly preclude its admission. However, there is no specific statutory authority evincing legislative policy proscribing televised testimony").

jurídica: si celebrar determinada vista judicial por videoconferencia es inconstitucional y si un tribunal abusa de discreción al ordenar que se celebre presencialmente por entender que lo es. Por lo tanto, que el Tribunal de Primera Instancia en su caso no haya autorizado la vista virtual no impide que este Foro pase juicio sobre si esa actuación fue conforme a derecho.

C.

1. *Pueblo v. Ángel N. Santiago Cruz*

En el primer caso consolidado, El Pueblo de Puerto Rico v. Ángel N. Santiago Cruz, CT-2020-17, el Tribunal de Primera Instancia emitió una Resolución mediante la cual ordenó que la vista preliminar se celebrara de forma totalmente virtual.[88] El Tribunal de Apelaciones confirmó esa Resolución. Además, ordenó que los testigos que declaren en la vista preliminar virtual "deberán hacerlo sin mascarilla".[89] Ambos foros ejercieron su discreción razonablemente.

Conforme lo aquí resuelto, no existía impedimento constitucional para que el Tribunal de Primera Instancia ordenara que la vista se celebrara virtualmente. Al contrario, ese proceder resultaba necesario para proteger la salud pública y garantizar que el proceso criminal siguiera

---

[88] *Resolución enmendada*, Expediente del Tribunal de Apelaciones (CT-2020-17), Anejo XXII, pág. 182 (haciendo constar que, mediante el mecanismo de videoconferencia que propuso, "todas las partes necesarias están presentes en un espacio cibernético común, [y] se pueden ver y escuchar").

[89] *Sentencia del Tribunal de Apelaciones*, pág. 22.

su curso sin dilaciones y de una manera que garantizara los derechos constitucionales del imputado en esta etapa. Además,

tratándose de una vista virtual, no están presentes las circunstancias que requieren usar la mascarilla.

Por lo tanto, tampoco erró el Tribunal de Apelaciones al dictaminar en su Sentencia que los testigos deberán testificar sin mascarilla.

2. *Pueblo en interés del menor F.L.R.*

Por otra parte, el Tribunal de Primera Instancia en el caso El Pueblo de Puerto Rico en interés del menor F.L.R., CT-2020-18, denegó múltiples mociones que presentó el Ministerio Público mediante las que solicitó que la vista para determinar causa probable se celebrara por videoconferencia. Como es sabido, los tribunales cuentan con un alto grado de discreción al momento de decidir cómo conducir los procedimientos que presiden. No obstante, esa discreción no es infinita ni su ejercicio ocurre en un vacío. Está íntimamente ligada al concepto de razonabilidad.

Es por eso que, aunque los tribunales apelativos generalmente nos abstenemos de intervenir con las decisiones del foro primario relacionadas al manejo del caso, en algunas ocasiones "la buena discreción y la justicia parecen señalar hacia una dirección distinta a como fueron ejercidas

y aplicadas y entonces, y a pesar de nuestra norma de abstención, resulta ser nuestro deber insoslayable corregir lo que hubiere de exceso o de injusto en el uso de esa discreción, para que no se lesionen derechos que estamos llamados a proteger". Ortiz Rivera v. Agostini, 192 DPR 187, 193-194 (1965).

En este caso, la decisión del foro primario de ordenar el traslado del menor de edad F.L.R. por encima de las objeciones del DCR y el Ministerio Público no fue razonable. Atenta contra las medidas que la Rama Judicial ha adoptado para minimizar la atención presencial de los asuntos ante la pandemia y las que el DCR ha tomado para cumplir un interés público importante: evitar la propagación del COVID-19 en las instituciones correccionales y juveniles. Además, se basó en el fundamento erróneo de que la presencia física del menor F.L.R. era necesaria para salvaguardar sus derechos constitucionales. En atención a que la decisión del foro primario atentó contra derechos de alta jerarquía, como lo es la salud del pueblo puertorriqueño en el contexto de una pandemia, es forzoso concluir que el Tribunal de Primera Instancia abusó de su discreción al denegar la solicitud del Ministerio Público.

En ausencia de una situación excepcional o una razón de peso que justifique una vista presencial, mientras dure la emergencia de salud pública, toda vista anterior al juicio se celebrará mediante el mecanismo de la videoconferencia.

V

Por los fundamentos que anteceden, con relación al recurso CT-2020-17, se confirma la Sentencia que emitió el Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos en conformidad con lo aquí dispuesto. Con relación al recurso CT-2020-18, se revoca la determinación que emitió el Tribunal de Primera Instancia y se devuelve el caso a ese foro para que continúen los procedimientos en conformidad con lo aquí dispuesto.

Se dictará Sentencia de conformidad.


                                    Maite D. Oronoz Rodríguez
                                        Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>    Recurrido<br><br>        v.<br><br>Ángel N. Santiago Cruz<br><br>    Peticionario<br><br>_____<br><br>El Pueblo de Puerto Rico<br><br>    Recurrido<br><br>        v.<br><br>En interés del menor F.L.R.<br><br>    Peticionaria | CT-2020-17<br>cons. con<br>CT-2020-18 | *Certificación intrajurisdiccional* |

SENTENCIA

En San Juan, Puerto Rico, a 8 de septiembre de 2020.

Por los fundamentos que anteceden, con relación al recurso CT-2020-17, se confirma la Sentencia que emitió el Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos en conformidad con lo aquí dispuesto. Con relación al recurso CT-2020-18, se revoca la determinación que emitió el Tribunal de Primera Instancia y se devuelve el caso a ese foro para que continúen los procedimientos en conformidad con lo aquí dispuesto.

Notifíquese inmediatamente.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Rivera García emitió una opinión de conformidad. El Juez Asociado señor Colón Pérez concurre con opinión escrita. El Juez Asociado señor Martínez Torres concurre con el resultado al que llega la Opinión mayoritaria y hace constar la siguiente expresión:

> El derecho constitucional al careo opera en la etapa del juicio. E.L. Chiesa Aponte, Procedimiento Criminal y la Constitución: Etapa

adjudicativa, San Juan, Ed. Situm, 2018, pág. 61. Por lo tanto, no cabe hablar de este derecho en los procedimientos previos al juicio. Íd. Así lo estableció el Tribunal Supremo Federal en Barber v. Page, 390 US 719,725 (1968): "The right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness." En esa misma dirección, este Tribunal expresó con claridad que "nuestra Constitución establece en la etapa del juicio el derecho de todo acusado a carearse con los testigos de cargo y obtener la comparecencia compulsoria de testigos a su favor. Sec. 11, Art. II. El juicio en su fondo es el momento realmente culminante y crítico". Pueblo v. Rodriguez Aponte, 116 DPR 653, 660 (1985).

La norma es clara. No había necesidad de intervenir en los procesos que se estaban llevando a cabo en los foros inferiores. Al hacer esto, se le quita discreción al Tribunal de Primera Instancia sobre cómo llevar a cabo los procedimientos. Otra vez, este Tribunal establece una regla absoluta sin tomar en consideración la totalidad de las circunstancias que pueda presentar cada caso. Véase, El Pueblo de Puerto Rico v. Daniel Cruz Rosario, 2020 TSPR 60. Peor aún, la Opinión del Tribunal, muestra una inclinación peligrosa a favorecer el uso indiscriminado y automático de la videoconferencia en la etapa del juicio. Véase, Opinión, págs. 28-29, escolio 52.

El Juez Asociado señor Kolthoff Caraballo concurre sin opinión escrita. El Juez Asociado señor Estrella Martínez disiente con opinión escrita.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Ángel N. Santiago Cruz<br><br>Peticionario<br><br>—————————<br><br>El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>En interés del menor F.L.R.<br><br>Peticionario | CT-2020-17<br><br>cons. con<br><br>CT-2020-18 |

**Opinión de Conformidad emitida por el Juez Asociado señor RIVERA GARCÍA.**

En San Juan, Puerto Rico, a 8 de septiembre de 2020.

I

Estoy conforme con la decisión que emitimos hoy sobre el uso de las videoconferencias ante la necesidad apremiante que ha generado la pandemia del COVID-19 de establecer **medidas excepcionales** para salvaguardar la salud y seguridad de las personas imputadas de delito, los testigos y las testigos, y los numerosos funcionarios y funcionarias que intervienen para que este tipo de procesos pueda celebrarse

en cumplimiento con los objetivos que inspiraron los estatutos relevantes. Ello, en el contexto de la vista preliminar contra un adulto y la vista de causa probable contra un menor. En efecto, es una decisión cónsona y que se erige en la protección de intereses similares a los que tomamos en consideración en Pueblo v. Cruz Rosario, 2020 TSPR 90, 204 DPR __ (2020), resuelto el 25 de agosto de 2020.

Evidentemente, el análisis no puede ser idéntico al que utilizamos en Cruz Rosario, *supra*, pues **el derecho a la confrontación es un derecho del juicio propiamente ("*trial right*"), que no se extiende a las etapas previas.**[90] Pueblo v. Cruz Rosario, *supra*, pág. 38, citando a Barber v. Page*,* 390 US 719, 725 (1968). Véanse: Pueblo v. Ruiz Lebrón, 111 DPR 435, 456 esc. 5 (1981) (Irizarry Yunqué, J., opinión disidente), haciendo referencia a Motes v. United States, 178 US 458 (1900); Schneckloth v. Bustamonte, 412 US 218, 238 (1973); E.L. Chiesa Aponte, Procedimiento Criminal y la Constitución: Etapa Adjudicativa, San Juan, SITUM, 2018, pág. 61. Véase, además, Opinión del Tribunal, págs. 10 y 33. La jurisprudencia es vasta en ese aspecto. Por consiguiente,

---

[90] En el caso de los procesos de menores, el juicio sería lo que se le conoce como la vista adjudicativa. Regla 7.1 de Procedimiento para Asuntos de Menores, 34 LPRA Ap. I-A.

los planteamientos en una dirección contraria resultan inmeritorios bajo el estado de derecho vigente.

En lo que respecta al debido proceso de ley y la asistencia de abogado, como bien reconoce la Opinión Mayoritaria, el sistema de videoconferencia contiene herramientas para garantizar cabalmente estos derechos en las etapas previas al juicio. Como consecuencia, no hace falta un consentimiento voluntario, consciente e inteligente para renunciar un derecho que no se le privará a persona alguna. Véase Opinión Disidente del Juez Asociado señor Estrella Martínez, pág. 4 ("Sólo de esta manera se justificaría jurídicamente la celebración de estos procedimientos mediante videoconferencia, pues correspondería a la persona imputada determinar si renuncia a estos derechos de manera voluntaria, inteligente y expresa").[91] Precisamente, y contrario a lo que aduce la

---

[91] Resulta altamente especulativo asumir el inadecuado funcionamiento de las salas de videoconferencia ni se puede llegar a la conclusión, sin fundamento alguno, de que una agencia estableció que no llevará a las personas imputadas a los tribunales en la etapa del juicio. Véase Opinión Disidente del Juez Asociado señor Estrella Martínez, pág. 6-7, que hace referencia al Reglamento de emergencia para establecer el procedimiento de traslado de los miembros de la población correccional a procesos judiciales durante la emergencia de la pandemia del coronavirus (COVID-19) promulgado por el Departamento de Corrección el 3 de julio de 2020 —que dispone que no se transportarán personas a los tribunales en etapas previas al juicio— y concluye irreflexivamente que el reglamento

Opinión Disidente, en ninguna parte de la Opinión
Mayoritaria este Tribunal reconoce que el Estado puede
suspender derechos constitucionales de "un mero plumazo".
Íd., págs. 33-34. **Las videoconferencias no dispensan la
obligación de garantizar los derechos constitucionales y
estatutarios que rigen en las referidas etapas del proceso.**

Ahora bien, no debo pasar por alto que estamos
revisando **interlocutoriamente** una etapa procesal que
reiteradamente hemos establecido que no puede revisarse de
esta manera. En ese sentido, me veo precisado a emitir unos
pronunciamientos para aclarar los fundamentos por los cuales
la situación ante nuestra consideración es distinguible de
los casos en que este tipo de revisiones fueron rechazadas.
De entrada, es indispensable señalar que **la situación que
estamos viviendo es excepcional y extraordinaria.** Ello,
precisamente, es lo que permite la evaluación y adjudicación
atípica que se produjo en los casos que consideramos hoy.
Veamos.

## II

---

"obliga a toda la población correccional a comparecer a las
etapas preliminares y posteriores a su juicio mediante
videoconferencia". Peor aún, cuando a través de la propia Opinión
Disidente se exponen numerosas disposiciones que instituyen una
normativa contraria a su conclusión.

Este Tribunal ha sido consistente y enfático en establecer que las etapas procesales previas al juicio están instauradas con herramientas que proveen una especie revisión ante el foro primario. Amparados en que estas fases del proceso judicial se intentan revisar mediante el recurso de *certiorari* ⸺un mecanismo extraordinario que no está disponible cuando existe otra vía de revisión para las partes⸺ hemos resuelto que este último no procede. En ese sentido, son varios fundamentos los que nos han llevado a concluir que, *e.g.,* no se puede recurrir interlocutoriamente de una vista preliminar.

**Primero**, hemos resaltado que ambas partes tienen mecanismos disponibles para corregir cualquier error que se cometa en esas etapas. De una vista preliminar, el Ministerio Público puede recurrir a una vista preliminar en alzada si no está conteste con el resultado de la misma. Pueblo v. Díaz de León, 176 DPR 913, 915 (2009). Véase la Regla 24(c) de Procedimiento Criminal, 34 LPRA Ap. II. Véase, además, la Regla 2.12 de Procedimiento para Asuntos de Menores, 34 LPRA Ap. I-A (provee un mecanismo análogo). Incluso, luego de celebrada la vista preliminar en alzada, la Fiscalía podría presentar un recurso de *certiorari* para que se revisen errores estrictamente de derecho. Pueblo v.

<u>Cruz Justiniano</u>, 116 DPR 28, 30 (1984). Por su parte, la Defensa puede solicitar la desestimación de la acusación a través de la Regla 64(p) de Procedimiento Criminal cuando entienda que no se determinó causa conforme a derecho. <u>Pueblo v. Rivera Vázquez</u>, 177 DPR 868, 877-878 (2010) ("el remedio exclusivo del acusado ante una determinación de causa probable en la vista preliminar, ya sea la vista inicial o la vista en alzada, es la desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, *supra*"). Véase, además, la Regla 6.2(d) de Procedimientos para Asuntos de Menores, *supra* (establece una causa de desestimación análoga en los procesos de menores).

**Segundo**, hemos reconocido que los pronunciamientos por los tribunales de mayor jerarquía pueden resultar prematuros. La decisión del tribunal al finalizar la audiencia puede ser favorable a la parte que presuntamente se afectó negativamente. Así pues, con el fin de no retrasar innecesariamente los procedimientos, hemos rechazado actuar especulativamente y presumir que los errores que se aleguen serán un factor determinante en la determinación que emita el foro primario. Véase <u>Pueblo v. Encarnación Reyes</u>, 191 DPR 176, 183 (2014) (Martínez Torres, J., opinión de conformidad) ("Todavía el Ministerio Público no sabe si

logrará su objetivo en este caso, pues la vista preliminar no ha terminado. Si la Fiscalía no logra que se declare causa probable durante la vista preliminar inicial, ya sea porque el tribunal no permite que el testigo declare o por cualquier otra razón, siempre está disponible el mecanismo de la vista preliminar en alzada"). Esto es, la decisión final del tribunal en esa etapa puede ser favorable a la parte que solicitara la revisión de un aspecto interlocutorio, por lo que el pronunciamiento de un foro revisor puede constituir un pronunciamiento innecesario y a destiempo. Véase Pueblo v. Díaz de León, *supra,* pág. 923 (en el que resolvimos que el Ministerio Público acudió a destiempo al foro apelativo intermedio para revisar si existía causa probable en la vista preliminar). Véase, además, Pueblo v. Encarnación Reyes, *supra,* pág. 177 (Sentencia).

**Tercero**, y atado a lo anterior, los mecanismos instituidos en las Reglas de Procedimiento Criminal permiten corregir o subsanar los errores cometidos, si es que se cometieron. Véase Pueblo v. Figueroa Rodríguez, 200 DPR 14 (2018). Véanse, además: Pueblo v. Nazario Aponte, 198 DPR 962, 969-970 (2017 (Sentencia); Pueblo v. Jiménez Cruz, 145

DPR 803, 815 (1998) (ambos en el contexto de la vista de causa probable para arrestar vis a vis la vista preliminar).

En general, estos han sido los tres principios que hemos tomado en consideración al establecer la improcedencia de la revisión interlocutoria de una vista preliminar.[92] Véase Pueblo en interés menor K.J.S.R., 172 DPR 490, 497, 500 (2007) (reiteramos que la Regla 2.10 de Procedimientos de Menores "es equivalente a la Regla 23 de Procedimiento Criminal, 34 LPRA Ap. II, relativa a la vista preliminar […]. Por esto, la norma jurisprudencial sobre esta última aplica al interpretar la Regla. 2.10, ante").[93] Precisamente, sustentados en estos elementos, en Pueblo v. Figueroa Rodríguez, *supra*, pág. 25, reiteramos la improcedencia del recurso de *certiorari* para revisar dictámenes interlocutorios de la vista preliminar y la vista preliminar en alzada.

---

[92] También se ha señalado que la revisión interlocutoria puede convertir esas etapas procesales previas al juicio en verdaderos minijuicios. Pueblo v. Encarnación Reyes, 191 DPR 176, 185 (2014) (Martínez Torres, J., opinión de conformidad).

[93] En Pueblo en interés menor K.J.S.R., 172 DPR 490, 500 (2007), reafirmamos la normativa aplicable a la revisión de una vista preliminar para determinar causa probable para acusar como audiencia análoga a la vista de causa probable para presentar la querella contra un menor. Véase, además, Pueblo en interés menor G.R.S., 149 DPR 1 (1999); Pueblo en interés menor E.R.C., 149 DPR 804 (1999); Pueblo en interés menores A.L.R.G. y F.R.G., 132 DPR 990 (1992).

III

Ciertamente, los casos consolidados ante nuestra consideración fueron revisados a través del recurso de certificación intrajurisdiccional, no mediante el recurso de *certiorari*. Sin embargo, **la certificación intrajurisdiccional y el *certiorari* son dos recursos extraordinarios y discrecionales**. Véase UPR v. Laborde Torres y otros, 180 DPR 253, 272 (2010); Pueblo v. Díaz de León, *supra,* pág. 917. De hecho, la certificación intrajurisdiccional solo **se expide luego de auscultar <u>la etapa procesal</u> en que se encuentra el caso**. Rivera Schatz v. ELA y C. Abo. PR II, 191 DPR 791, 849 (2014). Por consiguiente, es de esperarse que este Tribunal tomó en consideración los parámetros establecidos para estas fases del proceso en el contexto de un *certiorari*, así como los demás elementos pertinentes previo a decidir si entender sobre los recursos de autos. Íd., pág. 849 ("Por su carácter excepcional, al ejercer nuestra discreción para autorizar una certificación intrajurisdiccional, debemos considerar los siguientes elementos: (1) la urgencia, (2) la etapa en que se encuentran los procedimientos, (3) la necesidad que puede presentarse de recibir prueba y (4) la complejidad de la controversia"). Ello, para evitar que en el futuro se

utilice la certificación intrajurisdiccional como un subterfugio para evadir la normativa que rige la presentación de un *certiorari* en esta fase del proceso.

A esos efectos, como adelanté, las circunstancias que rodean los casos ante nuestra consideración hacen manifiestamente inaplicables los principios que hemos utilizado para requerir que se agoten los mecanismos provistos por las reglas antes de revisar la comisión de presuntos errores por el Tribunal de Primera Instancia. Es que **estos recursos trascienden los aspectos meramente procesales que hemos tenido ante nuestra consideración en el pasado**. Véase, *e.g.*: Pueblo v. Figueroa Rodríguez, *supra*; Pueblo v. Andaluz Méndez, 143 DPR 656 (1997) (ante la presunta denegatoria del tribunal de permitir la presentación de cierta prueba, se tuvieron que completar todos los mecanismos disponibles de la vista preliminar, la vista preliminar en alzada y la moción de desestimación al amparo de la Regla 64(p), *supra*, para poder instar el recurso de *certiorari*); Pueblo v. Encarnación Reyes, *supra*; Pueblo v. Díaz de León, *supra*.

Los casos de autos parecen tener como elemento central la exigencia de que nos pronunciemos respecto a la procedencia o no de una vista preliminar en el procesamiento

criminal de adultos o una vista de causa probable en un proceso contra un menor mediante el mecanismo de videoconferencia. Ello, sin duda, nos llevó a consolidarlos.

Sin embargo, lo que nos hizo ejercer nuestra discreción para entender sobre estos recursos es que llevan ínsita **la necesidad de que este Tribunal determine <u>oportunamente</u> los mecanismos disponibles** para salvaguardar la vida, la salud y la seguridad de todas las personas que intervienen en este tipo de procesos judiciales actualmente. Esto es, de la persona imputada o que es objeto del proceso, los testigos y las testigos, los abogados y las abogadas, así como los funcionarios y funcionarias del Estado que cumplen sus funciones, día a día, durante la emergencia que vivimos.

Estos no constituyen casos en que los mecanismos ordinarios que están disponibles con posterioridad a las vistas en cuestión hubieran tenido el efecto de corregir los errores planteados. No habría remedio alguno si interviniéramos tardíamente, tras la exposición a una enfermedad que ha demostrado ser altamente mortal en casos en que tal hecho es dispensable y evitable.[94] Es decir,

---

[94] Véase World Health Organization, <u>Puerto Rico: WHO Coronavirus Disease (COVID-19) Dashboard,</u> https://covid19.who.int/region/amro/country/pr (última visita, 7 de septiembre de 2020).

luego de un evento que pueda exponer innecesariamente a las personas a esta enfermedad **no hay moción de desestimación ni proceso en alzada que pueda corregirlo.** Por lo tanto, resultaba imperativo un pronunciamiento para que los foros inferiores cuenten con una norma clara en las circunstancias **excepcionales, extraordinarias y únicas** que estamos experimentando.

Aclarado lo anterior, ante la necesidad imperante de nuestra intervención en este preciso momento, reitero mi conformidad con la Opinión de este Tribunal.


Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |
|---|---|
| El Pueblo de Puerto Rico<br>Recurrido<br>v.<br><br>Ángel N. Santiago Cruz<br>Peticionario<br>_____<br><br>El Pueblo de Puerto Rico<br>Recurrido<br><br>v.<br><br>En interés del menor F.L.R.<br>Peticionaria | CT-2020-17  Certificación<br>CT-2020-18 |

Opinión Concurrente emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 8 de septiembre de 2020.

Concurrimos con el resultado al que llega hoy este Tribunal en el presente caso, pues entendemos que con el mismo se ha logrado alcanzar un balance adecuado entre los derechos que posee todo imputado o acusado de delito, o de falta en los casos de menores de edad, -- tales como el derecho a un

debido proceso de ley, a confrontar y contrainterrogar a los testigos de cargo y a una representación legal adecuada --, y los derechos a la salud y seguridad de un Pueblo que sufre una crisis sin precedentes, como consecuencia de la pandemia del COVID-19. Lo anterior, en el contexto del uso de los sistemas de videoconferencia para la celebración de la vista de causa probable para acusar (en adelante, "vista preliminar") dispuesta en la Regla 23 de Procedimiento Criminal, *infra*, así como para la vista de determinación de causa probable para radicar querella en procedimientos judiciales bajo la *Ley de Menores*, *infra*.

Y es que, tal como correctamente se resuelve en la Opinión que hoy emite esta Curia, la forma más acertada de armonizar los intereses aquí en conflicto es dando paso a la celebración de los procesos judiciales antes mencionados a través de los mecanismos de videoconferencia. Como cuestión de hecho, así lo adelantamos hace tan solo unos días atrás en nuestra Opinión Disidente en *Pueblo v. Cruz Rosario*, 2020 TSPR 90, 204 DPR ___ (2020).

Así pues, con esta Opinión Concurrente, somos de la postura que -- además de las instancias contempladas en las *Guías Generales para el Uso del Sistema de Videoconferencia en los Tribunales del Estado Libre Asociado de Puerto Rico* y las *Guías sobre las disposiciones generales para el uso de la videoconferencia en los procedimientos penales*, *infra*,       -- se sostiene el uso de los sistemas de

videoconferencias por parte de la Rama Judicial de Puerto Rico en la celebración de los siguientes procesos judiciales: vista de causa probable para arresto (Regla 6 de Procedimiento Criminal, 32 LPRA Ap. II, R. 6), vista de causa probable para arresto en alzada, vista preliminar, vista preliminar en alzada, juicio en su fondo por delito menos grave, y en casos bajo la jurisdicción del Tribunal de Menores. **Hacemos la salvedad que, en estos momentos, no estamos pasando juicio -- no, al menos, quien suscribe -- sobre la corrección o no de autorizar el uso del sistema de videoconferencia para la celebración de un juicio en su fondo por delito grave, bien sea por tribunal de derecho o jurado.**

Aclaramos, sin embargo, que la procedencia de dicho mecanismo -- entiéndase, el uso de los sistemas de videoconferencias --, en procesos como los antes mencionados, y salvo contadas excepciones, debe limitarse al periodo en que esté vigente el actual estado de emergencia de salud pública. Finalizado el mismo, procede que se dé paso, **_inmediatamente_**, a la comparecencia física en corte de los imputados o acusados de delito, o de faltas en caso de los menores, para la celebración de los procesos judiciales de los que se trate. Nos explicamos.

I.

Los hechos medulares que dieron margen al presente litigio se recogen con particular precisión en la Opinión

que hoy emite este Tribunal, razón por la cual acogemos los mismos por referencia. En síntesis, los casos de marras versan sobre la procedencia del mecanismo de videoconferencia para la determinación de causa probable para acusar, así como la determinación de causa probable para radicar querella en casos de menores, cuando los imputados de delitos o faltas se encuentran recluidos en una institución correccional. Ello, como alternativa para cumplir con las medidas de distanciamiento social recomendadas por las entidades de salud pertinentes -- tales como la Organización Mundial de la Salud (en adelante, "OMS") y el Centro para el Control y la Prevención de Enfermedades (en adelante, "CDC") -- para contrarrestar el avance de la pandemia COVID-19.

Por un lado, en el caso *Pueblo de Puerto Rico v. Ángel N. Santiago Cruz,* CT-2020-17 -- el cual fue certificado *motu proprio* por esta Curia de conformidad con el Art. 3.002(e) de la Ley Núm. 22-2003, conocida como *Ley de la Judicatura de 2003*, 4 LPRA sec. 24s -- el señor Ángel N. Santiago Cruz (en adelante, "señor Santiago Cruz") aduce que el uso de dicho mecanismo, mientras se encuentra recluido en una institución penal, viola su derecho constitucional a un debido proceso de ley, a confrontar y contrainterrogar a los testigos de cargo que testifiquen en su contra durante la vista preliminar y a una

representación legal adecuada.[95] Tal argumento no fue acogido por el Tribunal de Primera Instancia ni por el Tribunal de Apelaciones.

Por otra parte, compareció ante este Tribunal la representación legal del menor F.L.R. mediante recurso de certificación intrajurisdiccional en *Pueblo de Puerto Rico v. En Interés del Menor F.L.R.*, CT-2020-18. En dicho recurso, el cual fue acogido por esta Curia, se alega que no procede el uso del sistema de videoconferencia para la celebración de una vista de causa probable para radicar querella en contra del menor F.L.R., a quien se le imputa la comisión de varias faltas y quien se encuentra recluido en la Institución de Menores en Ponce.[96] Para ello, se esbozan argumentos similares a aquellos expuestos por el señor Santiago Cruz.

Así las cosas, y luego de que este Tribunal ordenara la consolidación de ambos recursos, el Ministerio Público comparece ante nos y argumenta que, en el balance de intereses, entre preservar la salud y la vida de la

---

[95] **Cabe mencionar que, en el caso del señor Santiago Cruz, se suspendieron varias vistas debido a que el Departamento de Corrección y Rehabilitación no trasladó a éste al Tribunal de Primera Instancia, Sala Superior de Humacao.** De igual forma, surge de la *Minuta y Orden* emitida por el foro primario el 18 de junio de 2020, que el señor Santiago Cruz no pudo participar mediante videoconferencia de cierta vista sobre el estado de los procedimientos debido a que había sido trasladado a la Institución Correccional Ponce 676. Véase, Expediente del Tribunal de Apelaciones, Anejo XX, pág. 173

[96] **En cuanto al menor F.L.R, el Departamento de Corrección y Rehabilitación y la Procuradora de Menores desacataron un sinnúmero de órdenes emitidas por el Tribunal de Primera Instancia a los fines de que se trasladara al menor al tribunal para la celebración de los procedimientos.** Ello provocó la suspensión de las vistas en cinco ocasiones.

población correccional adulta y juvenil, frente a la presencia física del imputado o acusado de delito en las vistas anteriores al juicio, la balanza debe inclinarse a favor del primero de estos intereses. Por ello, nos solicita que se permita que aquellas personas que se encuentran sumariadas en las diferentes instituciones correccionales -- de adultos o juveniles -- comparezcan a los procedimientos anteriores al juicio mediante el uso de los sistemas de videoconferencia.

Posteriormente, compareció ante esta Curia la Unión Independiente de Abogados de la Sociedad de Asistencia Legal, mediante *Moción solicitando permiso para comparecer como amicus curiae* en el caso *Pueblo de Puerto Rico v. Ángel N. Santiago Cruz*, CT-2020-17, junto con su alegato a esos efectos. En ésta, sostienen que el uso del sistema de videoconferencia según el protocolo establecido por el Departamento de Corrección y Rehabilitación violenta los derechos constitucionales del señor Santiago Cruz. A esos fines, sostienen que el mecanismo de videoconferencia impide que se dé la interacción necesaria, entre el señor Santiago Cruz y su abogado, para hacer efectivo su derecho a una representación legal adecuada. Así, expresan que resolver el caso de referencia requiere hacer un fino balance de intereses en conflicto, pues se trata del debido proceso de ley así como la igual protección de las leyes que le asiste a toda persona imputada o acusada de delito.

Establecido lo anterior, cabe resaltar que hace tan solo unos días atrás, en nuestra Opinión Disidente en *Pueblo v. Cruz Rosario*, *supra*, nos expresamos sobre el modo -- a nuestro juicio, correcto -- de disponer de controversias similares a las que hoy nos ocupan. Ello en el contexto de la procedencia del uso de mascarillas por parte de los testigos de cargo en determinado proceso criminal, ante la negativa del acusado de delito menos grave de utilizar el mecanismo de videoconferencia para la celebración del juicio en su fondo.

Por considerar que lo allí dicho dispone -- en gran parte -- de los asuntos ante nuestra consideración, conviene repasar varios acápites de la referida Opinión Disidente (renumerados como las secciones II y III de este escrito), los cuales contienen parte de la normativa pertinente para atender correctamente las controversias planteadas en las causas de epígrafe. Inmediatamente después, procederemos a exponer el derecho aplicable a los demás asuntos pertinentes a los casos de marras. Veamos.

II.

Según señalamos en nuestra Opinión Disidente en *Pueblo v. Cruz Rosario*, *supra*, la Constitución del Estado Libre Asociado de Puerto Rico, en su Artículo II, Sección 11, claramente dispone que "[e]n todos los procesos criminales el acusado disfrutará del derecho a un juicio rápido y público ... a carearse con los testigos de cargo, a obtener

la comparecencia compulsoria de testigos a su favor, a tener asistencia de abogado, y a gozar de la presunción de inocencia". CONST. ELA art. II, § 11, LPRA, Tomo 1. Del mismo modo, la Enmienda Sexta de la Constitución de Estados Unidos establece, en lo pertinente, que el acusado disfrutará del derecho a confrontar a los testigos que se presenten en su contra. CONST EE.UU. enm. VI, LPRA, Tomo. 1. Conforme a las precitadas disposiciones constitucionales, "[t]odo acusado tiene derecho a estar presente en todas las etapas del juicio. Es un principio fundamental que no se cuestiona". *Pueblo v. Bussman*, 108 DPR 444 (1979). Véanse además, *Toro Rivera v. ELA*, 194 DPR 393 (2015); *Pueblo v. Lourido Pérez*, 115 DPR 798 (1984).

**No empece a lo anterior, en su obra *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, el profesor Ernesto L. Chiesa Aponte nos señala que en nuestra jurisdicción no hay un derecho absoluto a estar presente en todo incidente del procedimiento criminal. Ello, pues, las garantías consagradas en las cláusulas constitucionales antes citada, se refieren al juicio, específicamente en relación con las siguientes etapas o incidencias: (1) testimonio de testigos en contra del acusado, ello como exigencia de la cláusula de confrontación; (2) presentación de prueba testifical, documental, demostrativa o de cualquier índole, como corolario del debido proceso de ley y del derecho a asistencia de abogado; y (3) cualquier incidente donde la**

**ausencia   involuntaria   del   acusado   menoscabe significativamente la defensa de éste o resulte contraria a la noción de juicio justo e imparcial lo cual es exigencia del debido proceso de ley**. E.L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Bogotá, Ed. Forum, Vol. II, 1992, pág. 237.

Cónsono con lo anterior, este Tribunal ha sentenciado que, aunque el derecho del acusado a estar presente en el juicio es una exigencia del debido proceso de ley, el mismo no es absoluto. *Pueblo v. Esquilín Díaz*, 146 DPR 808, 822-23 (1998); *Pueblo v. Bussman*, *supra*, pág. 446. En consecuencia, tanto esta Curia, como el Tribunal Supremo de los Estados Unidos, han validado la renuncia a este derecho. *Pueblo v. Esquilín Diaz*, *supra*, pág. *823*; *Pueblo v. Ruiz Lebrón*, 111 DPR 435, 444 (1981); *Pueblo v. Bussman*, *supra*, págs. 446-47. En lo relativo a la doctrina sobre la renuncia del derecho a estar presente en el juicio -- la cual generalmente aplicaría también al momento en que se dicte sentencia -- se ha dicho que ésta puede ser implícita o explícita. Véase, Chiesa Aponte, *op. cit.*, pág. 260.

Al respecto, conviene señalar aquí que las Reglas de Procedimiento Criminal, 34 LPRA Ap. II, reconocen una mayor jerarquía a este derecho -- la presencia física en el juicio -- cuando se trata de delitos graves. E.L. Chiesa Aponte, *Procedimiento Criminal y Constitucional: Etapa Adjudicativa*, Ed. Situm, 2018, pág. 179. Sobre el

particular, la Regla 243 (a), 34 LPRA Ap. II, del referido cuerpo reglamentario dispone que, cuando se trate de delitos graves, el acusado deberá estar presente en el acto de la lectura de la acusación y en todas las etapas del juicio, incluyendo la constitución del jurado, la rendición del veredicto o fallo, y en el pronunciamiento de la sentencia. Si éste último compareció al acto de lectura, y fue advertido y citado para juicio pero no se presenta, el tribunal podrá celebrar el mismo en ausencia de éste, siempre que estuviese representado por abogado. 34 LPRA Ap. II, R. 243(a). Véase, *Pueblo v. Esquilín Díaz*, *supra*.

A *contrario sensu*, en casos por delitos menos graves, siempre que el acusado estuviere representado por abogado, el tribunal puede proceder a la lectura de la denuncia o acusación, al juicio, al fallo y al pronunciamiento de la sentencia, y podrá recibir una alegación de culpabilidad en ausencia de éste. 34 LPRA Ap. II, R. 243 (b). Si la presencia del acusado fuera necesaria, el tribunal podrá ordenar su asistencia. *Id*.

Por otro lado, el inciso (d) de la precitada regla procesal criminal contempla determinada conducta del imputado o acusado de delito como una renuncia a su derecho a estar presente en los procedimientos. *Id.* Ello, al disponer que, en procesos por delitos graves o menos graves, si el acusado incurre en cualquier conducta que impida el desarrollo normal del juicio, el tribunal podrá:

(1) tramitar un desacato; (2) tomar las medidas coercitivas pertinentes; o (3) ordenar que el acusado sea removido y continuar con el proceso en su ausencia. 34 LPRA Ap. II, R. 243 (d).

No obstante, el hecho de que pueda renunciarse al derecho a estar presente no implica que deba fomentarse esa práctica. *Pueblo v. Bussman*, *supra*, pág. 447. **"Es preferible la presencia del acusado durante todas las etapas del proceso"**. *Torres Rosario v. Alcaide*, 133 DPR 707 (1993). Solo debe dispensarse cuando se demuestre que resultaría extremadamente gravosa su comparecencia, que el estado no la requiera para establecer su caso y que su ausencia no demorará los procedimientos. *Id.; Pueblo v. Bussman*, *supra*.

### III.

Del mismo modo, en nuestra Opinión Disidente en *Pueblo v. Cruz Rosario*, *supra*, dejamos claro que la precitada disposición constitucional -- entiéndase, el Art. II, Sección 11 de la Constitución del Estado Libre Asociado, *supra* -- también hace referencia a lo que la jurisprudencia ha reconocido como la "cláusula de confrontación", la cual recoge el derecho de un acusado a confrontar a sus acusadores y se compone de tres aspectos fundamentales, a saber: el derecho al careo o confrontación cara a cara con los testigos adversos; el derecho a contrainterrogar a estos testigos; y por último, el derecho

a que se excluya cierta prueba de referencia que el
Ministerio Público pretenda utilizar como prueba de cargo.
*Pueblo v. Pérez Santos*, 195 DPR 262, 269-70 (2016); *Pueblo
v. Santos Santos*, 185 DPR 709, 720 (2012). Véase, además,
Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y
Estados Unidos*, *op. cit.*, pág. 569.

El primero de los aspectos fundamentales recogidos en
la referida cláusula constitucional es aquel que reconoce
el derecho a la confrontación o al careo, el cual hace
referencia a que los testigos de cargo testifiquen frente
al acusado, cara a cara.[97] El mismo contribuye
significativamente a la búsqueda de la verdad y a un juicio
justo. Véase, *Coy v. Iowa*, 487 US 1012 (1988). Véase
además, Chiesa Aponte, *Procedimiento Criminal y
Constitucional: Etapa Adjudicativa*, *op. cit.*, págs. 82-83.
"No cabe duda de que es más difícil mentir de frente a la
persona afectada o perjudicada con la mentira, que lo que
sería de espaldas o en ausencia de esa persona". *Id.*

En cuanto a lo anterior, hemos reconocido que para que
el derecho a la confrontación o al careo tenga concreción,

---

[97] Ahora bien, a *contrario sensu*, en *Pueblo v. Ruiz Lebrón*, 111 DPR 435
(1981), este tribunal sentenció que la confrontación que garantiza la
Sexta Enmienda y el Art. II, Sec. 11 de nuestra Constitución se cumple
con la oportunidad de contrainterrogar, sin que sea indispensable la
presencia del acusado. Lo anterior, tras expresar que la confrontación
no está irremisiblemente atada al encuentro físico, al enfrentamiento
nariz con nariz entre testigo y acusado. Sin embargo, la Corte Suprema
de los Estados Unidos rescató este aspecto de la cláusula de
confrontación en *Coy v. Iowa*, 487 US 1012 (1988), en el cual declaró
inconstitucional un estatuto de Iowa que permitía, para la protección
de cierto tipo de testigo de cargo, testificar sin mirar al acusado, a
través de una pantalla, sin necesidad de que el Ministerio Público
justificara la necesidad de prescindir del careo. Véase, E.L. Chiesa
Aponte, *Derecho Procesal Penal*, 81 Rev. Jur. UPR 373 (2012).

el debido proceso de ley exige que se pongan al alcance del acusado de delito los medios de prueba para impugnar los testigos y atacar su credibilidad, así como todo recurso análogo dirigido a erradicar la falsedad del juicio. *Pueblo v. Guerrido López*, 179 DPR 950, 958 (2010); *Pueblo v. Casanova*, 161 DPR 183, 192 (2004); *Pueblo v. Rodríguez Sánchez*, 109 DPR 243 (1979). "Un careo sin estos instrumentos, cuando sean legítimamente asequibles, frustra el propósito del precepto constitucional". *Pueblo v. Guerrido López*, *supra*; *Pueblo v. Rodríguez Sánchez*, *supra*, pág. 249.

Por otro lado, el segundo aspecto fundamental recogido en la disposición constitucional bajo estudio, y núcleo de la cláusula de confrontación, es el derecho de los acusados de contrainterrogar a los testigos que el Ministerio Público presente en su contra. Sobre el particular, se ha sentenciado que el derecho a contrainterrogar un testigo es imprescindible para la celebración de un juicio justo e imparcial, pues éste es el mecanismo con el que cuenta la defensa para descubrir la verdad. *Pueblo v. Guerrido López*, *supra*, pág. 958; *Pueblo v. Pacheco Padilla*, 92 DPR 894, 897 (1965). De ahí, la importancia de que el acusado o imputado esté presente durante el testimonio de estos testigos en el juicio; siendo ésto, a todas luces, parte esencial del derecho a la confrontación. Chiesa Aponte, *Derecho Procesal*

*Penal de Puerto Rico y Estados Unidos*, *op. cit.*, págs. 233-234.

**Establecido lo anterior, y en cuanto al derecho a confrontar a los testigos de cargo, es menester señalar que prestigiosos tratadistas de este tema han sostenido que "lo primero que hay que aclarar es que se trata de un *trial right*, como casi todos los derechos del acusado reconocidos en la Enmienda Sexta". Chiesa Aponte, *Procedimiento Criminal y la Constitución: Etapa Adjudicativa*, *op. cit.*, págs. 61-62. Siendo ello así, no cabe hablar, en estos escenarios, del derecho constitucional de los imputados a carearse con los testigos de cargo en la vista de causa probable para arresto o en la vista preliminar. *Id.* En ese sentido, "[e]s perfectamente compatible con la Constitución de Puerto Rico y los Estados Unidos una vista de causa probable para arresto o para acusar, sin derecho del imputado a carearse con los testigos del ministerio fiscal". *Id.***

Por último, y en lo relacionado al tercero de los aspectos intrínsecos al Art. II, Sección 11, de la Constitución del Estado Libre Asociado, *supra*, la cláusula de confrontación exige que se excluya cierta prueba de referencia como prueba de cargo, entiéndase aquella declaración que no sea la que la persona declarante hace en el juicio o vista, la cual se ofrece en evidencia para probar la verdad de lo aseverado. 32 LPRA Ap. IV, R. 801.

Al respecto, e interpretando su análoga en la Enmienda Sexta, en *Crawford v. Washington*, 541 US 36 (2004), la Corte Suprema de Estados Unidos concluyó que sólo se permite la admisión en evidencia de una declaración testimonial hecha contra un acusado fuera de corte si el declarante no está disponible para comparecer al juicio y el acusado tuvo la oportunidad de contrainterrogarlo en el momento en que se hizo la declaración. De no satisfacerse estos requisitos, la declaración sería prueba de referencia inadmisible contra el acusado, independientemente de que satisfaga alguna excepción de aquellas dispuestas en las Reglas de Evidencia, 32 LPRA Ap. VI. Véase, *Pueblo v. Santos Santos*, *supra*, pág. 721.

Sobre lo antes mencionado, en *Crawford v. Washington*, 541 US 36 (2004), el Tribunal Supremo de los Estados Unidos aclaró que, más que garantizar la confiabilidad de la evidencia, la cláusula de confrontación exige que dicha confiabilidad sea evaluada mediante el mecanismo del contrainterrogatorio. *Crawford v. Washington*, *supra*, pág. 61. "Se trata, pues, de una garantía procesal a favor del acusado que no es susceptible de evasión a conveniencia del Estado". *Pueblo v. Santos Santos*, *supra*, págs. 721-22.

En esa dirección, y por ser un aspecto importante del derecho a la confrontación, es menester mencionar que el comportamiento o *demeanor* del testigo, su forma de hablar, los gestos, ademanes y demás detalles perceptibles con los

sentidos, así como las explicaciones dadas por éste durante el contrainterrogatorio, son herramientas esenciales para aquilatar adecuadamente la credibilidad de los testimonios. *Pueblo v. Chévere Heredia*, 139 DPR 1, 16 (1995); *Pueblo v. Rivera Ramos*, 11 DPR 858 (1988). Por ello, el juzgador de los hechos ante quien deponen los testigos debe tener la oportunidad de observar el *demeanor* de éstos para determinar si dicen la verdad. *Pueblo v. García Colón I*, 182 DPR 129, 165 (2011).

De conformidad con lo anterior, este Tribunal ha expresado que "el testigo debe ser oído, y visto, interrogado y mirado". *Ortiz v. Cruz Pabón*, 103 DPR 939, 947 (1975). No solo es importante la voz de éste, sino también otras expresiones tales como el color de las mejillas, los ojos, la consistencia o temblor de la voz, los movimientos corporales y el vocabulario no habitual del testigo. *Id*.

Al respecto, también conviene reseñar aquí lo resuelto por la Corte Suprema de los Estados Unidos en el normativo caso de *Maryland v. Craig*, 497 US 836 (1990). En el mismo, se sostuvo la constitucionalidad de un estatuto del estado de Maryland que permitía que un menor -- víctima de abuso sexual -- testificara mediante un sistema de circuito cerrado, siempre y cuando se realizaran determinaciones específicas sobre el daño emocional que podría sufrir al ser llamado a testificar frente al acusado.

En el precitado caso, el máximo foro federal expresó que la cláusula de confrontación de la Enmienda Sexta no garantiza un derecho absoluto a la confrontación cara a cara con el testigo. *Id.* en la pág. 844. Dicha Curia razonó que el propósito central de la cláusula es asegurar la confiabilidad de la evidencia presentada en contra del acusado, lo cual se logra con los siguientes elementos: (1) presencia física; (2) juramento del testigo; (3) contrainterrogatorio; y (4) observación del comportamiento o *demeanor* del testigo por parte del juzgador. *Id*. en la pág. 846.

Empero, sostuvo el Tribunal Supremo de los Estados Unidos que, aunque el careo es un aspecto importante de la referida cláusula, esto no es un elemento indispensable del derecho a la confrontación. *Id.* en la pág. 846. **Por esta razón, expresó que el derecho de confrontar a los testigos adversos puede satisfacerse en ausencia de una confrontación física o careo en el juicio solo cuando ello sea necesario para adelantar una política pública importante y cuando se asegure la confiabilidad del testimonio del que se trate.** *Id.* **en la pág. 850.**

IV.

Por otra parte, y en lo que se considera otro derecho que le asiste a todo acusado o imputado de delito, tanto el Art. II, Sección 11 de nuestra Constitución, CONST. ELA art. II, § 11, LPRA, Tomo 1, como la Enmienda Sexta de la

Constitución de Estados Unidos, CONST EE.UU. enm. VI, LPRA, Tomo. 1, reconocen el derecho de éstos a tener representación legal en los procedimientos que se lleven en su contra. Tal derecho se ha consagrado como parte fundamental de la cláusula del debido proceso de ley. *Ramos Acevedo v. Tribunal Superior*, 133 DPR 599, 609 (1993); *Pueblo v. Ortiz Couvertier*, 132 DPR 883, 887 (1993).

Las cláusulas de asistencia de abogado a las que hemos hecho referencia buscan proteger al imputado o acusado de delito no solo durante la etapa del juicio, sino también en aquellas etapas críticas que se celebren con anterioridad a este, si ya se ha iniciado la acción penal. Chiesa Aponte, *Procedimiento Criminal y la Constitución: Etapa Adjudicativa*, *op. cit.*, págs. 224. Es decir, para fines de activar las referidas cláusulas constitucionales es suficiente la conducción del arrestado ante un magistrado. *Id*. en la pág. 225. "No es que haya derecho a asistencia de abogado en esa vista, sino que a partir de ahí hay un derecho a asistencia de abogado en toda etapa crítica del procedimiento -*critical stage*- o en toda vista adversativa similar a un juicio (*trial like)*". *Id.* Debido a lo anterior, se ha resuelto que durante la vista preliminar el imputado tiene derecho a estar asistido por abogado. *Id.* Véase, además, *Coleman v. Alabama*, 399 US 1 (1970).

Sin embargo, para que se garantice correctamente el derecho constitucional a la asistencia de abogado, la

representación legal que reciba el imputado o acusado de delito debe ser una adecuada y efectiva. *In re Elfrén García Muñoz*, 160 DPR 744, 750-51 (2003); *Ramos Acevedo v. Tribunal Superior*, *supra*, pág. 609; *Pueblo v. Ortiz Couvertier*, *supra*, pág. 887. En lo pertinente a las controversias que nos ocupan, "es evidente que la presencia del acusado es esencial para que su abogado pueda prestarle la adecuada representación profesional que exige esa cláusula; igual para otras etapas procesales, antes o después del juicio, en la que haya un derecho a asistencia de abogado". Chiesa Aponte, *Procedimiento Criminal y la Constitución: Etapa Adjudicativa*, *op. cit.*, págs. 158-159.

Así pues, una representación legal adecuada y efectiva puede quedar menoscabada cuando: (1) el abogado es incompetente para la tarea que se le asigna; (2) como cuestión de hecho la labor desplegada demuestra su inefectividad; (3) hay un potencial o actual conflicto de intereses para el abogado; y (4) las reglas o actuaciones del tribunal constituyen una limitación irrazonable al derecho a tener adecuada asistencia de abogado. *Pueblo v. Ortiz Couvertier*, *supra*, pág. 88, (citando a E.L. Chiesa, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1991, Vol. I, Sec. 7.9, págs. 449-550). Debido a su fundamental importancia en nuestro ordenamiento penal, la Regla 192.1 de Procedimiento Criminal, 34 LPRA Ap. II, R. 192.1, permite que una persona

que haya resultado convicta invoque como fundamento contra su sentencia que éste no recibió una representación legal adecuada.

V.

Establecido lo anterior, cabe mencionar que la Regla 23 de Procedimiento Criminal, 34 LPRA Ap. II, R. 23, exige la celebración de una vista de causa probable para acusar, conocida como vista preliminar, en todos los casos de delito grave. *Pueblo v. Encarnación Reyes*, 191 DPR 176, 180-81 (2014); *Pueblo v. Rivera Vázquez*, 177 DPR 868, 875 (2010). El propósito principal de dicha vista no es adjudicar la culpabilidad o no culpabilidad del imputado, sino evitar que esta persona sea sometida injustificadamente a los rigores del proceso penal. *Pueblo v. Encarnación Reyes*, *supra*; *Pueblo v. Rivera Vázquez*, *supra*.

Lo anterior se logra "mediante la exigencia de que el Estado presente alguna prueba sobre los elementos constitutivos del delito y sobre la conexión del imputado con su comisión. El imputado, por su parte, puede presentar prueba a su favor y contrainterrogar a los testigos de cargo". *Pueblo v. Rivera Vázquez*, *supra*, pág. 876. Véase, además, *Pueblo v. Rivera Cuevas*, 181 DPR 699 (2011). Si luego de evaluar la prueba desfilada por el Ministerio Público, el juez se convence de que existe causa probable para acusar, éste debe autorizar que se presente la

correspondiente acusación contra el imputado. *Id.* De lo contrario, el imputado debe ser exonerado y puesto en libertad si estaba detenido. *Pueblo v. Rivera Vázquez*, *supra.* Véanse, además, *Pueblo v. Ríos Alonso*, 149 DPR 761, 766-67 (1999); *Pueblo v. Rodríguez Aponte*, 116 DPR 653, 663 (1985).

En síntesis, en cuanto al procedimiento para la celebración de la vista preliminar, la precitada regla exige que se cite al imputado para la misma al menos cinco (5) días antes de su celebración.  34 LPRA Ap. II, R. 23(a). De no contar con asistencia legal, el magistrado correspondiente le nombrará un abogado cuyo nombre se incluirá en dicha citación. *Id.* Asimismo, el inciso (c) exige que el Ministerio Público ponga a disposición de la persona imputada las declaraciones juradas de aquellos testigos que hayan declarado en la vista, ello con el fin de poder contrainterrogarlos. 34 LPRA Ap. II, R. 23(c). Por último, como norma general, la vista preliminar será pública a menos que el juez que la presida determine -- previa solicitud del imputado -- que una vista pública podría menoscabar su derecho a un juicio justo e imparcial. *Id.*

VI.

De otra parte, y para la completa disposición de las controversias ante nuestra consideración, resulta útil repasar aquí lo relativo a los procedimientos judiciales en

casos de menores. Sobre el particular, hemos reiterado que dichos procedimientos son de carácter civil, *sui generis*, y no se consideran de naturaleza criminal. *Pueblo en interés del menor K.J.S.R*, 172 DPR 490, 496 (2007); *Pueblo en interés del menor A.L.G.V.*, 170 DPR 987, 996 (2007); *Pueblo en interés del menor G.R.S.*, 149 DPR 1, 10 (1999). Por esto, con el fin de regular los mismos, se adoptó la Ley Núm. 88 de 9 de julio de 1986, según enmendada, conocida como *Ley de Menores de Puerto Rico*, 34 L.P.R.A. sec. 2201 *et seq*.

El Art. 2 del precitado estatuto dispone que éste se interpretará según los siguientes propósitos: (1) proveer para el cuidado, la protección, el desarrollo, la habilitación y rehabilitación de los menores y proteger el bienestar de la comunidad; (2) proteger el interés público, tratando a los menores como personas necesitadas de supervisión, cuido y tratamiento, a la vez que se le exige responsabilidad por sus actos; (3) garantizar a todo menor un trato justo, el debido procedimiento de ley y el reconocimiento de sus derechos constitucionales. 34 LPRA sec. 2202.

Los principios legales antes mencionados constituyen guías para el ejercicio de la discreción judicial. *Pueblo en interés del menor J.E.T.A*, 174 DPR 809, 896 (2008). Además, "[r]eflejan la noción que sostiene que compete al Estado ofrecer al menor un trato rehabilitador cuando

transgrede la ley penal a la misma vez que protege el interés social de la comunidad de exigir responsabilidad de quienes incurren en conducta delictiva". *Id.* Véase, además, *Pueblo en interés de los menores A.L.R.G. y F.R.G.*, 132 DPR 990 (1993).

Debido al carácter adversativo de estos procesos, sumado a los matices de carácter punitivo que han ido adquiriendo, se exige un alto grado de formalidad en los mismos, pero sin variar la naturaleza especial que conllevan. *Pueblo en interés del menor C.Y.C.G*, 180 DPR 555, 569 (2011); *Pueblo en interés del menor A.L.G.V.*, *supra*, pág. 996; *Pueblo en interés del menor G.R.S.*, *supra*, págs. 11-12. Por esta razón, la *Ley de Menores*, *supra*, y las *Reglas de Procedimiento para Asuntos de Menores*, Ley Núm. 33 de 19 de junio de 1987, 34 LPRA Ap. I-A, crean el esquema jurídico a seguir en aquellos procedimientos bajo la jurisdicción del Tribunal de Menores. *Pueblo en interés del menor C.Y.C.G*, *supra*, págs. 569-70. "Específicamente, la profesora Dora Nevares-Muñiz nos señala que las etapas principales [de los anteriores procedimientos] son las siguientes: (1) la investigación; (2) la aprehensión; (3) la determinación de causa probable para presentar querella; (4) la presentación de mociones anteriores a la vista adjudicativa; (5) la vista adjudicativa; y (6) la vista dispositiva".[98] *Pueblo en interés del menor C.Y.C.G.*, *supra*,

---

[98] El Art. 18 de la *Ley de Menores*, *supra*, expresa que "[p]revia la radicación de la querella, se celebrará una vista de determinación de

pág. 570 (citando a D. Nevares-Muñiz, *Derecho de menores: delincuente juvenil y menor maltratado*, 6ta ed. rev., San Juan, Ed. Inst. para el Desarrollo del Derecho, 2009, págs. 15-16).

En lo pertinente a una de las controversias ante nuestra consideración, la Regla 2.10 de las *Reglas de Procedimiento para Asuntos de Menores*, *supra*, regula lo concerniente a la vista de causa probable. En primer lugar, y según se menciona en la referida disposición legal, el propósito de ésta es constatar si existe "un rastro de prueba" sobre los elementos esenciales de la falta y su conexión al menor imputado. 34 LPRA Ap. I-A, R. 2.10(a). Ello, con el fin de autorizar al Procurador o Procuradora de Menores a "radicar una querella contra del menor por toda falta imputada y dar paso a que se continúen los procedimientos contra el menor, sea la vista de renuncia de jurisdicción o la vista adjudicativa". D. Nevares-Muñiz, *Derecho de menores: delincuente juvenil y menor maltratado*, 7ma ed. rev., San Juan, Ed. Inst. para el Desarrollo del Derecho, 2013, págs. 75-76.

El juez o jueza ante quien se celebre la misma, debe informar al menor del contenido de la queja, advertirle sobre su derecho a la no autoincriminación, a permanecer en silencio y a comunicarse con un abogado y le orientará

---

causa probable ante un juez, conforme al procedimiento establecido en las Reglas de Procedimiento para Asuntos de Menores". 34 LPRA sec. 2218.

sobre todos los restantes derechos que le cobijen. 34 LPRA Ap. I-A, R. 2.10(b). Posteriormente, el Procurador o Procuradora para Asuntos de Menores presentará la prueba para la determinación de causa probable y podrá contrainterrogar a los testigos que presente el menor. 34 LPRA Ap. I-A, R. 2.10(c).

Para realizar la determinación de causa probable, el juez o jueza se limitará al examen del contenido de la queja presentada ante él o ella y solo considerará aquella evidencia que haya sido sometida con relación a la misma. 34 L.P.R.A. Ap. I-A, R. 2.10(c). Asimismo, se requiere que el Procurador o Procuradora de Menores ponga a la disposición del menor -- si así este último lo solicita -- las declaraciones juradas de los testigos que hayan declarado en la vista y que tenga en su posesión. 34 LPRA Ap. I-A, R. 2.10.

**De lo anterior podemos colegir que la vista de determinación de causa probable para radicar querella "equivale a la vista preliminar que se sigue en los procesos criminales de adultos para autorizar al fiscal a presentar acusación por un delito grave que servirá de base para el juicio".** D. Nevares-Muñiz, *op. cit.*, pág. 75. Véase, además, *Pueblo en interés del menor F.R.F*, 133 DPR 172 (1993); *Pueblo en interés de los menores A.L.R.G. y F.R.G.*, *supra*. **En consecuencia, la jurisprudencia interpretativa de la vista preliminar en procedimientos**

**criminales contra adultos es extensiva a la interpretación de la Regla 2.10 a la Regla 2.13 de las *Reglas de Procedimiento para Asuntos de Menores*, supra.**

Cónsono con ello, y teniendo en mente que los procedimientos en casos de menores conllevan el riesgo de privación de libertad, se han reconocido salvaguardas procesales similares a aquellas que se garantizan en los procesos criminales en contra de los adultos. *Pueblo en interés del menor A.L.G.V.*, *supra*, pág. 996; *Pueblo en interés del menor G.R.S*, *supra*, pág. 13. "Reiteradamente hemos señalado que el menor puede reclamar aquellas garantías constitucionales que le aseguren un trato justo y un debido procedimiento de ley". *Pueblo en interés del menor A.L.G.V.*, *supra*, pág. 997; *Pueblo en interés del menor F.R.F*, *supra*, pág. 183; *Pueblo en interés de los menores A.L.R.G. y F.R.G.*, *supra*, pág. 996

Así pues, y en apretada síntesis, tanto la *Ley de Menores*, *supra*, las *Reglas de Procedimiento para Asuntos de Menores*, *supra*, como la jurisprudencia, han extendido a los procedimientos que se lleven en contra de un menor imputado de cometer alguna falta, el derecho al debido proceso de ley. Esto, pues el mismo representa la garantía fundamental de protección que tiene un ciudadano o ciudadana en contra de los posibles abusos o usos arbitrarios de poder en que incurra el Estado. *Pueblo en interés del menor C.Y.C.G,*

*supra*, págs. 567-68; *Pueblo v. Román Mártir*, 169 DPR 809, 822 (2007).

Asimismo, se garantiza el derecho a una representación legal adecuada, la protección contra registros y allanamientos irrazonables, la protección contra arrestos sin orden judicial, el derecho a un juicio rápido y la garantía constitucional contra la autoincriminación. Véanse, *Pueblo en interés del menor C.Y.C.G.*, *supra*; *Pueblo en interés del menor R.H.M.*, 126 DPR 404 (1990); *Pueblo en interés del menor R.G.G.*, 123 DPR 443 (1989). Además, se reconoce el derecho a rebatir la prueba presentada por el Estado, a confrontar los testigos de cargo en los procesos en su contra y a obtener copia de las declaraciones juradas de los testigos que hayan declarado en la vista de determinación de causa probable para presentar la querella. *Id.* Mientras, el Art. 37(g) de la *Ley de Menores*, *supra*, también requiere que el menor de edad comparezca acompañado de sus padres, tutor, encargado o, en su defecto, del defensor judicial. 34 LPRA sec. 2237. Asimismo, toda citación, orden o resolución deberá ser notificada a éstos. *Id.*

## VII.

Por último, y como se sabe, en diciembre de 2019 surgió una nueva enfermedad infecciosa conocida como COVID-19, perteneciente a una extensa familia de virus llamados coronavirus. Dicho virus causa una serie de infecciones

respiratorias que van desde un resfriado común hasta enfermedades más graves como el síndrome respiratorio de Oriente Medio (MERS) y el síndrome respiratorio agudo severo (SARS). Además, entre los síntomas más habituales de la enfermedad se encuentran la fiebre, tos seca, el cansancio y, en ocasiones, congestión nasal, dolor de cabeza, conjuntivitis, entre otros.[99]

Según ha sido sentenciado por estudiosos del tema, la principal forma de propagación del COVID-19 es a través de las gotículas respiratorias expelidas cuando alguien enfermo toce, estornuda o habla. De esa manera, una persona puede contraer la enfermedad por contacto con otra persona que esté infectada e inhale dichas gotículas. Además, las mismas pueden caer sobre objetos y superficies por lo que otras personas pueden infectarse si luego de tocar dichas superficies, se tocan los ojos, nariz o boca sin lavar o desinfectar sus manos.

No obstante lo anterior, y conforme lo ha señalado la OMS, existen varias maneras de protegernos y prevenir la propagación de la enfermedad. Entre ellas, se recomienda el lavado frecuente de manos con agua y jabón o con un desinfectante a base de alcohol y evitar tocarse los ojos, nariz y boca. Además, al salir de la casa, se debe utilizar una mascarilla que cubra la boca y nariz. **Asimismo, se**

---

[99] Organización Mundial de la Salud, Preguntas y respuestas sobre la enfermedad por coronavirus (COVID-19), https://www.who.int/es/emergencies/diseases/novel-coronavirus-2019/advice-for-public/q-a-coronaviruses (última visita 5 de septiembre de 2020)

**recomienda practicar el distanciamiento social y evitar ir a lugares concurridos debido a que cuando hay aglomeración de personas, existe mayor probabilidad de entrar en contacto con alguien que porta el virus.**[100]

Con ello en mente, y con el fin de proveer seguridad y estabilidad en momentos de crisis como los que enfrentamos con la pandemia del COVID-19, la Rama Judicial ha reducido sustancialmente la plantilla de empleados que trabajen de forma presencial en sus tribunales y distintas dependencias, y han adoptado diversas medidas que a su vez garantizan la salud de todos los funcionarios, así como de la ciudadanía en general. Entre estas medidas, se encuentra el uso en sus procesos de los mecanismos de videoconferencia.

De conformidad con lo anterior, la Oficina de Administración de los Tribunales promulgó las *Guías Generales para el Uso del Sistema de Videoconferencia en los Tribunales del Estado Libre Asociado de Puerto Rico* y las *Guías sobre las disposiciones generales para el uso de la videoconferencia en los procedimientos penales.*[101] En éstas se esboza, de manera general, el proceso mediante el

---

[100] Organización Mundial de la Salud, Preguntas y respuestas sobre la enfermedad por coronavirus (COVID-19), *supra*, nota 5.

[101] Véase, Oficina de Administración de los Tribunales, Guías Generales para el uso del Sistema de Videoconferencia en los Tribunales del Estado Libre Asociado de Puerto Rico, http://www.ramajudicial.pr/medidas-cautelares/Guias-Generales-Videoconferencia-2020.pdf (última visita 6 de septiembre de 2020).

Véase, además, Guías sobre las disposiciones generales para el uso de la videoconferencia en los procedimientos penales. http://www.ramajudicial.pr/medidas-cautelares/Guias-Videoconferencia-Casos-Penales.pdf (última visita 27 de agosto de 2020).

cual se podrán atender asuntos de lo penal a través de videoconferencia, tales como, pero sin limitarse a: lectura de acusación, procedimientos interlocutorios, vistas sobre el estado de los procedimientos, alegaciones preacordadas, imposición de sentencia, vistas de seguimiento, vistas de revocación de probatoria y vistas de archivo. *Id.* El uso de tal mecanismo garantiza el acceso de los ciudadanos y las ciudadanas a los tribunales, promueve los intereses de la justicia y permite adelantar los procesos judiciales mientras esté vigente la emergencia de salud. *Id.*

De igual forma, y por ser en extremo pertinente para la correcta disposición de los asuntos que nos ocupan, precisa señalar que, el Departamento de Corrección y Rehabilitación adoptó el *Reglamento de Emergencia para Establecer el Procedimiento de Traslado de los Miembros de la Población Correccional a Procesos Judiciales durante la Emergencia de la Pandemia del Coronavirus (COVID-19)*, Reglamento Núm. 9186, Departamento de Estado, 3 de julio de 2020. Ello, con el fin de restablecer gradualmente los servicios que se proveen a la población correccional los cuales se han visto afectados como consecuencia de la pandemia, y adoptar el protocolo a seguir para la comparecencia de los confinados a los tribunales cuando así sea necesario. *Id.* en las págs. 1-2.

En lo pertinente, el Art. V (2) del referido reglamento establece que, debido a la vulnerabilidad de la

población correccional a contagios, y para evitar que el virus se propague en las instituciones penales del País, el Departamento proveerá espacios habilitados para que los confinados puedan comparecer a sus vistas anteriores al juicio en su fondo mediante el sistema de videoconferencia. *Id*. en la pág. 3. Además, el Art. VI (6) permite la entrevista presencial entre los abogados y sus clientes, pero cumpliendo con todas las medidas y protocolos establecidos por el Departamento de Corrección y Rehabilitación, el Departamento de Salud de Puerto Rico y el CDC. *Id*. en la pág. 5.

Más adelante, el precitado reglamento expresa que los abogados pueden presentar una solicitud al referido departamento para que éstos se comuniquen mediante videoconferencia con sus clientes, desde la misma institución correccional, pero sin contacto con el imputado. *Id.* Por último, éste aclara que solo se trasladarán sumariados para señalamientos de juicio en su fondo, sujeto a que la presencia de éstos sea requerida por el juez o jueza mediante orden escrita debidamente diligenciada. *Id*. en la pág. 6.

Es, pues, a luz de la normativa antes expuesta, que procedemos a disponer de las controversias ante nuestra consideración.

VIII.

**Al realizar dicho ejercicio, de entrada, debemos dejar meridianamente claro que, somos de la opinión que en los procesos criminales aquí en controversia, así como en aquellos procedimientos bajo la jurisdicción del Tribunal de Menores, -- en el curso de vida ordinario de un País -- nada sustituye la presencia física en corte de los imputados o acusados de delito, o de aquellos menores que cometen una falta. Esta práctica es preferible en todas las etapas de los procesos judiciales y, en muchas instancias, así lo exige la Constitución del Estado Libre Asociado de Puerto Rico y la Constitución de los Estados Unidos de América, y así se ha interpretado en la jurisprudencia de este Tribunal y del Tribunal Supremo de los Estados Unidos.**

Ahora bien, ante los retos presentados por la crisis de salud que se vive en nuestro País como consecuencia de la pandemia COVID-19, nos vemos en la obligación de emplear alternativas novedosas que preserven la salud y seguridad de un Pueblo, y, a su vez, garanticen los derechos de los imputados o acusados de delito que enfrentan un proceso criminal, así como de aquellos menores que cometen una falta y enfrentan determinado proceso judicial. El uso de los sistemas de videoconferencia en los procedimientos judiciales es una de ellas.[102]

---

[102] El uso de los sistemas de videoconferencias ha sido fomentado tanto en Puerto Rico como Estados Unidos ya que "[v]irtual proceedings are the best way to maintain social distancing to reduce the spread of COVID-19 and ensure the continued administration of justice through the duration of the crisis". *Véase*, National Center for State Courts, State court judges embrace virtual hearings as part of the 'new

Y es que, tal y como señalamos en nuestra Opinión Disidente en *Pueblo v. Cruz Rosario*, *supra*, el mecanismo de videoconferencia armoniza cabalmente los intereses aquí en pugna.[103] En primer lugar, si bien es cierto que el derecho

---

normal'. https://www.ncsc.org/newsroom/public-healthemergency/newsletters/videoconferencing (última visita 6 de septiembre de 2020).

Respecto al uso de la plataforma digital Zoom, la Jueza de Distrito Emily Miskel -- quien el 18 de mayo de 2020 presidió el primer juicio por jurado celebrado de manera remota -- reconoce las ventajas de utilizar dicha herramienta. La Jueza Miskel entiende que poder observar al testigo de frente, y no uno de sus lados, mejora la tarea principal del juzgador de hechos, entiéndase, aquilatar credibilidad. "In a real courtroom, they're sitting sideways to the witness and the witness may be 20 feet away, whereas on Zoom, the witness is right up close to them" *Véase*, National Center for State Courts, Stories from Inside the Courts: Judge Emily Miskel, https://www.ncsc.org/newsroom/public-health-emergency/newsletters/from-inside-the-courts/judge-emily-miskel (última visita 6 de septiembre de 2020).

[103] Ente las medidas para viabilizar el uso efectivo de los sistemas de videoconferencias, en nuestra Opinión Disidente en *Pueblo v. Cruz Rosario*, *supra*, señalamos que:

> ...[e]l tribunal puede exigir que todos los participantes tengan una conexión única y separada a la videoconferencia. Es decir, tanto el Juez o Jueza, como el fiscal, el abogado de defensa, el acusado y los testigos, deben comparecer a la vista por videoconferencia desde una computadora o dispositivo independiente, con su propia cámara y monitor que sirva únicamente a ese participante. Además, el Juez o Jueza deberá advertirles a todos y todas que aun cuando la vista se está celebrando por videoconferencia, aplicarán las mismas formalidades y exigencias que en las vistas celebradas en la sala del Tribunal.

> En cuanto a los testigos, éstos podrían ser ubicados en algunos de los salones de medios o de videoconferencia que han sido habilitados en los centros judiciales para esos propósitos. Incluso, el Tribunal puede instruir al alguacil a supervisar al testigo durante su testimonio y mientras se encuentre esperando su turno para declarar. También, se pueden instruir a estos testigos -- so pena de desacato -- que durante el transcurso del procedimiento no deberán tener consigo dispositivos electrónicos, tales como teléfonos celulares, ni podrán comunicarse ni recibir mensajes o instrucciones de otras personas ajenas al Tribunal. Asimismo, a estos últimos se les puede requerir que muevan su cámara de manera tal que las partes puedan inspecciones el lugar desde donde éstos se encuentran y el Juez o Jueza imparta las

constitucional a la confrontación es uno que se activa en la etapa del juicio, lo que de por sí sería suficiente para disponer de las controversias ante nos, la comparecencia a la vista preliminar o a la vista de causa probable en casos de menores -- a través de la mencionada herramienta tecnológica -- le permite al imputado de delito, así como al menor que enfrenta determinado proceso judicial, el confrontar a los testigos que presente el Ministerio Público o el Procurador o Procuradora de Menores, contrainterrogarlos y observar el comportamiento de éstos mientras declaran como si estuviese ocurriendo en las salas

---

instrucciones que entienda necesarias para asegurar la pureza de los procedimientos.

Por otro lado, del acusado encontrarse recluido en una institución penal, el Juez o Jueza de instancia puede ordenar que se habilite un salón de conferencia privado dentro de la videoconferencia (los llamados "breakout rooms"), de modo que el abogado y su cliente puedan comunicarse en cualquier momento, tal como lo harían presencialmente. Tan pronto el acusado o su abogado levanten la mano o expresen su interés de conferencia, el Juez o Jueza detendrá la vista y los referirá al salón de conferencia privado. De igual manera, estos salones pueden utilizarse por el fiscal y el abogado de defensa para discutir posibles estipulaciones, así como para compartir y mostrar la prueba documental previo a su presentación formal ante el Tribunal conforme a las Reglas de Evidencia.

Por último, conforme a las *Guías* antes mencionadas, el Tribunal deberá instruir a todos los participantes del proceso que, si en algún momento se enfrenta alguna dificultad técnica, se detendrá la vista y se recesará hasta tanto se pueda restablecer la comunicación. En caso de que no se pueda reestablecer la conexión o comunicación, se suspenderán los procedimientos hasta tanto éstos puedan celebrarse de forma efectiva, ya sea mediante videoconferencia o presencialmente.

Cabe resaltar que, en esta encomienda, el Juez o Jueza deberá contar con la ayuda de su personal de apoyo, entiéndase las secretarias jurídicas o las secretarias de sala.

de los tribunales. Asimismo, este mecanismo tiene la ventaja que permite observar a los restantes participantes del proceso judicial de forma simultánea.

En segundo lugar, y en lo relativo a la representación legal adecuada, la videoconferencia no impide que la misma se realice de forma efectiva. De hecho, como ya mencionamos previamente, dicha herramienta permite habilitar salones privados para que el abogado o abogada y su cliente discutan aquellos asuntos que entiendan pertinentes como parte de su estrategia de defensa. Véase, nota al calce 9. Asimismo, con anterioridad a la celebración de la vista de la cual se trate, la representación legal puede coordinar citas virtuales con sus clientes -- quienes, como sucede en el presente caso, se encuentran recluidos en una institución correccional -- con el propósito de preparar su defensa y proveer aquellos documentos necesarios, tales como las declaraciones juradas.[104]

Por último, el uso de este mecanismo no incide en manera alguna sobre el aspecto público de las vistas que se celebren. El juez o jueza establecerá el proceso para que las personas con interés tengan acceso a las mismas, si así procede en derecho y conforme a las órdenes que éste emita. Por otro lado, en el caso de los menores, los padres, encargados o el defensor judicial, así como los demás componentes del mencionado proceso judicial, pueden

---

[104] Aclaramos que dichos documentos también pueden ser remitidos de forma presencial de así entenderlo pertinente el abogado o abogada.

comparecer a la vista de causa probable a través de la videoconferencia. Es decir, una vez el tribunal les cite a la vista, también les notificará la manera en que éstos podrán acceder a la misma de manera virtual.

A pesar de lo antes dicho, tal cual señala el Hon. Alfonso Martínez Piovanetti -- juez superior, y quien se ha dedicado a estudiar estos temas con detenimiento -- la referida tecnología no está exenta de retos y señalamientos legítimos. A. Martínez Piovanetti, "El tribunal virtual y el futuro de la justicia", en: *Opinión*, *El Nuevo Día*, 3 de septiembre de 2020, pág. 36. "En ocasiones los participantes enfrentan problemas técnicos con su equipo o el internet y existe una brecha digital en nuestra sociedad". *Id.* Así pues, como ocurre con la implementación de nuevas tecnologías en cualquier contexto, la videoconferencia en los tribunales continuará mejorando. *Id.* Con ese fin, resulta necesaria la adopción de varias medidas tanto por parte de la Rama Judicial, y todos los funcionarios que de una u otra manera estén involucrados en los procesos judiciales, así como por parte de las distintas dependencias gubernamentales.

Por ello, sin lugar a duda es indispensable, no solo que se viabilice el uso de esta herramienta tecnológica en las instituciones correccionales, sino que se haga de manera efectiva, de forma tal que no se menoscaben los derechos que le asisten a los imputados y acusados. **Es**

**decir, el Departamento de Corrección y Rehabilitación tiene el deber ministerial de actuar con la debida diligencia y habilitar salones -- en todas las instituciones correccionales, entiéndase las de adultos y las juveniles -- que cuenten con las herramientas necesarias para el uso del sistema de videoconferencia. Lo anterior, no solo con el fin de que se celebren los procedimientos judiciales que penden en contra del acusado, sino también para que el imputado pueda tener una comunicación efectiva con su representante legal cuando así se requiera.[105]**

IX.

Así pues, y a modo de epílogo, como ha quedado claramente demostrado, el uso de los sistemas de videoconferencia para la celebración de los procesos judiciales aquí en controversia -- entiéndase la celebración de la vista preliminar y la determinación de causa probable para presentar querella -- es la forma más razonable de armonizar los intereses que están en conflicto en las causas de epígrafe. Sin embargo, debemos aclarar que, para que este mecanismo proceda, se deben seguir al pie de la letra las medidas antes reseñadas, y salvaguardar todas aquellas garantías dispuestas en la Constitución del Estado Libre Asociado de Puerto Rico, *supra*, la

---

[105] Lo contrario puede dar paso, en su momento, a un argumento de violación a los términos de juicio rápido -- pues el imputado se encuentra bajo la custodia del Estado y no pudo comparecer cuando así se ordenó -- o como fundamento contra la sentencia. Ello conforme dispone nuestra Constitución y las Reglas 64 y 192 de Procedimiento Criminal, *supra*, respectivamente.

Constitución de los Estados Unidos de América, *supra*, las Reglas de Procedimiento Criminal, *supra*, las Reglas de Evidencia, *supra*, las Reglas para Asuntos de Menores, *supra*, y su jurisprudencia interpretativa.

En esa dirección, como ya mencionamos, -- además de las instancias contempladas en las *Guías Generales para el Uso del Sistema de Videoconferencia en los Tribunales del Estado Libre Asociado de Puerto Rico* y las *Guías sobre las disposiciones generales para el uso de la videoconferencia en los procedimientos penales, supra* -- entendemos se sostiene la procedencia del uso del sistema de videoconferencia para la celebración de los siguientes procesos: vista de causa probable para arresto (Regla 6), vista de causa probable para arresto en alzada, vista preliminar, vista preliminar en alzada, juicio en su fondo por delito menos grave, y en casos bajo la jurisdicción del Tribunal de Menores. Como expresamos anteriormente, hacemos la salvedad que, en estos momentos, no estamos pasando juicio sobre la corrección o no de autorizar el uso del sistema de videoconferencia para la celebración de un juicio en su fondo por delito grave, bien sea por tribunal de derecho o por jurado.

Aclaramos, sin embargo, que la procedencia de dicho mecanismo -- entiéndase, el uso de los sistemas de videoconferencias --, en procesos como los antes mencionados, y salvo contadas excepciones, debe limitarse

al periodo en que esté vigente el actual estado de emergencia de salud pública. Finalizado el mismo, procede que se dé paso, **inmediatamente**, a la comparecencia física en corte de los imputados o acusados de delito, o de faltas en caso de los menores, para la celebración de los procesos judiciales de los que se trate.

X.

Es, pues, por todo lo anterior, que concurrimos con el resultado al que llega esta Curia en el día de hoy.[106]

Ángel Colón Pérez
Juez Asociado

---

[106] Aclaramos que, aun cuando concurrimos con el dictamen que hoy emite este Tribunal, no avalamos la contumaz y desafiante actitud del Estado al desacatar las órdenes del tribunal de instancia y negarse a transportar a los confinados a las salas de los tribunales, provocando que se suspendieran las vistas en repetidas ocasiones. Si bien la situación que vivimos ha provocado la adopción de medidas drásticas para el funcionamiento de las instituciones gubernamentales, no es menos cierto que las mismas deben implementarse de manera ordenada, eficiente y proveyendo alternativas viables para la comparecencia de los imputados o acusados a los procesos judiciales. Mediante esta Opinión Concurrente -- a nuestro juicio -- se logra lo anterior, al poner punto final a la incertidumbre que permeaba la celebración de los procesos criminales en medio de la pandemia.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Ángel N. Santiago Cruz<br><br>Peticionario<br><br>———<br><br>El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>En interés del menor F.L.R.<br><br>Peticionaria | CT-2020-0017<br><br>cons. con<br><br>CT-2020-0018 | Certificación |

Opinión disidente emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 8 de septiembre de 2020.

Ante la pandemia del COVID-19, no hay duda de que la tecnología ha sido una herramienta extremadamente útil y necesaria para enfrentarnos a esta nueva realidad. Ahora bien, como toda herramienta, la tecnología tiene sus límites. Así como en el ámbito de la salud, no puede recurrirse a la telemedicina para realizar todos los procedimientos médicos, en el ámbito judicial, no podemos recurrir a las videoconferencias para atender **todos** los procedimientos judiciales. Lo anterior, debido a que los procedimientos criminales activan garantías de nuestra Carta de Derechos que no se cumplirían mediante un sistema de

videoconferencia. Lo anterior cobra aún más importancia cuando se trata de personas imputadas de delito que están restringidas previamente de su libertad y que se encuentran a la merced del Estado. Ante la ausencia de ese reconocimiento, por parte de este Tribunal, disiento.

De entrada, reconozco que resulta necesario que el Gobierno de Puerto Rico, al igual que el resto de la sociedad, utilice las herramientas tecnológicas a su disposición para fomentar el mayor acceso a sus servicios. Precisamente, ante esta realidad, la Oficina de la Administración de los Tribunales aprobó ciertas normas, en las cuales promueve que los procedimientos judiciales se celebren mediante videoconferencia. Lo anterior, en aras de minimizar el contacto físico, descongestionar los tribunales y disminuir las posibilidades de contagio. Ciertamente, esta medida se justifica en muchísimos casos de naturaleza civil y administrativa.

**Sin embargo, la aplicación de esta política de la transmisión mediante videoconferencia al ámbito criminal debe de ser extremadamente cuidadosa y rigurosa. No podemos equiparar a una persona que enfrenta un proceso criminal al tratamiento de una mera persona testigo u otras figuras del procedimiento criminal. Ello, pues la Constitución de Puerto Rico provee una serie de protecciones y garantías fundamentales a favor de la persona imputada de delito que exigen necesariamente su presencia física en el tribunal, con acceso adecuado y efectivo a su representación legal, enfrentándose cara a cara a las personas testigos que**

**declaren en su contra y participando activamente de su defensa. Por tanto, toda renuncia que haga una persona imputada a estos derechos debe ser voluntaria, inteligente, consciente y debidamente consultada con su representación legal.**

A pesar de lo anterior, tanto el Departamento de Corrección y Rehabilitación como el Departamento de Salud, han aprobado ciertas reglamentaciones en las cuales omiten esos reconocimientos constitucionales, erigen una barrera a la comparecencia presencial y **obligan** a las personas confinadas a comparecer a distintas etapas del procedimiento criminal en su contra a través de videoconferencia. Específicamente, desde unas salas presuntamente habilitadas en las instituciones carcelarias del País. A través de estas normas, el Estado se está atribuyendo la capacidad **absoluta y automática** de privar a las personas confinadas de sus derechos constitucionales.

Indudablemente, este proceder viola rampantemente los derechos y las protecciones constitucionales más fundamentales de nuestro ordenamiento. Con un plumazo, se le limita a las personas confinadas su derecho a una representación legal, se le coarta su derecho a la confrontación y se deja en el olvido su derecho a una vista pública. Una violación más clara y palpable al debido proceso de ley que ésta, difícil.

Desafortunadamente, una Mayoría de este Tribunal valida las normas aprobadas por las entidades gubernamentales en controversia, y resuelve que los derechos individuales están

a la merced y al arbitrio del Estado. Así, pautan un precedente peligrosísimo que valida la suspensión de los derechos constitucionales de las personas ante un estado de emergencia.

Distinto a lo pautado en la Opinión mayoritaria, hubiese resuelto que los procedimientos en el ámbito criminal se puedan transmitir mediante videoconferencia siempre y cuando medie el **consentimiento de la persona imputada de delito**. Tal como lo estimó el Congreso Federal de los Estados Unidos, las vistas criminales se deberían celebrar mediante videoconferencia sólo si la persona imputada así lo decide, luego de haber consultado con su representación legal. Sólo de esta manera se justificaría jurídicamente la celebración de estos procedimientos mediante videoconferencia, pues correspondería a la persona imputada determinar si renuncia a estos derechos de manera voluntaria, inteligente y expresa.

Debemos recordar que "[l]os estados de emergencia son críticamente importantes desde la perspectiva de los derechos humanos debido a que la suspensión del estado de derecho frecuentemente redunda en violaciones sistemáticas a los derechos humanos. Las mismas presiones políticas que promueven que los Estados declaren estados de emergencia generan a su vez incentivos fuertes para que los Estados violen sus obligaciones con los derechos humanos durante las emergencias". (Traducción suplida). E. J. Criddle y E. Fox-Decent, Human Rights, Emergencies, and the Rule of Law, 34 Hum. Rts. Q. 39, 45-46 (2012).

Es por ello que **los estados de emergencia no pueden tener el efecto directo de violar los derechos y las garantías constitucionales que se diseñaron precisamente para evitar el abuso del poder punitivo del Estado.** Al contrario, la democracia que es verdaderamente sólida y fuerte florece en momentos como éstos, pues a pesar de la crisis y el caos, no vacila en proteger la dignidad y los derechos individuales de su Pueblo. Ciertamente, nos restaba mucho camino por recorrer para alcanzar esa aspiración y ahora nos resta mucho más.

Debido a que hoy se resuelve lo contrario y se valida la suspensión de los derechos constitucionales de las personas restringidas de su libertad, enérgicamente disiento. Veamos brevemente el cuadro fáctico de la controversia ante nos.

## I.

Ante la inminente emergencia que generó el COVID-19, la Oficina de la Administración de los Tribunales (OAT) aprobó las _Guías generales para el uso del sistema de videoconferencia en los tribunales del Estado Libre Asociado de Puerto Rico_, marzo de 2020 (Guías generales). En las mismas, se dispone que los siguientes procedimientos se podrán celebrar mediante videoconferencia:

> 1) cualquier vista o conferencia en casos criminales, civiles y de relaciones de familia y menores, que no sean de naturaleza probatoria;
> 2) vistas o conferencias en casos civiles, **criminales** y de relaciones de familia y menores **para atender asuntos de naturaleza probatoria cuando medie el consentimiento de las partes** y sujeto a la evaluación y aprobación del Tribunal;
> . . .

12) cualquier procedimiento autorizado por el Tribunal, con el aval del (de la) Juez(a) Administrador(a), **aun cuando no medie el consentimiento de todas las partes**, debido a que requerir la presencia de una persona en el Tribunal sería oneroso, no deseable o inconveniente o ponga en riesgo su seguridad, y además el uso de la videoconferencia promovería intereses de justicia y no representaría una desventaja significativa para las partes. (Énfasis suplido). Íd., inciso V (1-2,9), págs. 9-10.

Entiéndase, las Guías generales aprobadas por la OAT requieren, de ordinario, el consentimiento de la persona imputada de delito para que una etapa del procedimiento criminal que sea de naturaleza probatoria se celebre mediante videoconferencia. Sin embargo, las Guías generales reconocen un grado de discreción para que se celebre cualquier tipo de procedimiento mediante videoconferencia, sin el consentimiento de las partes. Guías generales, supra, inciso V (9), pág. 10.

Posteriormente, el Departamento de Corrección y Rehabilitación (Departamento de Corrección) aprobó el Protocolo enmendado para el restablecimiento gradual de los servicios a la población correccional ante la propagación del coronavirus (COVID-19), 17 de junio de 2020 (Protocolo). En esencia, el Protocolo dispone que **todas** las personas encarceladas en Puerto Rico comparecerán a las vistas judiciales anteriores y posteriores al juicio mediante videoconferencia. Íd., inciso VI, pág. 12. De igual modo, provee que, a juicio del Departamento de Corrección, se han habilitado suficientes salas en las instituciones carcelarias para que ello sea posible.

Subsiguientemente, el Departamento de Corrección aprobó el <u>Reglamento de emergencia para establecer el procedimiento de traslado de los miembros de la población correccional a procesos judiciales durante la emergencia de la pandemia del coronavirus (COVID-19)</u>, 3 de julio de 2020 (Reglamento). En el mismo, se reitera que la agencia administrativa no estaría transportando persona confinada alguna a procedimientos judiciales previos o anteriores al juicio que se celebren presencialmente. Íd., Art. VI (8), pág. 5. Por tanto, obliga a toda la población correccional a comparecer a las etapas preliminares y posteriores a su juicio mediante videoconferencia.

El Reglamento establece esta medida de manera **obligatoria**, por lo que no ausculta si la persona confinada consiente o no a participar en el procedimiento criminal en su contra mediante videoconferencia. Al contrario, provee que como único se transportará a una persona confinada a un foro judicial será cuando se trate de un juicio en su fondo y cuando lo ordene el juez o la jueza de la sala asignada. Íd., Art. VI (9), pág. 6. A pesar de lo anterior, intimó que "ciertos procedimientos de juicio en su fondo, bajo una evaluación caso a caso, dicho procedimiento puede celebrarse mediante el mecanismo de videoconferencia sin afectar derecho constitucional alguno". Íd., Art. V (3), pág. 4.

Por otro lado, el Reglamento se limita a notificar superficialmente que las salas de videoconferencia han sido habilitadas. No obstante, el mismo **no** especifica adecuadamente el funcionamiento de las mismas ni las medidas

concretas que se tomarán para una celebración eficiente del proceso. A modo de ejemplo, el Reglamento omite información en torno a: si todas las instituciones carcelarias cuentan con dichas salas, la composición de esas salas, la plataforma digital en la cual se transmitirá la videoconferencia, la manera en que la persona confinada se podrá comunicar con su representación legal, las medidas que se tomarán para garantizar la confidencialidad de esas comunicaciones, la manera en que la persona imputada podrá observar y analizar la prueba que se presente en su contra, y las personas que estarán presentes junto a la persona confinada durante la celebración de la vista.

Por último, el Departamento de Salud reiteró las normas antes expuestas mediante la Orden Administrativa para establecer las medidas mínimas que debe tomar el Departamento de Corrección y Rehabilitación del Gobierno de Puerto Rico como parte del plan de reapertura y servicios a la población correccional ante la emergencia provocada por la pandemia del COVID-19, Orden Administrativa Núm. 454, 3 de julio de 2020 (Orden Administrativa). En la misma, se establece lo siguiente:

> Los confinados bajo la custodia de cualquier facilidad correccional del Departamento de Corrección y Rehabilitación de Puerto Rico, solo serán transportados fuera de la facilidad correccional para asistir a procedimientos de juicio en su fondo, cuya comparecencia resulte, indispensable para garantizar un derecho constitucional fundamental reconocido, tras una evaluación judicial particularizada al caso que no deje otra alternativa posible. El resto de la población correccional permanecerá, como hasta el presente, en aislamiento preventivo y participará sincrónicamente de los procedimientos judiciales

mediante los mecanismos de videoconferencia, según dispuesto en el Reglamento de emergencia adoptado por el Departamento de Corrección. Íd., inciso cuarto, pág. 6.

Como puede apreciarse, las disposiciones antes reseñadas niegan determinantemente el derecho de las personas confinadas a comparecer presencialmente a las etapas del procedimiento criminal que son objeto de controversia en los recursos ante nos. En ese sentido, se les está obligando – distinto al resto de las personas que viven en la libre comunidad – a enfrentarse a la maquinaria criminal del Estado desde la institución carcelaria en la que se encuentran.

Particularmente, en el caso ante nos, el Sr. Ángel N. Santiago Cruz (señor Santiago Cruz) y el menor F.L.R. estaban citados para una vista preliminar – y su equivalente – en conformidad a la Regla 23 de Procedimiento Criminal, infra, y a la Regla 2.10 de Procedimiento para Asuntos de Menores, infra, respectivamente. Ambos invocaron su derecho a comparecer presencialmente a la vista, pues sostuvieron que la transmisión mediante videoconferencia laceraría sus derechos constitucionales, entre ellos: el derecho a un debido proceso de ley, el derecho a carearse con los testigos que se presenten en su contra, el derecho a una representación legal adecuada, el derecho a una vista pública y el derecho a realizar un contrainterrogatorio efectivo.

A pesar de lo anterior, una Mayoría de este Tribunal avala y pauta que el señor Santiago Cruz y el menor F.L.R.

están obligados a comparecer a los procedimientos mediante videoconferencia. En consecuencia, validan las normas aprobadas por las distintas entidades gubernamentales ante la pandemia. Según adelanté, discrepo enérgicamente de esta conclusión.

A continuación, expondremos el derecho aplicable a la controversia ante nuestra consideración.

## II.

## A.

Como es conocido, la Constitución de Puerto Rico provee que la libertad es un derecho fundamental de todas las personas. Art. II, Sec. 7, Const. PR., LPRA, Tomo 1. A la luz de lo anterior, la Ley Suprema dispone que ninguna persona será privada de su libertad sin un debido proceso de ley. Íd. Tal protección se encuentra igualmente en la Decimocuarta Enmienda de la Constitución de los Estados Unidos. Emda. XIV, Const. EE. UU., LPRA, Tomo 1.

En el contexto penal, la doctrina del debido proceso de ley exige que toda intervención del Estado se realice mediante un procedimiento justo e imparcial. Rivera Santiago v. Srio. de Hacienda, 119 DPR 265, 274 (1987). Así, exige que el Estado aplique las normas penales a los ciudadanos y ciudadanas con rigurosa justicia y precisión. Lo anterior, protege a la ciudadanía de intervenciones del Estado que estremezcan la conciencia y que sean fundamentalmente injustas. E. L. Chiesa Aponte, Procedimiento Criminal y la Constitución: Etapa investigativa, Puerto Rico, Ediciones Situm, 2018, págs. 19-20. De igual modo, promueve que "se

minimicen los riesgos de penalizar a un [o una] inocente, se proteja a las personas del poder abusivo por parte del Estado y se genere una atmósfera de justicia imparcial". Pueblo v. Moreno González, 115 DPR 298, 301 (1984).

Al ser una de las garantías más amplias de nuestro ordenamiento criminal, el debido proceso de ley se extiende a **todas** las etapas de un procedimiento penal, desde tan temprano como en la etapa investigativa. Chiesa Aponte, Procedimiento Criminal y la Constitución: Etapa investigativa, op. cit., pág. 17. Precisamente, hemos reconocido que "se ha extendido la aplicación de los componentes básicos del debido proceso de ley **a las actuaciones del Estado antes del arresto o inicio de la acción penal**". (Énfasis suplido). Pueblo v. Esquilín Maldonado, 152 DPR 257, 262 (2000). Véase, Pueblo v. Nazario Aponte, 198 DPR 962, 993-994 (2017) (Estrella Martínez, J., Voto disidente).

### B.

Cónsono con ello, la Carta de Derechos de la Constitución de Puerto Rico reconoce una gama de garantías y protecciones a favor de **toda** persona imputada o acusada de delito. A esos fines, provee que:

> En **todos** los procesos criminales, el acusado disfrutará del derecho a un juicio rápido y **público**, a ser notificado de la naturaleza y causa de la acusación recibiendo copia de la misma, **a carearse con los testigos de cargo**, a obtener la comparecencia compulsoria de testigos a su favor, **a tener asistencia de abogado**, y a gozar de la

presunción de inocencia. (Énfasis suplido). Art. II, Sec. 11, Const. PR., LPRA, Tomo 1.

Como puede apreciarse, esta disposición **no** limita estos derechos a alguna etapa en particular del procedimiento criminal. Al contrario, expresamente hace referencia a todas las etapas de un enjuiciamiento penal, lo cual necesariamente incluye etapas investigativas y preliminares a la acusación formal. Veamos brevemente algunos de estos pilares.

La Carta de Derechos expone que las personas acusadas de delito tendrán derecho a un juicio público.[107] Art. II, Sec. 11, Const. PR., LPRA, Tomo 1. En ese sentido, fue la intención de la Convención Constituyente que la justicia en Puerto Rico se administrara públicamente. Lo anterior, con el propósito importante de evitar "la aplicación del poder punitivo del Estado a espaldas de la supervisión popular". J. Farinacci Fernós, La Carta de Derechos, pág. 143 (manuscrito no publicado).

La publicidad de los procedimientos criminales promueve que se administre la justicia de forma eficiente y que se salvaguarden los derechos de la persona acusada. "La exigencia de un juicio público es en beneficio del acusado; que el público pueda observar la forma en que él está siendo enjuiciado y no condenado injustamente mantiene a sus juzgadores atentos a la responsabilidad e importancia de sus funciones". Pueblo v. Elicier Díaz I, 183 DPR 167, 176-177

---

[107]Sabido es que la Corte Suprema de los Estados Unidos extendió su aplicación a la vista preliminar. Véase, Press-Enterprise Co. v. Superior Court, 478 US 1 (1986); El Vocero de Puerto Rico v. Puerto Rico, 508 US 147 (1993).

(2011). De igual manera, la publicidad fomenta la participación de las personas testigos, mientras que desalienta el perjurio. Íd., pág. 177.

Por otro lado, el derecho a asistencia legal en procedimientos criminales se ha consagrado como una parte fundamental del debido proceso de ley. Art. II, Sec. 11, Const. PR., LPRA, Tomo 1; Pueblo v. Gordon, 113 DPR 106 (1982). La Sexta Enmienda de la Constitución de los Estados Unidos reconoce igualmente esta protección. Emda. VI, Const. EE.UU., LPRA, Tomo 1. La Corta Suprema de los Estados Unidos ha reconocido que este derecho es **fundamental** en todo proceso criminal. Gideon v. Wainwright, 372 US 335, 342-344 (1963).

Hemos sido enfáticos en que este derecho exige que la asistencia legal sea **adecuada y efectiva**. Pueblo v. Ortiz Couvertier, 132 DPR 883, 887 (1993). Entiéndase, no basta la mera designación de un o una representante legal. Este derecho va más allá de garantizar la presencia o la comparecencia de un abogado o una abogada.

Tal garantía exige necesaria y obligatoriamente "**una oportunidad razonable para conferenciar con el acusado y colocarse en condiciones de hacer una defensa efectiva**". (Énfasis suplido). Hernández v. Delgado, Jefe Penitenciaria Estatal, 82 DPR 488, 490 (1961). Por tanto, solo una representación diligente y activa cumple con el estándar constitucional. De igual modo, este Tribunal ha delineado ciertos criterios para determinar si se ha menoscabado el

derecho a representación legal. Particularmente, resolvió lo

siguiente:

> El derecho a tener una efectiva o adecuada representación legal puede quedar menoscabado cuando:
>
> [(a)] el abogado es incompetente para la tarea que se le asigna,
> [(b)] como cuestión de hecho la labor desplegada demuestra su inefectividad,
> [(c)] hay un potencial o actual conflicto de intereses para el abogado,
> [(d)] **las reglas o actuaciones del tribunal constituyen una limitación irrazonable al derecho a tener adecuada asistencia de abogado.** (Énfasis suplido). Pueblo v. Ortiz Couvertier, supra, pág. 888 (citando a E. L. Chiesa, Derecho procesal penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1991, Vol. I, Sec. 7.9, págs. 449-550).

Como adelantamos, el derecho a la asistencia legal

exige que los tribunales provean y garanticen las

condiciones necesarias para viabilizar esa representación

adecuada y eficiente. De lo contrario, toda normativa que

limite u obstaculice la capacidad del abogado o la abogada

de ejercer su trabajo adecuadamente lacera el postulado

constitucional. El mismo resultado tendría toda medida que

restrinja la capacidad de la persona acusada de aportar

efectivamente a su defensa mediante la comunicación y la

colaboración con su representación legal.

Como bien dispone el Catedrático Ernesto L. Chiesa

Aponte:

> [E]l derecho a asistencia de abogado **supone que el acusado esté ubicado junto a su abogado, cerca de él, de forma que pueda recibir la ayuda que le garantiza la cláusula constitucional.** Durante la presentación de toda la prueba, el acusado y el abogado deben tener la oportunidad de conversar, sin obstruir la buena marcha del juicio, lo que **supone la proximidad entre ellos.** Así, pues, el derecho del acusado a estar presente en el juicio

incluye el **derecho a que no se le ubique en un lugar desde el cual no pueda estar frente a los testigos, ni en un lugar donde se le haga difícil o impráctica la comunicación con su abogado.** (Énfasis suplido). E. L. Chiesa Aponte, Procedimiento Criminal y la Constitución: Etapa Adjudicativa, 1ra ed., San Juan, Puerto Rico, Ediciones Situm, 2018, pág. 168.

Asimismo, la Carta de Derechos consagra el derecho fundamental a confrontar a las personas testigos que el Ministerio Público presente en contra de la persona acusada. Art. II, Sec. 11, Const. PR., LPRA, Tomo 1; Pioner v. Texas, 380 US 400, 403 (1965). La Sexta Enmienda de la Constitución de los Estados Unidos reconoce igualmente el derecho a la confrontación. Emda. VI, Const. EE.UU., LPRA, Tomo 1.

El derecho constitucional a la confrontación provee tres (3) protecciones esenciales: (1) el derecho a carearse con los testigos de cargo; (2) el derecho a contrainterrogar a dichos testigos, y (3) el derecho a que se excluya cierta prueba de referencia.[108] Pueblo v. Pérez Santos, 195 DPR 262, 269-270 (2016). Estos componentes indispensables del derecho

---

[108]Recientemente, en Pueblo de Puerto Rico v. Daniel Cruz Rosario, 2020 TSPR 90 (res. 25 de agosto de 2020), una Mayoría de este Tribunal reiteró cierta jurisprudencia estatal que minimizaba el valor del derecho al careo en nuestro ordenamiento. Es menester reiterar mi enérgico disenso ante estos fundamentos y aclarar que, a la luz de pronunciamientos de la Corte Suprema de los Estados Unidos, tales expresiones no tienen vigencia actualmente. El derecho al careo es un componente esencial del derecho a la confrontación, al igual que el derecho al contrainterrogatorio y la exclusión de prueba de referencia. Véase, Pueblo de Puerto Rico v. Daniel Cruz Rosario, 2020 TSPR 90 (res. 25 de agosto de 2020), (Estrella Martínez, J., Opinión disidente); R. Cortés Moreno, Un análisis del derecho a confrontación puertorriqueño y la constitucionalidad de las Reglas 37 y 39 de Evidencia según enmendadas por la Ley 42 de 7 de junio de 1988, 37 Rev. Der. P.R. 25 (1998); E. L. Chiesa Aponte, Los derechos de los acusados y la factura más ancha, 65 Rev. Jur. UPR 83, 95-96 (1996).

a la confrontación son fundamentales en todo procedimiento criminal.

Particularmente, el primer componente del derecho a la confrontación le garantiza a la persona imputada la oportunidad de enfrentarse **cara a cara** a las personas que testifiquen en su contra. "[E]l derecho al 'careo' no es un elemento secundario, sino la columna vertebral del derecho a confrontación en sí". R. Cortés Moreno, Un análisis del derecho a confrontación puertorriqueño y la constitucionalidad de las Reglas 37 y 39 de Evidencia según enmendadas por la Ley 42 de 7 de junio de 1988, 37 Rev. Der. P.R. 25, 43 (1998). De hecho, la Corte Suprema de los Estados Unidos ha catalogado el derecho al careo como un elemento **esencial** del derecho a la confrontación, pues salvaguarda la confiabilidad y la justicia del procedimiento criminal. Coy v. Iowa, 487 US 1012, 1018-1019 (1990).

Ahora bien, la Corte Suprema de los Estados Unidos resolvió en Maryland v. Craig, 497 US 836 (1990), que el derecho al careo puede prescindirse en circunstancias **excepcionales y particulares**. A esos fines, determinó que cualquier medida que lacere el derecho al careo debe fundamentarse en una política pública apremiante y que la medida sea **absolutamente necesaria** para proteger ese interés. Íd., pág. 850; Cortés Moreno, supra. De igual modo, deben existir otros indicios que garanticen la confiabilidad del testimonio, como el juramento de la persona testigo, la oportunidad de **contrainterrogar** y la capacidad del jurado de apreciar el testimonio. Maryland v. Craig, supra, pág. 845-

846. Como puede apreciarse, "[e]l derecho al careo, por ser fundamental, **no puede interpretarse restrictivamente**". (Énfasis suplido). Pueblo v. Ruiz Lebrón, 111 DPR 435, 452 (1981) (Irizarry Yunqué, J., Opinión disidente).

De igual modo, el segundo componente del derecho a la confrontación, permite que la persona acusada tenga la oportunidad de contrainterrogar efectivamente a la persona testigo. El derecho al contrainterrogatorio es necesario para la protección adecuada de los derechos de una persona acusada de delito. En ese sentido, la Corte Suprema de los Estados Unidos ha dispuesto que "probably no one, certainly no one experienced in the trial of lawsuits, would deny the value of cross-examination in exposing falsehood and bringing out the truth in the trial of a criminal case". Pointer v. Texas, 380 US 400, 404 (1965).

Adviértase que todos estos derechos constitucionales cobijan a **toda** persona imputada de delito. La única justificación jurídica que existe para que una persona no goce de estos derechos es que ésta renuncie a los mismos **voluntaria, consciente e inteligentemente**. Pueblo v. Medina Hernández, 158 DPR 489, 504 (2003). Para ello, la persona debe ser orientada sobre los derechos constitucionales que le cobijan para así tener pleno conocimiento sobre los efectos y las consecuencias de renunciarlos. Pueblo v. López Rodríguez, 118 DPR 515, 539 (1987). De igual modo, la renuncia debe ser en ausencia de cualquier tipo de intimidación, coacción o violencia. Pueblo v. Ruiz Bosch, 127 DPR 762, 775 (1991).

La misma protección se extiende a los procedimientos conforme a la Ley de Menores de Puerto Rico, 34 LPRA sec. 2201-et seq. Específicamente, nuestro ordenamiento provee que, previo a que un o una menor de edad renuncie a algún derecho constitucional, el tribunal debe cerciorarse de que su renuncia es libre, inteligente y que conoce todas las consecuencias de ello. Íd., 34 LPRA sec. 2211. De hecho, la Ley de Menores, supra, va más allá, y exige que toda renuncia a un derecho constitucional debe ser en presencia de sus padres o encargados y de su representación legal. Íd.

## c.

En nuestro ordenamiento, toda persona imputada de delito grave tiene derecho a una vista preliminar. Regla 23 de Procedimiento Criminal, supra. En la misma, el tribunal tiene la tarea de auscultar si existe causa probable para radicar una acusación contra la persona. Lo anterior, tiene como propósito garantizar que el Estado tenga una justificación adecuada para someter a una persona a la maquinaria de un juicio criminal. Pueblo v. Ortiz, Rodríguez, 149 DPR 363, 374 (1999). La vista preliminar es de tal importancia, que la hemos catalogado como "el umbral del debido proceso de ley". Pueblo v. Soler, 163 DPR 180, 192 (2004).

Cónsono con ello, la Regla 23 de Procedimiento Criminal, 34 LPRA Ap. II, reconoce varios derechos y garantías a favor de la persona imputada en esta etapa, tales como el derecho

a ser citado a la vista, a que la vista se celebre **públicamente**, a estar **representado por un abogado o abogada**, a **contrainterrogar** testigos, a **examinar las declaraciones juradas** de quienes testifiquen en su contra y a presentar prueba a su favor. Íd. Véase, El Vocero de Puerto Rico v. Puerto Rico, 508 US 147 (1993); Pueblo v. Rivera, 167 DPR 812, 817 (2006). Nótese como se codificaron expresamente los derechos dispuestos en la Carta de Derechos discutidos anteriormente. Asimismo, una vez la Asamblea Legislativa incorporó estos derechos mediante la vía estatutaria, "éstos pasa[ron] a formar parte integral del debido proceso de ley". Pueblo v. Rivera Martell, 173 DPR 601, 615-616 (2008).

En consecuencia, en una vista preliminar, una persona imputada de delito tiene derecho a que la misma se celebre públicamente. Así lo resolvió expresamente la Corte Suprema de los Estados Unidos. Press-Enterprise Co. v. Superior Court, 478 US 1 (1986); El Vocero de Puerto Rico v. Puerto Rico, 508 US 147 (1993).

De igual modo, la persona imputada de delito está cobijada por el derecho constitucional a asistencia legal. Pueblo v. Padilla Flores, 127 DPR 698, 703 (1991). Con ello, la persona tiene derecho a preparar una defensa efectiva, a participar activamente del proceso criminal en su contra y a tener la oportunidad de consultar continuamente con su representación legal. Pueblo v. Ortiz Couvertier, supra, pág. 887.

Cónsono con lo anterior, la persona imputada tiene el importante derecho de examinar las declaraciones juradas de

quienes testifiquen en su contra. Valga señalar que esas declaraciones se entregan **el mismo día de la vista**, una vez el Ministerio Público culmine el interrogatorio directo a la persona testigo. Regla 23 de Procedimiento Criminal, supra; Pueblo v. Rodríguez López, 155 DPR 894, 902-903 (2002). Por tanto, es de suma importancia que la persona imputada pueda, junto a su abogado o abogada, examinar adecuadamente el contenido de esas declaraciones y tomar las decisiones pertinentes en torno a los próximos pasos en el contrainterrogatorio. Lo anterior, está íntimamente relacionado con el derecho de la persona imputada a realizar un contrainterrogatorio.

En ese sentido, nuestro ordenamiento reconoce expresamente el derecho de la persona imputada a realizar un contrainterrogatorio efectivo a las personas testigos que declaren en la etapa de vista preliminar. Así, tal derecho activa las protecciones de la cláusula del derecho a la confrontación, entre ellas, el derecho a carearse con las personas testigos y a excluir cierta prueba de referencia. Resolver lo contrario, laceraría el debido proceso de ley de toda persona imputada de delito. Véase, C. Holst, The Confrontation Clause and Pretrial Hearings: A Due Process Solution, 2010 U. Ill. L. Rev. 1599 (2010); E. Silva Avilés, Derecho a la confrontación luego de Crawford y Davis, 10 Rev. Jur. LexJuris P.R., feb. 2007.

Similarmente, en el contexto de la Ley de Menores de Puerto Rico, supra, existe un procedimiento análogo al de una vista preliminar. A esos fines, la Regla 2.10 de

Procedimiento para Asuntos de Menores, 34 LPRA Ap. I-A, regula la vista de determinación de causa probable para radicar querella. En la misma, el tribunal tiene la encomienda de determinar si "existe rastro de prueba necesario sobre los elementos esenciales de la falta y su conexión con el menor imputado". Íd.

Toda interpretación de la Ley de Menores de Puerto Rico, supra, debe realizarse en aras de "garantizar a todo menor un trato justo, el debido procedimiento de ley y el reconocimiento de sus derechos constitucionales". Art. 2 de la Ley de Menores de Puerto Rico, supra, 34 LPRA sec. 2202. En virtud de lo anterior, el foro judicial tiene la obligación de orientar al menor de edad sobre los derechos constitucionales que le cobijan en toda vista de determinación de causa probable para presentar una querella. Asimismo, al igual que en una vista preliminar para personas adultas, el o la menor de edad tiene derecho a asistencia legal, a contrainterrogar a las personas que testifiquen en su contra y a presentar prueba a su favor.

A la luz de sus similitudes, "[e]ste Tribunal ha resuelto que la vista de determinación de causa probable estatuida en la Regla 2.10 de Procedimiento para Asuntos de Menores **corresponde** a la vista preliminar para determinación de causa probable para radicar una acusación en los casos de adultos codificada en la Regla 23 de Procedimiento Criminal". (Énfasis en el original). Pueblo en interés menor G.R.S., 149 DPR 1, 18 (1999). En consecuencia, la jurisprudencia interpretativa de la vista preliminar

contenida en la Regla 23 de Procedimiento Criminal, supra, es extensiva a la vista de determinación de causa probable para radicar querella dispuesta en la Regla 2.10 de Procedimiento para Asuntos de Menores, supra.

**D.**

Como puede apreciarse, la Constitución de Puerto Rico, las Reglas de Procedimiento Criminal y su jurisprudencia interpretativa suponen que la vista preliminar, al igual que las demás etapas de un procedimiento criminal, se celebrará **presencialmente**. Las Reglas de Procedimiento Criminal solo contemplan, a modo de excepción, que menores de edad, personas que padezcan de algún impedimento mental o personas que hayan sido víctimas de ciertos delitos de naturaleza sexual, podrán testificar mediante un mecanismo de circuito cerrado. Sin embargo, para que se autorice el uso de la videoconferencia, obligatoriamente se debe celebrar una vista de necesidad para determinar si el bienestar de la persona testigo exige que ésta testifique fuera de la presencia de la persona acusada.

Sin embargo, incluso en estas circunstancias excepcionales, se exige un procedimiento conforme a la jurisprudencia de la Corte Suprema de los Estados Unidos, en el cual se ausculta en cada uno de los casos, si la transmisión mediante videoconferencia es **absolutamente necesaria** para el interés público que se interesa proteger. Por tanto, en nuestro ordenamiento, no se puede prescindir del requisito de la presencia de la persona imputada ligeramente. Ciertamente, este Tribunal tiene la facultad de

pautar mediante jurisprudencia la adopción de mecanismos que vayan dirigidos a preservar, dentro de lo posible, los derechos constitucionales en los procedimientos criminales, en circunstancias apremiantes y excepcionales que lo ameriten.

Sin embargo, resulta lamentable y paradójico que recientemente este Tribunal se negó a reconocer por vía excepcional el mecanismo de videoconferencia para personas testigos, a fin de garantizar que la persona acusada estuviese en mejor posición de ejercitar su derecho a la confrontación. Pueblo de Puerto Rico v. Daniel Cruz Rosario, 2020 TSPR 90 (res. 25 de agosto de 2020). Paradójicamente, hoy están prestos a validar normas administrativas de agencias que vulneran garantías constitucionales que se activan en todo procedimiento criminal.[109]

Por otro lado, el ordenamiento federal ha provisto de un esquema mucho más razonable en torno al uso de la videoconferencia en el contexto penal, el cual pudo ser utilizado por este Tribunal. Particularmente, el Congreso de

---

[109]Precisamente, intentos pasados de privar a las personas imputadas de delito de participar presencialmente de los procedimientos criminales en su contra han sido rechazados por la Asamblea Legislativa. En el pasado, se han presentado proyectos de ley con el propósito de obligar a la población correccional a participar de ciertas etapas del procedimiento criminal en su contra mediante transmisión electrónica desde las instituciones carcelarias del País. Véase, P. de la C. 111 de 2 de enero de 2017, 18va Asam. Leg., 1ra Ses. Ord.; P. de la C. 1957 de 8 de mayo de 2014, 17ma Asam. Leg., 3ra Ses. Ord. Al igual que las medidas ante nuestra consideración en el día de hoy, estos proyectos no auscultaban el consentimiento de la persona imputada de delito para ello. Estas medidas **no** fueron aprobadas por la Asamblea Legislativa.

los Estados Unidos adoptó el Coronavirus Aid, Relief, and Economic Security Act (Ley CARES), Pub. L. No. 116-136 (27 de marzo de 2020). Mediante la misma, se autorizó el uso de la videoconferencia en varios procedimientos previos y posteriores al juicio. Íd., Sec. 15002 (b)(1). Sin embargo, la Ley CARES dispone expresamente que, para ello, se requiere el **consentimiento informado de la persona o del menor de edad, luego de haber consultado con su representación legal.** Íd., Sec. 15002 (4).

A la luz de lo anterior, la Corte de Distrito para el Distrito de Puerto Rico autorizó igualmente el uso de la videoconferencia en el contexto criminal, sujeto al consentimiento de la persona acusada. In re: Corona Virus (COVID 19) Public Emergency, Misc. No. 20-0088 (GAG). Es menester destacar que, tanto la Ley CARES como la Corte de Distrito para el Distrito de Puerto Rico, **no** autorizan el uso de la videoconferencia en la etapa de juicio.

Similarmente, en el ámbito internacional se ha contemplado igualmente el uso del instrumento de la tecnología para agilizar los procedimientos judiciales en el contexto penal. Específicamente, la Unión Europea acordó que sus Estados miembros pueden celebrar audiencias con las personas acusadas de delito mediante videoconferencia. Art. 10(9), Convenio relativo a la asistencia judicial en material penal entre los Estados miembros de la Unión Europea, Diario Oficial de las Comunidades Europeas, 12 de julio de 2000, https://eur-lex.europa.eu/legal-content/ES/TXT/PDF/?uri=CELEX:42000A0712(01)&from=EN. No

obstante, distinto a las normas locales anteriormente discutidas, los Estados miembros de la Unión Europea acordaron que ello sólo procederá **si la persona acusada de delito consiente a ello.** De lo contrario, el procedimiento se celebrará presencialmente como de costumbre.

Como vemos, hay una tendencia en otros ordenamientos de condicionar el uso de la videoconferencia en el contexto penal al consentimiento informado de la persona imputada de delito. Ello, es cónsono con los postulados propios de nuestro ordenamiento que parten de la premisa de que, incluso en etapas preliminares, hay un derecho constitucional a estar presente en el procedimiento, junto a su representación legal, participando activamente de su defensa y careándose con los testigos presentados en su contra. De igual modo, satisface adecuadamente los requisitos para renunciar válida y adecuadamente a un derecho constitucional, pues se garantiza que el mismo es voluntario, inteligente y consciente.

Expuesto el derecho aplicable, procedemos a exponer las razones que fundamentan este disenso.

### III.

### A.

Recientemente, este Tribunal atendió una de las interrogantes que han surgido en la celebración de procedimientos criminales en cara a las nuevas realidades que ha impuesto el COVID-19. En _Pueblo de Puerto Rico v. Daniel Cruz Rosario_, supra, este Tribunal determinó que, en

los juicios penales celebrados presencialmente, las personas testigos deberán utilizar una mascarilla al declarar.

Según dispusimos en la Opinión disidente, discrepamos de esta conclusión, pues la misma limitó excesivamente el derecho a la confrontación de las personas acusadas de delitos. En esa ocasión, resaltamos que hubiésemos optado por que la persona testigo declarara mediante el mecanismo de videoconferencia, desde otra sala del tribunal. Así, justificamos **excepcionalmente** el uso de videoconferencia, debido a que el uso de la mascarilla limita la capacidad de la persona acusada de carearse con la persona testigo. Dado que el mecanismo de la videoconferencia sí permite que la persona acusada y el jurado perciban y observen el "demeanor" de la persona testigo, esta alternativa resulta ser menos lesiva al derecho a la confrontación. Sin embargo, incluso bajo ese supuesto, la persona acusada estaría **presencialmente** en el tribunal, con cercanía a su representación legal, lo cual le permitirá comunicarse efectivamente con ésta y participar activamente de la preparación de su defensa.

Como puede apreciarse, en aquella controversia el uso del sistema de la videoconferencia para testificar, tenía como objetivo brindar el mayor grado de reconocimiento posible a las garantías constitucionales del acusado. A pesar de que este Tribunal lo rechazó en ese contexto particular, ahora lo adopta de forma asfixiante e irrazonablemente abarcadora, con el efecto de brindar el

menor grado de reconocimiento posible a las garantías constitucionales aquí discutidas.

Según expusimos anteriormente, distintas entidades gubernamentales han aprobado múltiples normas con el propósito de **prohibirle** a la **población correccional** su comparecencia presencial a los procedimientos criminales anteriores y posteriores a su juicio. Es decir, la persona imputada de delito que esté privada de su libertad está siendo **forzada** a comparecer desde una sala en la cárcel, sin acceso continuo ni cercanía alguna a su representación legal, sin garantía alguna de confidencialidad, sin garantías de una atmosfera de justicia imparcial, sin confrontarse cara a cara a los testigos que se presenten en su contra y sin acceso físico a la prueba que se presente en su contra. Repasemos brevemente las medidas que tenemos ante nuestra consideración.

Por un lado, la OAT aprobó unas Guías generales en las cuales acertadamente dispone que todo procedimiento criminal de naturaleza probatoria se podrá celebrar mediante videoconferencia, si las partes consienten a ello. Guías generales, supra, inciso V (1-2), pág. 9. A modo excepcional, se reconoce la autoridad del Juez Administrador de ordenar la transmisión por videoconferencia sin el consentimiento de las partes. Íd., inciso V (9), pág. 9. Sin embargo, con lo pautado hoy por este Tribunal, se diluye cualquier posible consentimiento y la excepción se convirtió en la norma.

Por otro lado, el Departamento de Corrección aprobó un Protocolo y un Reglamento, en los cuales prohíbe a las personas confinadas acudir presencialmente a todo procedimiento criminal que no sea un juicio. Reglamento, supra, Art. VI (8), pág. 5. De esta manera, los obliga a comparecer mediante videoconferencia, desde unas salas presuntamente habilitadas en las instituciones carcelarias del País. La Orden Administrativa por el Departamento de Salud reitera estas normas dirigidas a la población correccional.

En primer lugar, debemos resaltar que estas medidas están dirigidas **única y exclusivamente a las personas que están detenidas preventivamente**. Las Guías generales aprobadas por la OAT exigen, como norma general, el consentimiento de las partes en un procedimiento criminal para que el mismo se celebre mediante videoconferencia. Sin embargo, el Reglamento aprobado por el Departamento de Corrección está dirigido únicamente a la población correccional, a quienes unilateralmente se les priva del derecho a consentir y se les obliga a comparecer mediante videoconferencia.

Es decir, una persona que tuvo los recursos económicos suficientes para pagar una fianza tiene la facultad de decidir si comparecerá a la vista preliminar presencialmente o por videoconferencia. Por otro lado, la persona que no tuvo el capital para pagar una fianza y que está detenida preventivamente está cohibida de ejercer su derecho a consentir. Ello, sin duda alguna, constituye una

discriminación rampante en contra de las personas confinadas por su condición social. Véase, <u>Jorge Garib Bazain v. Hospital Español Auxilio Mutuo de Puerto Rico, entre otros</u>, 2020 TSPR 69 (Estrella Martínez, J., Opinión disidente).

En segundo lugar, estas medidas laceran múltiples derechos constitucionales que cobijan a toda persona imputada de delito, incluso en etapa de vista preliminar. De particular importancia, se encuentra el derecho a una asistencia legal **efectiva y adecuada.** Es decir, no basta que el abogado o la abogada comparezca a las citaciones en representación de su cliente o clienta. El derecho a asistencia legal **exige** que el abogado o la abogada tenga la oportunidad de comunicarse continuamente con su cliente o clienta durante el proceso, para que éste último pueda colaborar y participar activamente de su defensa. Es por ello que este derecho constitucional supone necesariamente la **proximidad física** entre la representación legal y el cliente o la clienta. De lo contrario, cualquier norma que **dificilita o hace impráctica** la comunicación entre la representación legal y el cliente o clienta, lacera la protección constitucional al derecho a asistencia legal.

Indudablemente, el mecanismo validado hoy viola el derecho a la asistencia legal. Privar a la persona imputada de delito de una comunicación continua y constante con su representante legal, automáticamente limita su capacidad de aportar a una defensa adecuada y efectiva. Nótese que el Reglamento aprobado por el Departamento de Corrección no dispone de medida **alguna** para garantizar la comunicación

entre la persona imputada y su representación legal, ni mucho menos su confidencialidad. Meramente, una vez estas controversias se levantaron en los foros judiciales, el Estado divulgó por primera vez que el Departamento de Corrección "ha asegurado que dichos salones o salas cuentan con una línea telefónica directa, mediante la cual el confinado puede mantener la comunicación directa, privada y adecuada con su representante legal durante todo el proceso de videoconferencia, tantas veces así lo solicite y **el TPI lo permita**".[110]

Como puede apreciarse, el Estado pretende que la comunicación entre la persona imputada y su representación legal esté **enteramente al arbitrio del tribunal**. Distinto a la dinámica que se da en procesos presenciales, donde una consulta puede ser discreta y ágil, en un proceso mediante videoconferencia **se tendría que pedir autorización judicial para cada una de las consultas que se interese realizar entre la persona imputada y su representación legal**. Lo anterior, indudablemente otorga una peligrosa discreción a los tribunales para coartar y limitar estas comunicaciones y, con ello, para obstaculizar la facultad de la persona imputada de colaborar efectivamente con su defensa.

Además, como expusimos anteriormente, toda persona imputada de delito tiene derecho a examinar las declaraciones juradas de las personas testigos que declaren en su contra. Tanto la Regla 23 de Procedimiento Criminal,

---

[110] (Énfasis suplido). Alegato de Procurador General, CC-2020-0017, pág. 9.

34 LPRA Ap. II, como su jurisprudencia interpretativa han sido claras al disponer que esas declaraciones juradas **no** se entregan antes de la vista. Al contrario, el derecho de la persona imputada se activa al momento que el Ministerio Público termina el directo. Por tanto, la persona imputada tiene derecho a examinar esa prueba **el mismo día de la vista.**

No obstante, las medidas ante nuestra consideración no especifican cuándo ni cómo se le harán llegar esas declaraciones a la persona imputada. Peor aún, pretenden que la persona imputada las examine **sola** desde la sala correccional, sin garantía de que se podrá comunicar con su representación legal al respecto. Lo anterior, pues como expusimos, la continuidad y el acceso de la comunicación está enteramente al arbitrio y a la merced del tribunal.

Adviértase el efecto cadena que genera cada una de estas violaciones al proceso. Una vez la persona es privada de una comunicación continua con su representación legal y de consultar el contenido de las declaraciones juradas con ésta, se lacera igualmente su facultad de colaborar efectivamente con su abogado o abogada sobre las estrategias a implantarse durante el contrainterrogatorio.

Como agravante, el mecanismo de la videoconferencia obvia por completo que las comunicaciones entre la persona imputada y su representación legal deben ser **enteramente confidenciales.** Las medidas ante nuestra consideración toman por alto este principio tan básico de debido proceso y pretenden que las personas imputadas y sus representantes

legales se comuniquen **por medios controlados por el propio Estado**. En ninguna de las medidas aprobadas se especifica concretamente cómo se garantizaría la confidencialidad de esas comunicaciones.

Además, ninguna de las medidas aprobadas garantiza que la persona imputada estará sola en la sala correccional. Por tanto, personal del Departamento de Corrección podrá estar presente junto a la persona imputada mientras comparece, privándole de su derecho a comunicarse confidencialmente con su representación legal. De hecho, ese fue el caso del menor F.L.R., quien estuvo acompañado de personal del Departamento de Corrección en todas las vistas que compareció mediante videoconferencia.[111]

Como si fuera poco, la inconstitucionalidad de este mecanismo se vuelve aún más patente en el contexto de la Ley de menores, supra. En virtud de la minoría de edad de la persona que está siendo sometida al proceso, los padres y las personas encargadas constituyen un componente esencial del mismo. Particularmente, este Tribunal ha resuelto que los padres y las personas encargadas tienen el rol importante de garantizar que el o la menor de edad entienda los procedimientos a los que se enfrenta, las garantías que le amparan y las consecuencias jurídicas de las mismas. Pueblo en interés de menor C.Y.C.G., 180 DPR 555, 573 (2011). A raíz de ello, la representación legal del menor de edad necesita igualmente de una comunicación privada y

---

[111]Alegato en interés del menor F.L.R., CC-2020-0018, pág. 31.

confidencial con los padres del menor de edad. Nuevamente, este componente se ignora por completo en las medidas gubernamentales ante nos, y en ningún momento contempla algún mecanismo para que puedan conversar la representación legal, el o la menor de edad y sus padres simultáneamente.

Por otro lado, en el contexto de una vista preliminar en virtud de la Regla 23 de Procedimiento Criminal, supra, la persona imputada tiene derecho a que la misma se celebre públicamente. Ello, tiene como propósito garantizar la imparcialidad y la pureza del proceso. El mecanismo de la videoconferencia ante nuestra consideración no contempla este derecho ni dispone de qué manera se va a garantizar su publicidad.

Nótese como esta grave omisión no se puede subsanar con la mera promesa de que las partes pueden pedir la transmisión de los procedimientos en conformidad a la norma experimental contenida en In re: C. 15; Regl. Uso Cámaras Proc. Jud., 188 DPR 424 (2013). Lo anterior, pues sabido es que la norma general es que una Mayoría de este Tribunal **no** autoriza las solicitudes de transmisión. Véase, Telenoticias, Telemundo PR, Ex parte, 195 DPR 34 (2016) (Estrella Martínez, J., Voto particular disidente); Televicentro of PR, LLC, Ex parte, 195 DPR 18 (2016) (Estrella Martínez, J., Voto particular disidente); ASPRO et al., Ex parte I, 190 DPR 82 (2014) (Estrella Martínez, J., Voto particular disidente).

Por último, pero no menos importante, debemos tomar en consideración que a la luz de los contundentes

pronunciamientos de la Corte Suprema de los Estados Unidos y del contenido mínimo que le impregna al derecho a la confrontación, ha llegado el momento de reconocer que el mismo tiene tangencia y beneficia a la persona imputada en la etapa de vista preliminar. Ello, pues las garantías particulares de nuestro ordenamiento aquí discutidas y las consideraciones del debido proceso de ley hacen necesario reconocer que las protecciones del derecho a la confrontación se extiendan a esta etapa. Como es conocido, en la vista preliminar la persona imputada de delito tiene derecho a contrainterrogar a las personas que testifiquen en su contra. Por tanto, sería un contrasentido omitir las protecciones constitucionales que emanan del derecho a contrainterrogar a raíz del derecho a la confrontación.

En consecuencia, el derecho a la confrontación exige que la persona esté presente en el procedimiento criminal y que se enfrente cara a cara a las personas que testifiquen en su contra. La única limitación que se admite al derecho al careo procede en casos extremadamente excepcionales y justificados. Particularmente, procederá cuando se demuestre que existe una política pública apremiante y que la limitación al derecho al careo **absolutamente necesaria** para proteger ese interés. Definitivamente, ese estándar no se cumple en la controversia ante nos.

Ciertamente, las implicaciones y los riesgos a la salud que genera la pandemia del COVID-19 son innegables. En ese sentido, no albergamos duda que el Estado tiene la obligación de implantar medidas salubristas que garanticen

la seguridad de todos y todas. Sin embargo, esa política pública, aunque apremiante, no justifica la suspensión y la eliminación de todos los derechos constitucionales de una persona imputada de delito. Obligar a toda persona confinada a comparecer mediante videoconferencia a procedimientos criminales y privarla de su derecho constitucional a estar presente en los mismos no es absolutamente necesario para satisfacer el interés importante del Estado de proteger la salud y la seguridad de su Pueblo. En consecuencia, no se cumple con el estándar aplicable y no se justifica una limitación tan rampante al derecho a la confrontación de las personas imputadas.

A la luz de estos fundamentos, es innegable que la celebración de una vista preliminar, o de cualquier otra etapa del procedimiento criminal, mediante videoconferencia es a todas luces inconstitucional. Recordemos que el debido proceso de ley proscribe toda intervención del Estado que sea **fundamentalmente injusta**. Ante este estándar, resulta difícil justificar que la suspensión de los derechos constitucionales de toda persona detenida preventivamente.

Adviértase que, en nuestro ordenamiento, el único fundamento jurídico que permite que una persona no ejerza alguno de sus derechos constitucionales es si ésta renuncia al mismo voluntaria, consciente e inteligentemente. En consecuencia, resulta increíblemente obvio que el Estado no tiene facultad alguna para suspender, aunque sea temporeramente, las importantes garantías constitucionales

que acompañan a la ciudadanía en todos los procesos criminales.

A pesar de los fundamentos antes expuestos, una Mayoría de este Tribunal no solo valida las medidas gubernamentales ante nuestra consideración, sino que además resuelve que las mismas son constitucionales. Ello, simplemente no tiene fundamento jurídico alguno que lo sostenga. Nótese que el propio Estado reconoce en sus comparecencias que las medidas ante nuestra consideración limitan y restringen los derechos constitucionales de las personas confinadas.[112]

Como agravante, la Opinión mayoritaria resuelve que una agencia administrativa tiene la facultad de **suspender** derechos constitucionales cuando así lo entienda necesario. Mediante este peligroso y altamente preocupante precedente, se le otorga un poder punitivo desmedido al Estado que indiscutiblemente lacera los cimientos democráticos de nuestro ordenamiento. Asimismo, este Tribunal da un cheque en blanco a entidades ajenas a la administración de la justicia para que instrumenten procesos inherentemente judiciales, lo cual constituye indudablemente una peligrosa y cuestionable cesión de poderes.

Debemos resaltar que las normas ante nuestra consideración, además de ser inconstitucionales en su contenido, son sorpresivamente superficiales. Según puntualizamos, el Reglamento aprobado por el Departamento de Corrección se limita a notificar que los salones en las

---

[112]Alegato de Procurador General, CC-2020-0017, págs. 6-15; Alegato de Procurador General, CC-2020-0018, págs. 8-17.

instituciones correccionales presuntamente están habilitados. El Reglamento no especifica procedimiento, garantía ni mecanismo alguno para proteger, dentro de los posible, la multiplicidad de derechos constitucionales que cobijan a toda persona imputada de delito.

Peor aún, el Reglamento dispone que, incluso para celebraciones de juicios en su fondo, el Departamento de Corrección no transportará a la persona confinada al tribunal hasta que medie una orden del juez o de la jueza que presida la sala. Reglamento, supra, Art. VI (9), pág. 6. A pesar de lo anterior, aclara que, según el criterio del Departamento de Corrección, "ciertos procedimientos de juicio en su fondo, bajo una evaluación caso a caso, dicho procedimiento puede celebrarse mediante el mecanismo de videoconferencia sin afectar derecho constitucional alguno". Íd., Art. V (3), pág. 4. Nótese la intención consistente de privar continuamente a la población confinada de todos los derechos que le cobijan en el contexto penal.

En fin, es altamente preocupante que el Estado suspenda derechos constitucionales de nuestros ciudadanos y ciudadanas con un mero plumazo. Lo anterior, no se justifica debido a que nos encontramos en tiempos de emergencia. Al contrario, **"[c]orresponde a los tribunales, sea en situaciones de crisis o de paz, proteger y garantizar los derechos que la Constitución promueve para todos sus ciudadanos. El asunto no es defender a los acusados. Lo realmente crucial es que toda persona logre un juicio justo y un proceso en el cual se le garanticen los derechos**

**protegidos por nuestra Constitución"**. (Énfasis suplido). L. Rivera Román, <u>Los derechos de los acusados en los procedimientos penales bajo la Constitución de Puerto Rico y los Estados Unidos</u>, 46 Rev. Jur. UIPR 417, 447 (2012).

**B.**

Desafortunadamente, una Mayoría de este Tribunal razona igualmente que la celebración de la vista preliminar mediante videoconferencia no lesiona irrazonablemente importantes garantías constitucionales. Por un lado, es innegable que los derechos constitucionales antes explicados exigen la presencia física de una persona imputada en todas las etapas del procedimiento criminal en su contra. Por otro lado, las Reglas de Procedimiento Criminal contemplan el uso de las videoconferencias a modo excepcional y particular en el contexto exclusivo de las personas testigos. Nótese que no está dirigido a los acusados o acusadas que enfrentan el proceso penal. Ante esa realidad, ejercer el poder de pautar jurisprudencialmente para provocar un trastoque de derechos constitucionales es profundamente incorrecto. **La jurisprudencia, al igual que la tecnología, deben servir de herramientas para reforzar y reconocer garantías no para suprimirlas.**

Por otro lado, es preocupante que precisamente en el ordenamiento federal se haya aprobado un estatuto que sí es protector de los derechos constitucionales de nuestros ciudadanos y ciudadanas y que, por mero capricho o preferencia, se opte por descartar este mecanismo. Como expusimos, la Ley CARES, <u>supra</u>, dispone que, en el contexto

federal, se podrán celebrar ciertos procedimientos anteriores y posteriores al juicio mediante videoconferencia. No obstante, para ello, **la persona imputada deberá consentir al uso de la videoconferencia luego de haber consultado con su representante legal**.

En el balance de los distintos intereses en pugna, esta norma federal representa la solución más justa posible. De esta manera, la persona imputada de delito será la que decidirá si renuncia o no a su derecho constitucional a estar presente físicamente en el procedimiento criminal en su contra. Ello, es cónsono con los postulados de nuestro ordenamiento que exigen que toda renuncia a un derecho constitucional sea informada, voluntaria y expresa. De igual modo, la solución provista en la Ley CARES, supra, es protectora del derecho fundamental a la asistencia de abogado, pues reconoce expresamente que una decisión de tal importancia exige necesariamente un asesoramiento legal.

En ese sentido, la aplicación de esta solución ayudaría a procurar un balance de intereses más razonable en la administración del sistema de justicia.

## IV.

La magnitud de la crisis de salud que vivimos actualmente no justifica la suspensión absoluta de los derechos constitucionales de nuestro Pueblo. Al contrario, el rol de los tribunales se agudiza en tiempos de emergencia, pues tenemos la importante responsabilidad de velar por que las acciones del Estado en respuesta a la crisis no sean en detrimento de sus ciudadanos y ciudadanas.

En tiempos de crisis y en tiempos ordinarios, la Rama Judicial tiene el deber de proveerle oxígeno a los derechos constitucionales para que las garantías constitucionales no se conviertan, en lo que he denominado anteriormente, en un cementerio de palabras. Hoy lejos de filtrar el aire para que esos derechos se reconozcan y desarrollen, se ha cerrado la válvula y no se les ha permitido respirar.

En consecuencia, por entender que este dictamen es contrario a los postulados constitucionales de nuestro ordenamiento, reitero mi enérgico disenso.


                              Luis F. Estrella Martínez
                                   Juez Asociado